1   HOGAN LOVELLS US LLP
    Michael J. Shepard (CA Bar No. 91281)
2   3 Embarcadero Center
    Suite 1500
3   San Francisco, CA 94111
    Telephone: (415) 374-2300
4   Facsimile: (415) 374-2499
    michael.shepard@hoganlovells.com
5
    PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
6   Brad S. Karp (*pro hac vice*)
    Bruce Birenboim (*pro hac vice*)
7   H. Christopher Boehning (*pro hac vice*)
    Daniel H. Levi (*pro hac vice*)
8   1285 Avenue of the Americas
    New York, NY 10019
9   Telephone: (212) 373-3000
    Facsimile: (212) 757-3990
10  bkarp@paulweiss.com
    bbirenboim@paulweiss.com
11  cboehning@paulweiss.com
    dlevi@paulweiss.com
12
    *Attorneys for Defendant Fédération Internationale de*
13  *Football Association*

14

15                  **UNITED STATES DISTRICT COURT**

16                  **NORTHERN DISTRICT OF CALIFORNIA**

17                         **OAKLAND DIVISION**

18  RACHEL MEHR, et al.,                    Case No. 4:14-CV-03879-PJH

19                      Plaintiffs,         **DEFENDANT FÉDÉRATION**
                                            **INTERNATIONALE DE FOOTBALL**
20                                          **ASSOCIATION'S NOTICE OF**
             vs.                            **MOTION AND MOTION TO**
21                                          **DISMISS THE COMPLAINT AND**
                                            **MEMORANDUM OF LAW IN**
22  FÉDÉRATION INTERNATIONALE DE            **SUPPORT OF THE MOTION TO**
    FOOTBALL ASSOCIATION, et al.            **DISMISS THE COMPLAINT**
23
                      Defendants.          The Honorable Phyllis J. Hamilton
24
                                            Date:        May 6, 2015
25                                          Time:        9:00 a.m.
                                            Courtroom:   Courtroom 3, 3rd Floor
26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3  NOTICE OF MOTION AND MOTION TO DISMISS .................................................1

4  ISSUES PRESENTED.................................................................................................1

5  MEMORANDUM OF LAW .......................................................................................2

6  PRELIMINARY STATEMENT ..................................................................................2

7  STATEMENT OF FACTS ..........................................................................................4

8  ARGUMENT ..............................................................................................................7

9  I.  THE COURT DOES NOT HAVE, OR SHOULD DECLINE TO
       EXERCISE, JURISDICTION ...............................................................................8

10

11     A.  The Court Does Not Have Personal Jurisdiction over FIFA ......................8

12        1.  The Court Does Not Have General Personal Jurisdiction
                over FIFA ...........................................................................................8

13        2.  The Court Does Not Have Specific Personal Jurisdiction
                over FIFA .........................................................................................10

14

15     B.  The Court Should Dismiss the Complaint for Failure to Join IFAB ......11

16        1.  IFAB Is a Necessary Party...............................................................13

17        2.  Joinder of IFAB Is Not Feasible .....................................................13

18        3.  IFAB Is an Indispensable Party .......................................................14

19     C.  Plaintiffs Lack Standing to Assert Their Claims ....................................15

20        1.  Six Plaintiffs Fail to Allege Any Injury...........................................16

21        2.  There Is No Causal Connection Between Any Injury and
                FIFA.................................................................................................17

22        3.  A Favorable Decision Is Unlikely to Provide Redress for
23               Plaintiffs' Alleged Injuries...............................................................18

24     D.  The Court Should Abstain from Exercising Subject Matter
                Jurisdiction......................................................................................18

25  II.  THE COMPLAINT SHOULD BE DISMISSED BECAUSE
        PLAINTIFFS FAIL TO STATE A CLAIM.........................................................20

26

27     A.  Plaintiffs Fail to State a Claim for Negligence ......................................21

28        1.  Plaintiffs Have Not Alleged a Breach of a Legally
                Cognizable Duty ..............................................................................21

- i -

2.    FIFA Is Not the Proximate Cause of Plaintiffs' Alleged Injuries .................................................................................................22

B.    Plaintiffs Fail to State a Claim for Voluntary Undertaking ...................................22

C.    Medical Monitoring Is Not Recognized as a Separate Cause of Action............................................................................................................................24

CONCLUSION.............................................................................................................................25

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

## CASES

4

*Abuan* v. *General Elec., Co.*,
 3 F.3d 329 (9th Cir. 1993) .......................................................................................................25

5

6

*Allen* v. *Wright*,
 468 U.S. 737 (1984) ...............................................................................................................17

7

*Artiglio* v. *Corning Inc.*,
 957 P.2d 1313 (Cal. 1998) ......................................................................................................23

8

9

*Avila* v. *Citrus Coll. Dist.*,
 131 P.3d 383 (Cal. 2006) ........................................................................................................21

10

*Baker* v. *City of Los Angeles*,
 233 Cal. Rptr. 760 (Cal. Ct. App. 1986) ................................................................................23

11

12

*Balthazor* v. *Little League Baseball, Inc.*,
 72 Cal. Rptr. 2d 337 (Cal. Ct. App. 1998) .............................................................................21

13

*Bancroft & Masters, Inc.* v. *Augusta Nat. Inc.*,
 223 F.3d 1082 (9th Cir. 2000) ............................................................................................9, 10

14

15

*Berke* v. *TRI Realtors*,
 257 Cal. Rptr. 738 (Cal. Ct. App. 1989) ................................................................................19

16

*Blair* v. *Shanahan*,
 38 F.3d 1514 (9th Cir. 1994) ..................................................................................................16

17

18

*Burger King Corp.* v. *Rudzewicz*,
 471 U.S. 462 (1985) ...............................................................................................................11

19

*California Dental Assn.* v. *American Dental Assn.*,
 590 P.2d 401 (Cal. 1979) ........................................................................................................19

20

21

*Carey* v. *Kerr-McGee Chemical Corp.*,
 999 F. Supp. 1109 (N.D. Ill. 1998) ........................................................................................24

22

*City of Los Angeles* v. *Lyons*,
 461 U.S. 95 (1983) ..................................................................................................................16

23

24

*City of Santee* v. *Cnty. of San Diego*,
 259 Cal. Rptr. 757 (Cal. Ct. App. 1989) ................................................................................23

25

*Clapper* v. *Amnesty Int'l. USA*,
 133 S. Ct. 1138 (2013) ............................................................................................................16

26

27

*CollegeSource, Inc.* v. *AcademyOne, Inc.*,
 653 F.3d 1066 (9th Cir. 2011) ............................................................................................9, 10

28

*Conroy* v. *Regents of Univ. of Cal.*,
   203 P.3d 1127 (Cal. 2009) .................................................................................21

*Cook* v. *Rockwell Int'l Corp.*,
   755 F. Supp. 1468 (D. Colo. 1991) ....................................................................24

*Crandall* v. *North Dakota High School Activities Ass'n*,
   261 N.W.2d 921 (N.D. 1978) ..............................................................................20

*Daimler AG* v. *Bauman*,
   134 S. Ct. 746 (2014) ...........................................................................................9

*Danieley* v. *Goldmine Ski Assoc., Inc.*,
   266 Cal. Rptr. 749 (Cal. Ct. App. 1990) .............................................................21

*David* v. *Louisiana High School Athletic Ass'n*,
   244 So. 2d 292 (La. Ct. App. 1971) ....................................................................20

*Dawavendewa* v. *Salt River Project Agr. Imp. & Power Dist.*,
   276 F.3d 1150 (9th Cir. 2002) .............................................................................13

*Delgado* v. *Trax Bar and Grill*,
   113 P.3d 1159 (Cal. 2005) ..................................................................................23

*Disabled Rights Action Comm.* v. *Las Vegas Events, Inc.*,
   375 F.3d 861 (9th Cir. 2004) ...............................................................................13

*Doe* v. *Unocal Corp.*,
   248 F.3d 915 (9th Cir. 2001) ...............................................................................11

*Ferrari* v. *Grand Canyon Dories*,
   38 Cal. Rptr. 65 (Cal. Ct. App. 1995) .................................................................22

*Fortier* v. *Los Rios Cmty. Coll. Dist.*,
   52 Cal. Rptr. 2d 812 (Cal. Ct. App. 1996) ....................................................21, 22

*Friends of Amador Cnty.* v. *Salazar*,
   No. CIV. 2:10–348 WBS CKD, 2011 WL 4709883 (E.D. Cal. Oct. 4, 2011) .......13

*FW/PBS, Inc.* v. *City of Dallas*,
   493 U.S. 215 (1990) ......................................................................................15, 16

*Gates* v. *Rohm and Haas, Co.*,
   618 F. Supp. 2d. 362 (E.D. Pa. 2007) ................................................................24

*Hebert* v. *Ventetuolo*,
   480 A.2d 403 (R.I. 1984) .....................................................................................20

*Hirsch* v. *Blue Cross, Blue Shield of Kansas City*,
   800 F.2d 1474 (9th Cir. 1986) ...............................................................................9

*Indiana High School Athletic Ass'n* v. *Reyes*,
   694 N.E.2d 249 (Ind. 1997) ................................................................................20

*International Shoe Co.* v. *Washington*,
    326 U.S. 310 (1945) .................................................................................9, 11, 14

*J. McIntyre Machinery, Ltd.* v. *Nicastro*,
    131 S. Ct. 2780 (2011) ..................................................................................10

*Jensen* v. *Bayer AG*,
    862 N.E.2d 1091 (Ill. App. Ct. 2007) ...........................................................24

*Knight* v. *Jewett*,
    834 P.2d 696 (Cal. 1992) ...............................................................................21

*Kurz* v. *Fed'n of Petanque U.S.A.*,
    52 Cal. Rptr. 3d 776 (Cal. Ct. App. 2006) ....................................................19

*Lujan* v. *Defenders of Wildlife*,
    504 U.S. 555 (1992) ..........................................................................16, 17, 18

*Martinez* v. *Aero Caribbean*,
    764 F.3d 1062 (9th Cir. 2014) .......................................................................10

*Marvix Photo, Inc.* v. *Brand Techs., Inc.*,
    647 F.3d 1218 (9th Cir. 2011) .........................................................................9

*Matter of Caso* v. *New York State Pub. High School Athletic Ass'n*,
    78 A.D.2d 41 (N.Y. App. Div. 1980) .............................................................20

*Oakland Raiders* v. *Nat'l Football League*,
    113 Cal. Rptr. 2d 255 (Cal. Ct. App. 2001) ..................................................20

*Oakland Raiders* v. *Nat'l Football League*,
    32 Cal. Rptr. 3d 266 (Cal. Ct. App. 2005) .............................................19, 20

*One True Vine, LLC* v. *Liquid Brands LLC*,
    No. C 10–04102 SBA, 2011 WL 2148933 (N.D. Cal. 2011) ........................11

*Paiute-Shoshone Indians of the Bishop Cmty. of the Bishop Colony, Cal.* v. *City of Los Angeles*,
    637 F.3d 993 (9th Cir. 2011) .........................................................12, 13, 14, 15

*Paz* v. *State of California*,
    994 P.2d 975 (Cal. 2000) ...............................................................................24

*Pebble Beach Co.* v. *Caddy*,
    453 F.3d 1151 (9th Cir. 2006) .........................................................................8

*Potter* v. *Firestone Tire & Rubber, Co.*,
    863 P.2d 795 (Cal. 1993) ...............................................................................24

*Provident Tradesmens Bank & Trust Co.* v. *Patterson*,
    390 U.S. 102 (1968) .......................................................................................15

*Raymond* v. *Fed'n Int'l de Football Ass'n*,
    No. 20286/06 (N.Y. Sup. Ct. June 3, 2008) ....................................................8

- v -

*Robinson* v. *Illinois High School Ass'n*,
  195 N.E.2d 38 (Ill. App. Ct. 1963) ...................................................................20

*Rodrigo* v. *Koryo Martial Arts*,
  122 Cal. Rptr. 2d 832 (Cal. Ct. App. 2002) .....................................................22

*Salem* v. *Superior Court*,
  259 Cal. Rptr. 447 (Cal. Ct. App. 1989), *modified* (June 23, 1989) .....................22

*San Diego Cnty. Gun Rights Comm.* v. *Reno*,
  98 F.3d 1121 (9th Cir. 1996) ...........................................................................17

*In re Toyota Motor Corp.*,
  785 F. Supp. 2d 883 (C.D. Cal. 2011) .................................................13, 14, 15

*Williams* v. *State*,
  664 P.2d 137 (Cal. 1983) ..................................................................................24

*Worldwide Subsidy Grp., LLC* v. *Fed'n Int'l de Football Ass'n*,
  No. 14-00013 MMM, Order Granting Defendant's Motion to Dismiss (C.D.
  Cal. 2014)...............................................................................................8, 9, 10

*Xavier* v. *Philip Morris USA, Inc.*,
  No. C 10–02067 WHA, 2010 WL 3956860 (N.D. Cal. Oct. 8, 2010) ....................24

## STATUTES AND RULES

Cal. Civ. Code § 410.10...........................................................................................8

Fed. R. Civ. P. 19.........................................................................................13, 14, 15

1

## <u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

2 PLEASE TAKE NOTICE that on May 6, 2015 at 9:00 a.m., or as soon thereafter as

3 counsel may be heard, at the U.S. District Court, Northern District of California, located at 1301

4 Clay Street, Oakland, California, before the Honorable Phyllis J. Hamilton, Defendant

5 Fédération Internationale de Football Association ("FIFA") will move, and hereby moves, for an

6 Order dismissing the Complaint filed by Plaintiffs, pursuant to Federal Rules of Civil Procedure

7 12(b)(1), (2), (6), and (7), and applicable law.  This motion is based on this Notice of Motion and

8 Motion; the accompanying Memorandum of Law; the Declarations of Jérôme Valcke and H.

9 Christopher Boehning and the exhibits thereto; and all other matters properly before this Court.

10 FIFA brings this motion to dismiss all of Plaintiffs' claims with prejudice.

11

## <u>ISSUES PRESENTED</u>

12 1. Is FIFA subject to personal jurisdiction?

13
14 2. Should the Court dismiss the Complaint because Plaintiffs fail to join a necessary, indispensable party?

15 3. Do Plaintiffs meet the case or controversy requirements for Article III standing?

16
17 4. Should the Court abstain from exercising subject matter jurisdiction on the ground that courts should abstain from intervening in disputes concerning the rules of voluntary member associations?

18
19
20 5. Should the Court dismiss Plaintiffs' negligence claim because FIFA has no legal duty to prevent risks that are inherent in the sport and because there is no alleged causal link between any conduct of FIFA and Plaintiffs' injuries?

21
22
23 6. Should the Court dismiss Plaintiffs' voluntary undertaking claim because Plaintiffs fail to allege that FIFA undertook to provide protective services beyond making broad public statements about safety in soccer, and because Plaintiffs fail to allege that such a duty would even extend to Plaintiffs?

24 7. Should the Court dismiss Plaintiffs' medical monitoring claim because such a claim does not exist in California and has not been recognized by the highest courts of Illinois or Colorado (the three states in which Plaintiffs reside)?

25

26

27

28

1

**MEMORANDUM OF LAW**

2

**PRELIMINARY STATEMENT**

3      Seven young soccer players from California, Illinois and Colorado have filed this

4  proposed class action asking this Court to change the rules of soccer at all levels, from local

5  youth leagues to international professional competitions, in 209 countries.  While the issues

6  raised by Plaintiffs are important—seeking to address concussions and how to best protect young

7  soccer players—this lawsuit is a wholly inappropriate and legally meritless way to address those

8  issues.  The case is fatally flawed in every respect, both procedurally and substantively.

9      Each Plaintiff is (or was) a member of a local soccer club in their hometown, but neither

10  Plaintiffs nor their local soccer clubs are members of FIFA.  All but one Plaintiff fail to allege

11  any injuries, asserting only the vague risk of future injury.  Yet, they seek to represent a class of

12  tens of millions of soccer players around the world in a lawsuit against FIFA and several

13  national, regional and local U.S.-based soccer organizations.  They seek an injunction requiring

14  these voluntary member associations to draft and adopt unspecified concussion management

15  protocols, change the rules for heading a soccer ball, and change the rules governing substituting

16  players in games.  They also seek a monetary fund of unspecified size to pay for medical

17  monitoring of "all past, current and future FIFA athletes" worldwide.  There is no basis in law

18  for their claims, and their demand that the Court rewrite the international rules of soccer is an

19  outlandish proposed use of the federal judiciary.  The Complaint should be dismissed for the

20  following reasons:

21      *First*, FIFA is not subject to personal jurisdiction, as the U.S. District Court for the

22  Central District of California recently held.  Plaintiffs cannot meet the burden of establishing

23  general personal jurisdiction merely by citing FIFA's commercial contacts with global

24  businesses that do business in California.  Nor does this Court have specific personal jurisdiction

25  over FIFA because Plaintiffs' allegations do not arise from FIFA's limited forum-related

26  activity.  FIFA's other arguments are therefore made without prejudice, and under the

27  reservation that FIFA objects to personal jurisdiction.

28

*Second*, Plaintiffs fail to join a necessary, indispensable party.  The only entity with the authority to implement the rule changes Plaintiffs demand is the International Football Association Board ("IFAB"), which is not a party.  Nor can it be.  IFAB is a Swiss association that conducts no business in the United States, let alone in California.  Therefore, the Court cannot accord complete relief among the existing parties.

*Third*, Plaintiffs do not meet the case or controversy requirements for Article III standing.  Six of the seven Plaintiffs fail to allege any present injury, and for these six, Plaintiffs fail to allege, as required, that a fear of future injury is immediate or direct.  The Complaint also fails to allege even a weak causal connection between the acts or omissions of FIFA and the injuries alleged for all Plaintiffs.

*Fourth*, the California Supreme Court has made clear that courts should abstain from intervening in disputes—like the instant lawsuit—concerning the rules of a voluntary member association.  This well-established determination reflects the admonition that courts must guard against unduly interfering with an organization's autonomy by substituting its own judicial judgment for that of an independent voluntary organization.  California courts have applied this abstention doctrine broadly and with particular force in the sports context and should do so here.

*Finally*, Plaintiffs fail to state a claim upon which relief can be granted.  FIFA has no legal duty to Plaintiffs to prevent risks that are inherent in the sport, like those from heading a soccer ball.  Nor is there any causal connection between the alleged acts or omissions of FIFA and any alleged injury.  Plaintiffs alternatively allege that a duty has been created pursuant to California's "Good Samaritan" law.  Yet the Complaint fails to allege: (1) that FIFA undertook to provide protective services beyond making public statements about safety in soccer; and (2) that even if it had, such a created duty would extend to these seven youth soccer players, let alone the entirety of the proposed class.  Plaintiffs also fail to state a claim for medical monitoring because such a claim has been rejected in California and has not been recognized by the highest courts of Illinois or Colorado (the three states in which Plaintiffs reside).

For all of these reasons, and those discussed below, the Complaint should be dismissed with prejudice.

1

## STATEMENT OF FACTS

2
**Plaintiffs and the Nature of the Action**

3          This is a putative class action brought by seven Plaintiffs—two adults and five minors—

4   against six Defendants—FIFA, the United States Soccer Federation, Inc. ("US Soccer"), U.S.

5   Youth Soccer Association, Inc. ("USYSA"), American Youth Soccer Organization ("AYSO"),

6   U.S. Club Soccer ("US Club") and California Youth Soccer Association ("Cal North").

7   Plaintiffs allege that these voluntary member associations have failed to adopt and enforce rules

8   that would reduce the risk of preventable injuries resulting from concussions and repetitive

9   heading.  (Compl. ¶ 28.)  Plaintiffs further allege that FIFA has failed to modify the "Laws of the

10  Game" (codified rules to help define soccer worldwide) to provide proper protection from

11  concussion injuries, as a result of its "strict rules about the number of players that can be

12  substituted."  (Compl. ¶ 30.)[1]

13          Plaintiffs assert three claims for relief.  *First*, Plaintiffs assert a claim of negligence,

14  alleging that Defendants owed "a duty toward Plaintiffs and the Class to supervise, regulate,

15  monitor, and provide reasonable and appropriate rules to minimize the risk of injury to the

16  players" and breached this duty by failing to take preventative measures and concealing

17  information.  (Compl. ¶¶ 424-31.)  *Second*, Plaintiffs assert an alternative claim of breach of

18  voluntary undertaking, repeating the allegations from the negligence claim, but instead alleging

19  that "each Defendant voluntarily assumed a duty toward Plaintiffs and the Class to supervise,

20  regulate, monitor, and provide reasonable and appropriate rules to minimize the risk of injury to

21  the players." (Compl. ¶ 435.)  *Third*, Plaintiffs assert a claim for "medical monitoring" seeking

22  establishment of a "trust fund, in an amount to be determined, to pay for the medical monitoring

23  of all past, current, and future FIFA athletes, as frequently and appropriately as necessary."

24  (Compl. ¶ 450.)

25  _____

26  [1]    Plaintiffs purport to bring this action "on behalf of themselves and a proposed class of all
    current or former soccer players who, from 2002 to the present," competed for a team
    governed by one of the Defendants.  (Compl. ¶¶ 32, 415.)  On its face, the proposed class is

27  hopelessly overbroad and could not be certified under Rule 23 as a matter of law, including,
    as it does, players from all over the world, from toddlers to professionals, and likely numbers

28  in the millions, if not tens of millions.

1    While Plaintiffs label their claims as torts, the essence of their case is the relief sought:

2  "injunctive relief requiring enactment of Laws of the Game that provide proper concussion

3  management and return-to-play guidelines." (*Id.* ¶ 32.) Plaintiffs "seek an injunction requiring

4  each Defendant to (1) mandate the enactment and enforcement of proper concussion-

5  management practices and return-to-play guidelines; (2) mandate substitution rules that allow for

6  medical evaluation without penalty; and (3) mandate limits on heading by players under 17."

7  (*Id.*)

8    Only one Plaintiff purports to allege an instance when she suffered a concussion, and

9  even that injury did not result from heading the ball. (Compl. ¶ 52.)  The remaining six

10  Plaintiffs fail to allege that they suffered any injury playing soccer or even that they ever headed

11  the ball.  Instead, they articulate only a vague risk of injury, namely, that they are "at increased

12  risk of latent brain injuries caused by repeated head impacts as well as the accumulation of

13  concussive and subconcussive hits in [their] soccer career[s] and therefore [are] in need of

14  medical monitoring." (Compl. ¶¶ 40, 43, 46, 49, 52.)

15    **FIFA and the Other Defendants**

16    Five of the six Defendants are based in the United States and represent various levels of

17  soccer organizations, from nationwide governing associations to local and regional

18  organizations.  Only one of these Defendants, US Soccer, is a member of FIFA.  US Soccer and

19  US Club oversee both youth and adult soccer, amateur and professional.  USYSA, AYSO and

20  Cal North oversee youth soccer only.  The sixth Defendant, FIFA, is "an association registered in

21  the Commercial Register in accordance with art. 60 ff. of the Swiss Civil Code," with its

22  principal place of business in Zurich.  (Compl. ¶ 55; Valcke Decl. ¶ 3.)  FIFA has no meaningful

23  presence in California:

24    • FIFA has no office, mailing address, employees, or subsidiary in California;

25    • FIFA maintains no bank accounts and pays no taxes in California;

26    • FIFA maintains no distribution or manufacturing facilities in California; and

27    • FIFA maintains no agent for service of process in California, and is not registered to do business in California.

28

1    (Valcke Decl. at ¶¶ 16-18, 20-25.)

2        As Plaintiffs allege, "FIFA serves as the international governing body for soccer," the

3    members of which include US Soccer and 208 other national soccer organizations from around

4    the world.  (Compl. ¶ 19; *see also* Valcke Decl. at ¶ 2.)  FIFA organizes a limited number of

5    intercontinental soccer events, namely the FIFA World Cup™ and other worldwide soccer

6    competitions.  (Valcke Decl. at ¶ 4.)  FIFA does not organize any soccer leagues or tournaments

7    on a continental, national, regional or local level, including in the U.S.  (*Id.* ¶¶ 4, 6, 34.)

8        FIFA is a wholly separate legal entity from US Soccer (and the other Defendants) and has

9    no role in the organization or administration of youth soccer in the U.S.  (Valcke Decl. at ¶¶ 3,

10   6, 34.)  As Plaintiffs acknowledge, Article 18 of the FIFA Statutes provides:

11           Leagues or any other groups affiliated to a Member of FIFA shall be subordinate
12           to and recognised by that Member.  The Member's statutes shall define the scope
             of authority and the rights and duties of these groups.  The statutes and
13           regulations of these groups shall be approved by the Member.

14   (Compl. ¶ 203.)

15        The Complaint does not allege that any of the Plaintiffs participated in any soccer

16   competition organized by FIFA or that any of them are members of FIFA.  Instead, Plaintiffs

17   allege that the various U.S.-based entities for which they played soccer abide by the "FIFA Laws

     of the Game."  (Compl. ¶¶ 39, 42, 45, 48, 51.)  The Laws of the Game are the codified rules that
18
     help define association football.  However, they are not set in stone, are particularly flexible in
19
     their application to youth and women's soccer, and—critically here—are not authored or set by
20
     FIFA in any event.  The Laws of the Game expressly provide:
21
             [S]ubject to the agreement of the member association concerned and provided the
22           principles of these Laws are maintained, *the Laws may be modified in their
             application for matches for players under 16 years of age, for women footballers*,
23           for veteran footballers (over 35 years of age) and for players with disabilities.
             *Any or all of the following modifications are permissible*: size of the field of play;
24           *size, weight and material of the ball*; width between the goalposts and height of
             the crossbar from the ground; duration of the periods of play; *substitutions*.
25           Further modifications are only allowed with the consent of the International
             Football Association Board.
26
     (Valcke Decl. Ex. C, *Laws of the Game 2014/2015* at 3 (emphasis added).)  Flexibility with
27
     respect to ball size, weight and material, as well as substitutions, is particularly relevant to
28

---

- 6 -

Plaintiffs' claims.  These decisions are not controlled by FIFA, but rather by national, regional, or local clubs, associations, or leagues.  Plaintiffs' allegations confirm this freedom, noting that "the FIFA substitution rule is not followed at the youth level."  (Compl. ¶ 383.)[2]

**Non-Party International Football Association Board**

Non-party International Football Association Board ("IFAB") was formed soon after the creation of the Laws of the Game, which date back to 1863.  (Valcke Decl. ¶¶ 7-8.)  Made up of two representatives from each of the four soccer associations of the United Kingdom (England, Scotland, Wales and Northern Ireland), IFAB met for the first time on June 2, 1886, with the purpose of safeguarding the Laws of the Game.  (Valcke Decl. ¶ 8.)  In 1913, 50 years after the introduction of the Laws of the Game, FIFA became a member of IFAB.  Plaintiffs concede that "[t]he sole responsibility for the Laws of the Game lies with [IFAB], a body that convenes once a year to discuss the Laws." (Compl. ¶ 214.)

IFAB "is an association in accordance with Swiss law with its headquarters located in Zurich (Switzerland)."  (Valcke Decl. Ex. B, IFAB Statutes, Art. 1.)  It is a legal entity wholly separate from FIFA.  (Valcke Decl. ¶¶ 10-11.)  Within IFAB, there are five members; the four British Associations each have one vote, and FIFA has four votes (as the representative of the other 205 FIFA member associations), which may be exercised "en bloc."  (Valcke Decl. Ex. B, IFAB Statutes, Art. 4; *see also* Compl. ¶ 214.)  Decisions passed by IFAB "require a majority of three-quarters of the vote cast." (Valcke Decl. Ex. B, IFAB Statutes, Art. 7.)  FIFA therefore does not have authority to amend the Laws of the Game; that authority rests only with IFAB.

## ARGUMENT

Plaintiffs' Complaint is fundamentally flawed, procedurally and substantively, in numerous, independent respects.  While Plaintiffs label their causes of actions as torts, at its core the Complaint is a grievance over rules promulgated by non-party IFAB and six voluntary member organizations.

---

[2]   Additionally, AYSO and Cal North have adopted concussion protocols.  (Compl. ¶¶ 319-20, 350.)  As these allegations make clear, AYSO and Cal North were free to implement concussion protocols irrespective of the Laws of the Game.

Analyzed as such, there are four jurisdictional and other threshold infirmities (described in Section I), each of which provides an independent basis for the Court to dismiss the Complaint:  (1) lack of personal jurisdiction; (2) failure to join a necessary party; (3) lack of standing; and (4) abstention from exercising subject matter jurisdiction.  Even if the Court retains jurisdiction and analyzes the claims as actual tort claims, the Complaint still fails to state a claim. The bases for dismissal on those grounds are set out in Section II.[3]

**I.     THE COURT DOES NOT HAVE, OR
        SHOULD DECLINE TO EXERCISE, JURISDICTION**

**A.     The Court Does Not Have Personal Jurisdiction over FIFA**

1.     The Court Does Not Have General Personal Jurisdiction over FIFA

A California federal court recently held that FIFA is not subject to personal jurisdiction in California.  *Worldwide Subsidy Grp., LLC* v. *Fed'n Int'l de Football Ass'n*, No. 14-00013 MMM, Order Granting Defendant's Motion to Dismiss (C.D. Cal. 2014). (Boehning Decl. Ex. A.)  Analyzing very similar allegations to those made here, the court found that it could not exercise general jurisdiction, as FIFA has no offices or employees in California and pays no taxes here.  *Id.* at 15-16.  It also rejected the argument that the 2003 FIFA Women's World Cup, in which 6 of 32 matches were played in California, was sufficient to confer jurisdiction.  *Id.* at 16; *see also Raymond* v. *Fed'n Int'l de Football Ass'n*, No. 20286/06 (N.Y. Sup. Ct. June 3, 2008) (dismissing action against FIFA for lack of personal jurisdiction in New York). (Boehning Decl. Ex. B.)

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co.* v. *Caddy*, 453 F.3d 1151, 1154-55 (9th Cir. 2006).  Because California permits the exercise of personal jurisdiction to the full extent permitted by the Constitution, *see* Cal. Civ. Code § 410.10, the question of whether a California court has personal jurisdiction over

---

[3]     FIFA joins the motion to dismiss filed by Defendant US Soccer to the extent it, too, argues that Plaintiffs lack standing to obtain the relief sought and that Plaintiffs fail to state claims for negligence, voluntary undertaking, and medical monitoring.  FIFA also joins the motions to dismiss filed by the other Defendants.

1   a nonresident defendant depends on whether the plaintiff has alleged sufficient minimum

2   contacts between the defendant and the state of California.  *Worldwide Subsidy*, Order at 12

3   (citing *International Shoe Co.* v. *Washington*, 326 U.S. 310, 316 (1945); *Helicopteros*

4   *Nacionales de Columbia S.A.* v. *Hall*, 466 U.S. 408, 414-16 (1984)).

5       "A court may assert general jurisdiction over foreign . . . corporations . . . when their

6   affiliations with the State are so 'continuous and systematic' as to render them essentially at

7   home in the forum state."  *Marvix Photo, Inc.* v. *Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th

8   Cir. 2011) (quoting *Goodyear Dunlop Tires Operations, S.A.* v. *Brown*, 131 S. Ct. 2846, 2851

9   (2011)).  "[T]he standard for establishing general jurisdiction is fairly high . . . and requires that

10  the defendant's contacts be of the sort that approximate physical presence."  *Bancroft & Masters,*

11  *Inc.* v. *Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).  Reliable indicators for the

12  assertion of general jurisdiction include, for example, that the defendant makes sales, solicits or

13  engages in business, serves the state's markets, designates an agent for service of process, holds

14  a license, has employees, maintains an office or mailing address, or pays taxes in the forum state.

15  *Hirsch* v. *Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1478 (9th Cir. 1986) (finding

16  no general jurisdiction where these factors were not met); *see also Bancroft & Masters*, 223 F.3d

17  at 1086 (no general jurisdiction over Augusta National Golf Club despite license agreement with

18  two television networks and other California vendors).

19      FIFA's limited contacts in California are wholly insufficient to confer general

20  jurisdiction.  FIFA does not designate an agent for service of process in California, hold a license

21  to do business in California, have employees in California,[4] maintain an office or mailing address

22  in California, or pay state taxes in California.  (Valcke Decl. ¶¶ 16-18, 20-24.)  *See Daimler AG*

23  v. *Bauman*, 134 S. Ct. 746, 760 (2014) ("With respect to a corporation, the place of incorporation

24  and principal place of business are 'paradig[m] . . . bases for general jurisdiction'") (quoting

25  *Goodyear*, 131 S. Ct. at 2854); *CollegeSource, Inc.* v. *AcademyOne, Inc.*, 653 F.3d 1066, 1074

26  (9th Cir. 2011) (defendant not subject to general jurisdiction where it had no offices or staff in

27

28
    ---
    [4]   The authorized agents referred to in the Complaint (¶ 71) are neither FIFA's agents for
          service of process nor employees of FIFA.  (Valcke  Decl. ¶¶ 23, 26.)

California, was not registered to do business in the state, had no registered agent for service of process and paid no state taxes).

In support of general jurisdiction, Plaintiffs cite a host of commercial arrangements between FIFA and other worldwide brands (some of which are allegedly based in California) such as Dick's Sporting Goods, EA Sports, Apple Computer, Google, Coca-Cola, Fox, Telemundo, ABC/ESPN, and Univision. Plaintiffs also note that FIFA-branded goods are sold throughout the U.S., FIFA hosted the 2003 Women's World Cup in the U.S. (including in California) and that a doctor in Santa Monica currently serves on two FIFA committees. (*See* Compl. ¶¶ 56-71.) Courts have rejected general jurisdiction in similar circumstances, because agreements such as these "constitute doing business with California, but do not constitute doing business in California." *Bancroft*, 223 F.3d at 1086; *see also Worldwide Subsidy*, Order at 15. "This is because engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders." *Bancroft*, 223 F.3d at 1086 (citing *Helicopteros*, 466 U.S. at 418); *see also CollegeSource*, 653 F.3d at 1075 (marketing and distribution of goods in a forum, without more, is not sufficient for general jurisdiction).[5] Under these facts, the court should not find general jurisdiction.[6]

### 2. The Court Does Not Have Specific Personal Jurisdiction over FIFA

Nor does the Court have specific personal jurisdiction over FIFA. To establish specific personal jurisdiction over a foreign defendant, a plaintiff must show that: (1) the out-of-state defendant purposefully directed its activities toward the residents of the forum state; (2) the

---

[5] While the Complaint does correctly allege that FIFA operates a website through which it derives revenue via the "Official FIFA Online Store," this fact is insufficient to confer general jurisdiction over FIFA. *CollegeSource*, 653 F.3d at 1075-76 ("If the maintenance of an interactive website were sufficient to support general jurisdiction in every forum in which users interacted with the website, the eventual demise of all restrictions on the personal jurisdiction of state courts would be the inevitable result.").

[6] *See, e.g., J. McIntyre Machinery, Ltd.* v. *Nicastro*, 131 S. Ct. 2780, 2797 (2011) ("McIntyre UK surely is not subject to general (all-purpose) jurisdiction in New Jersey courts, for that foreign-country corporation is hardly 'at home' in New Jersey.") (internal citation omitted); *Martinez* v. *Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) ("ATR is organized and has its principal place of business in France. It has no offices, staff, or other physical presence in California, and it is not licensed to do business in the state. Its California contacts are minor compared to its other worldwide contacts.") (internal citations omitted).

1   cause of action arises from or results from the defendant's forum-related actions, and (3) the

2   forum's exercise of personal jurisdiction is reasonable.  *See Int'l Shoe Co.*, 326 U.S. at 317-20.

3   To determine whether a plaintiff's claim derives from the defendant's forum-related action,

4   courts in the Ninth Circuit consider whether the plaintiff's claims would have arisen "but for" the

5   defendant's contact with the forum.  *Doe* v. *Unocal Corp.*, 248 F.3d 915, 923-24 (9th Cir. 2001).

6   "It is Plaintiff's burden to show that its claims would not have arisen *but for* Defendant's forum-

7   related activity."  *One True Vine, LLC* v. *Liquid Brands LLC*, No. C 10–04102 SBA, 2011 WL

8   2148933, at *7-8 (N.D. Cal. 2011) (emphasis in original).

9        Plaintiffs' claims are not alleged to arise from any specific FIFA forum-related activity.

10  As discussed above, to the extent FIFA has any contact with California, it is primarily of a

11  commercial nature.  FIFA does not stage or organize any continental, national, regional, or local

12  matches in California.  (Valcke Decl. ¶¶ 4, 34.)  In the only alleged instances in which FIFA has

13  participated as an organizer of sport (the 2003 Women's World Cup, during which 6 of 32

14  matches were played in California (Valcke Decl. ¶ 32)), the Complaint fails to allege that

15  Plaintiffs participated in these matches, that they were playing soccer at that time, and that their

16  so-called injury (risk of concussions) would not have occurred but for FIFA's activity in the

17  forum.  Nor is the presence in California of one member of FIFA's medical committee sufficient

18  to confer specific jurisdiction over the claims in this case.  (Compl. ¶ 60.)  Again, there is no

19  allegation that Plaintiffs' injury would not have occurred but for that contact with California.

20       Nor would the exercise of specific personal jurisdiction over FIFA be reasonable.  The

21  third part of the specific personal jurisdiction test, evaluating the reasonableness of personal

22  jurisdiction, ensures that even in the presence of the first two parts of the test, personal

23  jurisdiction would "comport with fair play and substantial justice."  *Burger King Corp.* v.

24  *Rudzewicz*, 471 U.S. 462, 477 (1985).  For the reasons stated above, given FIFA's lack of

25  contacts with California, the Court's jurisdiction over FIFA would not be reasonable.

26       **B.    The Court Should Dismiss the Complaint for Failure to Join IFAB**

27       Even if the Court finds personal jurisdiction over FIFA, the case still should be dismissed

28  because Plaintiffs are suing the wrong entity.  Plaintiffs seek to compel this Court to change the

1   international Laws of the Game, but they have failed to join the *only* entity—IFAB—with the

2   authority to change those laws.  Without IFAB, a party not subject to personal jurisdiction in

3   California, the Court cannot afford the relief requested.

4        Pursuant to Federal Rule of Civil Procedure 19, a court must dismiss an action if:  (1) an

5   absent party is necessary (*i.e.*, required to be joined if feasible); (2) it is not feasible to join the

6   absent party; and (3) the absent party is indispensable such that "in equity and good conscience"

7   the action cannot proceed among the existing parties.  *Paiute-Shoshone Indians of the Bishop*

8   *Cmty. of the Bishop Colony, Cal.* v. *City of Los Angeles* ("*Paiute*"), 637 F.3d 993, 997 (9th Cir.

9   2011).  Each element is met here.

10       The Ninth Circuit's decision in *Paiute* is directly on point.  There, a federally recognized

11  Indian tribe brought an action against the City of Los Angeles, seeking an order ejecting the City

12  from land it previously acquired in a deal with the United States and restoring the tribe to

13  possession of it.  *Paiute*, 637 F.3d at 996.  However, if the plaintiff prevailed, the title to the

14  tribal land would revert to the United States, not to the plaintiff.  *Id*. at 998.  Under those facts,

15  the Ninth Circuit affirmed dismissal, holding that there was "no doubt that the United States was

16  a required party:"

> To achieve the relief that it seeks, Plaintiff would require an additional order,
> apart from an order ejecting the City, requiring the United States either to cede
> title to Plaintiff or to hold the land in trust for Plaintiff's benefit.  Without such an
> order, we see nothing stated in Plaintiff's complaint that would require the United
> States to give the [tribal] land back to Plaintiff.  And before a court could bind the
> United States by such an order, the United States must be made a party.

*Id.*  The same is true in this case.  An injunction ordering the Defendants to implement changes

to the Laws of the Game would be meaningless because only IFAB is capable of effecting such

changes.  As noted in FIFA's accompanying motion to compel arbitration, to the extent Plaintiffs

seek changes at the local level, they can pursue those through their clubs.  But IFAB is required

to change the Laws of the Game.  Thus, achieving the relief Plaintiffs seek would require an

additional order to IFAB.  As discussed in further detail below, joinder of IFAB is not feasible

and IFAB is an indispensable party, warranting dismissal of the action.

1.   IFAB Is a Necessary Party

A party may be necessary under Rule 19(a) in one of three ways:  (1) if, in its absence, the court cannot accord complete relief among existing parties, *see* Fed. R. Civ. P. 19(a)(1)(A); (2) if it has an interest in the action and resolving the action in its absence may as a practical matter impair or impede its ability to protect that interest, *see* Fed. R. Civ. P. 19(a)(1)(B)(i); or (3) if it has an interest in the action and resolving the action in its absence may leave an existing party subject to inconsistent obligations because of that interest, *see* Fed. R. Civ. P. 19(a)(1)(B)(ii).  Complete relief "is concerned with consummate rather than partial or hollow relief as to those already parties, and with precluding multiple lawsuits on the same cause of action." *Disabled Rights Action Comm.* v. *Las Vegas Events, Inc.*, 375 F.3d 861, 879 (9th Cir. 2004) (quoting *Northrop Corp.* v. *McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1983)).  In making this determination, the court asks whether the "absence of the party would preclude the district court from fashioning meaningful relief as between the parties." *Id.*

Plaintiffs concede that "[t]he sole responsibility for the Laws of the Game lies with [IFAB]." (Compl. ¶ 214.)  Because FIFA has only four of the eight votes on IFAB, FIFA cannot alter the Laws of the Game, which require a three-fourths majority to be changed.  Accordingly, if the court were to grant Plaintiffs' request for injunctive relief, it would be meaningless.[7]

2.   Joinder of IFAB Is Not Feasible

The second step in the Rule 19 inquiry is to determine whether it is "feasible" to order that the absentee be joined. *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 907 (C.D. Cal. 2011).  Joinder is not feasible when an absent party is not subject to personal jurisdiction in the forum state. *See id.*  IFAB is an association organized under the laws of Switzerland with

---

[7]   *See Paiute*, 637 F.3d at 997-98; *Friends of Amador County* v. *Salazar*, No. CIV. 2:10–348 WBS CKD, 2011 WL 4709883, at *2 (E.D. Cal. Oct. 4, 2011) ("[T]he court cannot provide the litigation parties complete relief where the requested remedy, if granted, would fail to bind all absent parties who are in a position to act in direct contravention of that remedy."); *Dawavendewa* v. *Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1155-56 (9th Cir. 2002) (holding that unnamed tribal nation was necessary party where it would not have been bound by injunction).  This also demonstrates that resolving the action in IFAB's absence may impair its ability to protect its interest. *See* Fed. R. Civ. P. 19(a)(1)(B)(i). IFAB can claim a legitimate interest in protecting the Laws of the Game because it is the only entity with the power to amend them.  Moreover, there is a substantial risk of inconsistent obligations if IFAB is sued separately, either by these Plaintiffs or others.

1  headquarters in Zurich.  (Valcke Decl. ¶ 11.)  Plaintiffs have not alleged that IFAB conducts any

2  activities in the United States, much less in California, and FIFA is not aware of any.  (Valcke

3  Decl. ¶ 12.)  Therefore, IFAB is not subject to general or specific personal jurisdiction in

4  California.  *See Int'l Shoe Co.* v. *Washington*, 326 U.S. 310, 319 (1945) (noting that due process

5  "does not contemplate that a state may make binding a judgment in personam against an

6  individual or corporate defendant with which the state has no contacts, ties, or relations.").

7  Accordingly, joinder of IFAB is not feasible.  *See In re Toyota*, 785 F. Supp. 2d at 907 (joinder

8  not feasible where "[t]here is nothing in the record to suggest that the Court has personal

9  jurisdiction over the unnamed foreign entities . . . [as] these entities appear to be foreign

10  corporations lacking contacts with the United States.").  Plaintiffs concede as much; if they

11  thought they had jurisdiction over IFAB, they surely would have named it as a defendant.

12              3.      IFAB Is an Indispensable Party

13          The final step of the Rule 19 inquiry is determining whether the absentee is an

14  indispensable party such that in "equity and good conscience" the action cannot proceed among

15  the existing parties.  *Paiute*, 637 F.3d at 1000; *see also* Fed. R. Civ. P. 19(b).  In making this

16  determination, a court considers the following factors: (1) the extent to which a judgment

17  rendered in the person's absence might prejudice that person or the existing parties; (2) the

18  extent to which any prejudice could be lessened or avoided by (a) protective provisions in the

19  judgment, (b) shaping the relief, or (c) other measures; (3) whether a judgment rendered in the

20  person's absence would be adequate; and (4) whether the plaintiff would have an adequate

21  remedy if the action were dismissed for nonjoinder.  Fed. R. Civ. P. 19(b)(1)-(4).  Each factor

22  supports the conclusion that the present action cannot proceed without IFAB.

23          *First*, as discussed above, a judgment rendered in IFAB's absence will prejudice IFAB.

24  *See* Fed. R. Civ. P. 19(b)(1).  Courts in the Ninth Circuit have held, for example, that absent

25  parties may "be prejudiced by the denial of an opportunity to defend their . . . safety and

26  marketing practices."  *In re Toyota*, 785 F. Supp. 2d at 908 (internal citations omitted).  IFAB

27  will be prejudiced because, if the action proceeds without it, it will be denied the opportunity to

28  defend its practices and rules.

*Second*, a judgment rendered in IFAB's absence will prejudice FIFA and the other Defendants. *See* Fed. R. Civ. P. 19(b)(1). Examples of interests a defendant may have include the "wish to avoid multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another." *Paiute*, 637 F.3d at 1001 (quoting *Provident Tradesmens Bank & Trust Co.* v. *Patterson*, 390 U.S. 102, 110 (1968)). As discussed above, FIFA does not control IFAB or the Laws of the Game, and in the event liability is found, it necessarily should be borne by IFAB. *See In re Toyota*, 785 F. Supp. 2d at 909. IFAB's absence also increases the risk of a subsequent litigation in which it is a defendant and, therefore, the possibility of inconsistent relief.

*Third*, prejudice to IFAB, FIFA, and the other Defendants cannot be lessened or avoided. *See* Fed. R. Civ. P. 19(b)(2). Because the request for injunctive relief can be satisfied only by IFAB, prejudice could not be lessened via protective provisions in the judgment, shaping the relief, or other measures. *See* Fed. R. Civ. P. 19(b)(2)(A)-(C).

*Fourth*, a judgment in IFAB's absence would be inadequate. *See* Fed. R. Civ. P. 19(b)(3). The Supreme Court has interpreted this factor to refer to the interests of courts and the public "in settling disputes by wholes, whenever possible." *Provident*, 390 U.S. at 111. As discussed above, this Court cannot accord complete relief without IFAB, and therefore, without IFAB, the dispute cannot be settled in whole. *Id.*

*Finally*, Plaintiffs have an adequate remedy if the case is dismissed. *See* Fed. R. Civ. P. 19(b)(4). In the event of dismissal, Plaintiffs could go to the soccer clubs and associations of which they are members and seek to change the rules using the dispute resolution mechanisms of their clubs. Plaintiffs would also remain free—as they already are—to start their own soccer clubs with a set of rules they think is more appropriate (or to refrain from playing or allowing their minor children to play soccer).

## C. Plaintiffs Lack Standing to Assert Their Claims

Plaintiffs also fail to allege facts that, if proved, would establish that they meet the case or controversy requirements for Article III standing. "It is the burden of the party who seeks the exercise of jurisdiction in his favor clearly to allege facts demonstrating that he is a proper party

to invoke judicial resolution of the dispute." *FW/PBS, Inc.* v. *City of Dallas*, 493 U.S. 215, 231 (1990) (internal citations and quotations omitted).  In presenting these facts, the plaintiff must sufficiently allege all three essential elements of Article III standing:  an injury-in-fact, a causal connection between the injury and the conduct complained of, and likelihood that the injury will be redressed by a favorable court decision.  *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations omitted).  The Complaint fails to meet that test for any of the Plaintiffs.

### 1.    Six Plaintiffs Fail to Allege Any Injury

An injury in fact requires the invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  *Lujan*, 504 U.S. at 559-60 (internal citations omitted).  Where the plaintiff seeks prospective injunctive relief, any threatened future injury must be similarly real and immediate, not conjectural or hypothetical, in order to confer standing.  *Id.* at 560; *see also City of Los Angeles* v. *Lyons*, 461 U.S. 95, 105-07 (1983) (plaintiff lacked standing to seek prospective injunctive relief because the fact that plaintiff had been subjected to a chokehold by police officers in the past did not establish a real and immediate threat that he would be subjected to it in the future).  Though "imminence is concededly a somewhat elastic concept," the Supreme Court has emphasized that "threatened injury must be certainly impending to constitute injury in fact and that allegations of possible future injury are not sufficient."  *Clapper* v. *Amnesty Int'l. USA*, 133 S. Ct. 1138, 1147 (2013) (internal citations omitted); *see also Blair* v. *Shanahan*, 38 F.3d 1514, 1519 (9th Cir. 1994) (future injury sufficient only where plaintiff is "immediately in danger of sustaining some direct injury as a result of the challenged conduct") (internal citation omitted).

Here, six Plaintiffs plead no actual injury whatsoever (and for the seventh, her concussion was not caused by heading a ball).  Instead, for each of these Plaintiffs, the Complaint provides a variation of a single sentence, which alleges that Plaintiff "is at increased risk of latent brain injuries caused by repeated head impacts or the accumulation of concussive and/or subconcussive hits in her soccer career and therefore is in need of medical monitoring."  (Compl. ¶ 46.)  While the Complaint asserts that each of these six Plaintiffs played on teams that were members of, or governed by, one or more Defendants (other than FIFA), none of these Plaintiffs

- 16 -

alleges that they ever headed a soccer ball, were struck in the head by a ball, or suffered any concussion.  These conclusory allegations fail to establish either past injury or the imminent risk of future injury necessary to satisfy the injury-in-fact requirement.  *See Lujan*, 504 U.S. at 563-64 (noting that without any "specific facts," "some day" threats are insufficient to confer standing).  This pleading deficiency is particularly problematic for these Plaintiffs, four of whom are under the age of twelve and six of whom do not allege that they currently play on a team under the auspices of any Defendant.  Given the absence of any such allegations, it is possible that these Plaintiffs never headed a ball and unclear whether any will continue their soccer careers such that they are exposed to any risk whatsoever.

2.  <u>There Is No Causal Connection Between Any Injury and FIFA</u>

Plaintiffs have not sufficiently alleged that their so-called injury (risk of concussions) is traceable to any acts or omissions by FIFA in a line of causation that is more than attenuated. *Lujan*, 504 U.S. at 559-60; *Allen* v. *Wright*, 468 U.S. 737, 757 (1984).  In cases where the chain of causation involves numerous third parties whose independent decisions collectively have a significant effect on plaintiffs' injuries, courts have found the causal chain too weak to support standing at the pleading stage.  *See, e.g.*, *San Diego Cnty. Gun Rights Comm.* v. *Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996) (holding that "plaintiffs' injury does not satisfy the requirements of Article III because it is the result of the independent action of some third party not before the court") (quoting *Lujan*, 504 U.S. at 560) (internal quotations omitted).

The Complaint fails to allege even a weak causal connection between the acts of FIFA and the injuries alleged.  The Complaint does not allege that Plaintiffs are members of FIFA, or that any club or league they played for is a member.  In addition, Plaintiffs do not allege that they ever participated in a soccer event organized by FIFA.  Rather, the Complaint attempts to suggest a causal connection by asserting that "[s]occer is played according to the 'Laws of the Game.'"  (Compl. ¶ 14.)  This attempt at a causal connection fails for several reasons:

- IFAB has the sole power to enact the Laws of the Game and is a distinct entity that FIFA does not control.  (*See supra*, at 12-13.)

- The Laws of the Game can be modified in their application to youth and women players.  (*See supra*, at 6.)  For example, national, regional or local leagues may use

- 17 -

smaller fields, may use softer or smaller soccer balls, and may change the permitted number of substitutions.  (Valcke Decl. Ex. C, *Laws of the Game 2014/2015* at 3.)

- Plaintiffs acknowledge that the Laws of the Game are flexibly implemented, noting "*some form* of these laws is . . . enacted by each of soccer's governing bodies." (Compl. at ¶ 14 (emphasis added).)  Plaintiffs also acknowledge that certain youth clubs have already implemented changes along the lines that Plaintiffs seek.  (Compl. ¶¶ 319-20, 350.)

- FIFA and Plaintiffs have no relationship as Plaintiffs have never participated in an event organized by FIFA.  Nor does FIFA have any relationship with any of the local and regional soccer associations in the U.S., each of which has, as the Complaint acknowledges, the ability to modify the Laws of the Game as it sees fit.  (*See supra* at 6-7 and n.2.)  Of the Defendants, only US Soccer is a member of FIFA.

- FIFA has no control and no involvement in the national, regional, and local programs in the U.S.  It is far-fetched even to assert that FIFA, which puts on the FIFA World Cup[TM] once every four years along with a small handful of other intercontinental competitions, has some causal connection to what happens at a recreational game of soccer played in DeKalb, Illinois among a group of eight- year-olds (let alone games played in tens of thousands of communities around the world every weekend).

This attenuated causal connection that Plaintiffs attempt to create between FIFA and Plaintiffs is insufficient to confer standing.  Equally important, Plaintiffs have failed to allege any causal connection between the rules they demand to be changed and concussions.  Unless the Court re-writes IFAB's Laws of the Game to prohibit heading—an inherent part of the sport— there is nothing else in the rules that causally connects them to the alleged risk of injury.

### 3.   A Favorable Decision Is Unlikely to Provide Redress for Plaintiffs' Alleged Injuries

Plaintiffs also cannot allege that it is likely, as opposed to merely speculative, that the alleged injury (risk of concussions) will be redressed by a favorable decision.  *Lujan*, 504 U.S. at 561.  In *Lujan*, the U.S. Supreme Court reversed lower court decisions on the issue of standing, noting that parties required to afford the requested relief were not party to the suit, and therefore a court decision could not provide the plaintiffs with the relief that they sought.  *Id.* at 568.  So, too, here, because a necessary party—IFAB—is missing.  Accordingly, judgment against FIFA cannot redress Plaintiffs' alleged injury.

### D.   The Court Should Abstain from Exercising Subject Matter Jurisdiction

At its core, the Complaint asks the Court to order six voluntary member soccer associations at various international, national and regional levels to rewrite their rules, both with respect to how the game is played and how players' health is managed.  While Plaintiffs are not

1    members of FIFA, they are each members of a local soccer association, which, they allege, is

2    ultimately governed by the Laws of the Game.  As such, and taking these allegations as true,

3    Plaintiffs are demanding that the Court intervene in a dispute between a voluntary membership

4    association and a group of plaintiffs governed by the rules of that association.

5          This is precisely the type of case that California courts routinely have declined to take

6    jurisdiction over.  And for good reason:  the Court's expertise is not on whether and at what age

7    youth soccer players should head a soccer ball, what size or weight that ball should be, or what

8    the substitution rules should be in the game of soccer.  These are decisions best left to the

9    associations themselves.  Moreover, if the Court ultimately were to grant the relief demanded, it

10   would be writing the rules of soccer not just for a handful of youth soccer players in California,

11   Illinois, and Colorado, but for hundreds of millions of soccer players in 209 countries around the

12   world.  This is hardly the role of the judiciary, as California law recognizes.

13         Under California law, "the rights and duties of members of a private voluntary

14   association as between themselves and in their relation to [the] association, are measured by the

15   terms of [the association's] constitution and by-laws."  *California Dental Assn.* v. *American*

16   *Dental Assn.*, 590 P.2d 401, 405 (Cal. 1979) (internal citations omitted); *see also Berke* v. *TRI*

17   *Realtors*, 257 Cal. Rptr. 738, 740 (Cal. Ct. App. 1989) (following *California Dental*).

18   Accordingly, California courts generally will decline to exercise jurisdiction over disputes

19   arising over an association member's rights related to the association.  *See Berke*, 257 Cal. Rptr.

20   at 740; *see also Kurz* v. *Fed'n of Petanque U.S.A.*, 52 Cal. Rptr. 3d 776, 785-86 (Cal. Ct. App.

21   2006).  Such a determination reflects the admonition that "[c]ourts must guard against unduly

22   interfering with an organization's autonomy by substituting judicial judgment" for that of the

23   organization.  *Berke*, 257 Cal. Rptr. at 741.

24         The abstention doctrine is particularly relevant in the sports context.  The California

25   Court of Appeal's decision in *Oakland Raiders* v. *National Football League*, 32 Cal. Rptr. 3d

26   266 (Cal. Ct. App. 2005), is instructive.  There, the Oakland Raiders brought an action against

27   the NFL and its commissioner seeking damages for breach of fiduciary duty.  The court affirmed

28   the trial court's conclusion that it was required to abstain from the "intra-association dispute"

under *California Dental*. *Id.* at 282. The Court of Appeal "observe[d] that the rationale of abstention from intra-association disputes applie[d] with particular force":

> Given the unique and specialized nature of this association's business – the operation of a professional football league – there is significant danger that judicial intervention in such disputes will have the undesired and unintended effect of interfering with the League's autonomy in matters where the NFL and its commissioner have much greater competence and understanding than the courts. We note that other courts have expressed similar unwillingness to intervene in matters that involve the business operations of professional sports organizations. *See Crouch* v. *Nat'l Ass'n for Stock Car Auto Racing*, 845 F.2d 397, 403 (2d Cir. 1988) (court should have declined review of interpretation by stock car racing organization of its own procedural rules in which organization reversed local race track's decision as to victor of stock car race); *Charles O. Finley & Co., Inc.* v. *Kuhn*, 569 F.2d 527, 537–39 (7th Cir. 1978) (question of whether player assignments were properly disapproved by baseball commissioner as being potentially harmful to the game was given deference by the court because the action was beyond competence of court to decide). We decline to descend into "the 'dismal swamp,'" *California Dental*, 23 Cal. 3d at 353, of resolving complex matters involving professional football that are best left to the voluntary unincorporated association that is the NFL.

*Id.* at 284-85.[8] The California Court of Appeal has made clear that *California Dental* "applies broadly," and "affirmatively stated that it was applying general common law that governed disputes within private organizations." *Oakland Raiders* v. *Nat'l Football League*, 113 Cal. Rptr. 2d 255, 264 (Cal. Ct. App. 2001).

The rationale applies here as well. Plaintiffs' complaints and suggested rule changes should be handled by each relevant organization without judicial intervention. This Court therefore should abstain from accepting subject matter jurisdiction.

## II. THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO STATE A CLAIM

In addition to the fatal jurisdictional flaws set forth above, the Complaint also should be dismissed because Plaintiffs fail to plead the basic elements of their claims for relief and because one of their claims is not recognized as an independent claim.

---

[8]   The abstention doctrine has been applied in the sports context with similar force in other jurisdictions. *See, e.g.*, *Indiana High School Athletic Ass'n* v. *Reyes*, 694 N.E.2d 249, 256-57 (Ind. 1997); *Hebert* v. *Ventetuolo*, 480 A.2d 403, 407 (R.I. 1984); *Matter of Caso* v. *New York State Pub. High School Athletic Ass'n*, 78 A.D.2d 41, 48-49 (N.Y. App. Div. 1980); *Crandall* v. *North Dakota High School Activities Ass'n*, 261 N.W.2d 921, 926 (N.D. 1978); *David* v. *Louisiana High School Athletic Ass'n*, 244 So.2d 292, 293-94 (La. Ct. App. 1971); *Robinson* v. *Illinois High School Ass'n*, 195 N.E.2d 38, 43 (Ill. App. Ct. 1963).

### A.    Plaintiffs Fail to State a Claim for Negligence

To prove negligence in California, "a plaintiff must prove duty, breach, causation, and damages." *Conroy* v. *Regents of University of Cal.*, 203 P.3d 1127, 1132 (Cal. 2009).  Plaintiffs fail adequately to allege several of these elements.

### 1.    Plaintiffs Have Not Alleged a Breach of a Legally Cognizable Duty

In the context of sports, the California Supreme Court has held that there is no legal duty to prevent risks that are "inherent in the sport itself."  *Knight* v. *Jewett*, 834 P.2d 696, 708 (Cal. 1992).  Rather, there is only a duty "not to increase the risks to a participant over and above those inherent in the sport."  *Id.*; *see also Balthazor* v. *Little League Baseball, Inc.*, 72 Cal. Rptr. 2d 337, 341 (Cal. Ct. App. 1998) (the applicable duty in sports is "a duty not to increase the risks inherent in the sport, not a duty to decrease the risks").

In determining what risks are "inherent," courts seek to ensure that legal liability does not chill "vigorous participation" or "alter fundamentally the nature of the sport."  *Knight*, 834 P.2d at 710.  California courts repeatedly have held that negligence-based liability is "preclude[d] . . . for injuries arising from those risks deemed to be inherent in a sport; as a matter of law, others have no legal duty to eliminate those risks or otherwise protect a sports participant from them." *Avila* v. *Citrus Coll. Dist.*, 131 P.3d 383, 391 (Cal. 2006) (school hosting baseball tournament did not have duty to player injured by pitch where his own coaches were present); *see also Balthazor*, 72 Cal. Rptr. 2d at 341 (league had no duty to end game early due to setting sun); *Danieley* v. *Goldmine Ski Associates, Inc.*, 266 Cal. Rptr. 749, 757 (Cal. Ct. App. 1990) (ski slope operator had no duty to remove trees as natural obstacles are inherent risk of the sport).[9]

Plaintiffs allege that heading is responsible for concussions in soccer, but acknowledge that heading is an inherent part of the sport.  (*See* Compl. ¶¶ 2, 12.)  It is not alleged that FIFA has done anything to increase the risks of the sport beyond those inherent in the game. Therefore, Plaintiffs' allegations of duty and breach are insufficient to state a claim.[10]

---

[9]    FIFA is far more removed from Plaintiffs' activities than the defendants in the cited cases, since those defendants had control over the relevant game or event, whereas FIFA does not.

[10]    Players at all levels (and their parents) are aware that this is a common maneuver within the game, so their decision to continue playing constitutes an assumption of the risk under the case law.  *See, e.g., Fortier* v. *Los Rios Cmty. Coll. Dist.*, 52 Cal. Rptr. 2d 812, 816 (Cal. Ct.

2.      FIFA Is Not the Proximate Cause of Plaintiffs' Alleged Injuries

As set forth above, the chain of causation alleged between any action taken by FIFA and any of the injuries alleged in the Complaint is insufficient to support a negligence claim.  (*See supra*, at 17-18.)  FIFA does not organize or control the games in which Plaintiffs played, and Plaintiffs have not alleged that they played in any event that FIFA organized.  Those games are run by clubs, which are members of other clubs and associations that are all able to make (and have made and will make in the future) changes to the rules of soccer.  As such, any of FIFA's actions alleged by Plaintiffs are too far removed from the alleged risk of injury to establish the required proximate causation as a matter of law.  *See Salem* v. *Superior Court*, 259 Cal. Rptr. 447, 452 (Cal. Ct. App. 1989), *modified* (June 23, 1989) ("[L]egal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability") (internal citations omitted).

**B.      Plaintiffs Fail to State a Claim for Voluntary Undertaking**

Plaintiffs alternatively assert that a duty has been created or assumed pursuant to California's "Good Samaritan" law, because FIFA allegedly has undertaken to come to the aid of Plaintiffs.   Plaintiffs allege that FIFA "voluntarily assumed a duty towards Plaintiffs . . . to supervise, regulate, monitor, and provide reasonable and appropriate rules to minimize the risk of injury to the players."  (Compl. ¶ 435.)  In support of this broad assertion, Plaintiffs cite various public statements made by FIFA, such as, "For more than a decade, making football a safe sport

---

App. 1996) ("To encourage aggressive play in football is simply to encourage the participants to play the game as it should be played."); *Rodrigo* v. *Koryo Martial Arts*, 122 Cal. Rptr. 2d 832, 840 (Cal. Ct. App. 2002) (injured karate student assumed the risk of injury because "a sport that involves interpersonal combat with both kicking and punching carries not just the inherent risk—but arguably the certainty—that a participant will not only kick and punch other participants but will also be kicked and punched by others"); *Ferrari* v. *Grand Canyon Dories*, 38 Cal. Rptr. 65, 70 (Cal. Ct. App. 1995) (injured white water rafter held to have assumed the risk because white water rafting, "by its very nature, involves the risk of striking objects both inside and outside the raft.  It is the thrill of challenging nature and running the rapids without mishap which gives the sport its distinct allure[.]"). Indeed, in the typical assumption of the risk analysis, the risk has already materialized because the plaintiff has been injured.  Here, the entire premise of the claim is anticipatory, as six Plaintiffs have not even alleged that they have been injured.  If Plaintiffs had pleaded a cause of action based on actual injuries suffered from heading a soccer ball, the case would be dismissed under the line of cases cited herein.  Plaintiffs' claims are even more deficient, since they do not allege that they have suffered any injury.

1   has been our major objective" and "We believe that we have a duty to society that goes beyond

2   football; to improve the lives of young people and their surrounding communities, to reduce the

3   negative impact of our activities and to make the most we can of the positives."  (Compl. ¶ 17;

4   *see also* Compl. ¶¶ 207-18.)  These statements are wholly insufficient to create a legal duty.

5       Under California law, a volunteer who, having no initial duty to do so, undertakes to

6   provide protective services to another, will be found to have a duty to exercise due care in the

7   performance of the undertaking if one of two conditions is met: either (1) the volunteer's failure

8   to exercise such care increases the risk of harm to the other person, or (2) the other person

9   reasonably relies upon the volunteer's undertaking and suffers injury as a result.  *Delgado* v.

10  *Trax Bar and Grill*, 113 P.3d 1159, 1175 (Cal. 2005); *see also City of Santee* v. *Cnty. of San*

11  *Diego*, 259 Cal. Rptr. 757, 759 (Cal. Ct. App. 1989).

12      As an initial matter, Plaintiffs fail to allege that FIFA undertook to provide protective

13  services, and the broad, general statements cited by Plaintiffs surely do not come close to

14  satisfying this requirement.  *See Artiglio* v. *Corning Inc.*, 957 P.2d 1313, 1318 (Cal. 1998) ("The

15  foundational requirement of the good Samaritan rule is that in order for liability to be imposed

16  upon the actor, he must specifically have undertaken to perform the task that he is charged with

17  having performed negligently[.]") (internal citations omitted).

18      Moreover, even had FIFA undertaken to provide protective services, there are serious

19  questions of scope.  The argument that FIFA specifically undertook to provide protective

20  services for these seven youth soccer players who play for an organization unrelated to FIFA (let

21  alone to any and all youth and professional soccer players worldwide) is completely unsupported

22  by the statements Plaintiffs cite.  The Good Samaritan law and the voluntary undertaking

23  doctrine are premised on a limited duty.  *See Baker* v. *City of Los Angeles*, 233 Cal. Rptr. 760,

24  763 (Cal. Ct. App. 1986) ("The duty of a 'good Samaritan' is limited.  Once he has performed

25  his voluntary act he is not required to continue to render aid indefinitely.").  The argument that

26  FIFA has assumed a broad and ongoing duty to provide protective services for all youth and

27  professional soccer players worldwide stretches the doctrine beyond recognition.

28

- 23 -

1    But if the Court were to conclude that Plaintiffs had properly alleged that FIFA undertook

2  protective services, Plaintiffs have failed to show how any of FIFA's actions have increased the

3  risk of harm.  To the contrary, Plaintiffs' claim is that FIFA has not acted to alleviate the risk of

4  heading, an integral part of soccer.  The California Supreme Court, however, has held that "a

5  failure to alleviate a risk cannot be regarded as tantamount to increasing that risk." *Paz* v. *State*

6  *of California*, 994 P.2d 975, 981 (Cal. 2000).

7    Finally, the California Supreme Court has rejected voluntary undertaking claims "where

8  the [defendant] had not induced reliance on a promise, express or implied, that they would

9  provide protection."  *Williams* v. *State*, 664 P.2d 137, 140 (Cal. 1983).  Plaintiffs have not

10  claimed that they reasonably relied on, or were even aware of, FIFA's statements.

11    **C.    Medical Monitoring Is Not Recognized as a Separate Cause of Action**

12    Plaintiffs also bring a claim for medical monitoring "under the laws of the states in which

13  they reside and assert claims on behalf of the Medical Monitoring Class under the laws of the

14  states in which class members reside."  (Compl. ¶ 445.)  Plaintiffs' medical monitoring claim

15  fails as a matter of law because none of the states in which Plaintiffs reside recognizes such a

16  cause of action.  California has affirmatively rejected the notion.  *See Potter* v. *Firestone Tire &*

17  *Rubber, Co.*, 863 P.2d 795, 823 (Cal. 1993); *Xavier* v. *Philip Morris USA, Inc.*, No. C 10–02067

18  WHA, 2010 WL 3956860, at *3-4 (N.D. Cal. Oct. 8, 2010).  Neither the Illinois Supreme Court

19  nor the Colorado Supreme Court has addressed the issue.[11]  Given California's outright rejection

20  of medical monitoring as an independent cause of action, and the uncertainty in the laws of

21  Illinois and Colorado, this Court should decline to recognize such a cause of action here.[12]  As

22

23  [11]  While lower federal courts applying Illinois law, as well as state intermediate appellate courts
in Illinois, have predicted that the Illinois Supreme Court would recognize an independent
claim for medical monitoring even in cases where there is no present physical injury, *see,*

24  *e.g.*, *Jensen* v. *Bayer AG*, 862 N.E.2d 1091, 1100 (Ill. App. Ct. 2007); *Carey* v. *Kerr-McGee
Chemical Corp.*, 999 F. Supp. 1109, 1119 (N.D. Ill. 1998); *Gates* v. *Rohm and Haas, Co.*,

25  618 F. Supp. 2d. 362, 368 (E.D. Pa. 2007), the Illinois Supreme Court has yet to do so.
Likewise, while at least one district court in Colorado has predicted that the Colorado

26  Supreme Court would recognize an independent claim for medical monitoring, *see Cook* v.
*Rockwell Int'l Corp.*, 755 F. Supp. 1468, 1477 (D. Colo. 1991), it has yet to do so.

27  [12]  States that have recognized medical monitoring as an independent cause of action have
adopted a common set of elements: "(1) plaintiff was significantly exposed to a proven

28  hazardous substance through the negligent actions of the defendant; (2) as a proximate result

- 24 -

1  California has concluded, to the extent that costs for medical monitoring can be recovered at all,

2  it should be as an element of damages to a standalone claim.  Otherwise Defendants could be

3  exposed to creation of a fund without a requirement that they were in breach of some standard of

4  care.  Indeed, this risk is illustrated by Plaintiffs' pleading of this cause of action, in which they

5  do not specifically allege any wrongful conduct that warrants creation of the fund.  (Compl.

6  Count III, ¶¶ 445-51.)  This is a particularly acute concern in this case, which is not the typical

7  fact pattern for a medical monitoring claim.  In many reported medical monitoring cases, the

8  plaintiffs were exposed to an uncontrovertibly hazardous substance, such as asbestos or other

9  toxin.  In this case, there is no "hazardous substance," only the inherent risk of a sport.  As such,

10 the Court should require proof of underlying misconduct beyond simply exposure to the

11 "hazardous substance" before even considering the propriety of a medical monitoring fund, and

12 therefore, a medical monitoring claim should not stand alone.

13                                   **<u>CONCLUSION</u>**

14         For the aforementioned reasons, FIFA respectfully requests that the Court dismiss all

15 claims with prejudice.

16 DATED:  January 30, 2015                    HOGAN LOVELLS US LLP

17

18                                            By ____/s/ Michael J. Shepard_____
                                                 Michael J. Shepard

19
                                              3 Embarcadero Center
20                                            Suite 1500
                                              San Francisco, CA 94111
21                                            Telephone: (415) 374-2300
                                              Facsimile:  (415) 374-2499
22                                            michael.shepard@hoganlovells.com

23                                               -and-

24  of exposure, plaintiff suffers a *significantly increased risk* of contracting a serious latent
    disease; (3) that increased risk makes periodic diagnostic medical examinations reasonably
25  necessary; and (4) monitoring and testing procedures exist which make the early detection
    and treatment of the disease possible and beneficial."  *Abuan* v. *General Elec. Co.*, 3 F.3d
26  329, 334 (9th Cir. 1993) (citing *In re Paoli Railroad Yard PCB Litigation*, 916 F.2d 829, 852
    (3d Cir. 1990)).  Here, by failing to allege that they ever headed a soccer ball, six of the
27  seven Plaintiffs fail to allege that they were exposed at all to a "proven hazardous substance."
    Moreover, because heading is an inherent part of soccer, Plaintiffs cannot allege that their
28  exposure to heading was through the tortious actions of FIFA.

1

2

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

3

4

5

6

7

8

Brad S. Karp (*pro hac vice*)
Bruce Birenboim (*pro hac vice*)
H. Christopher Boehning (*pro hac vice*)
Daniel H. Levi (*pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
bkarp@paulweiss.com
bbirenboim@paulweiss.com
cboehning@paulweiss.com
dlevi@paulweiss.com

9

10

*Attorneys for Defendant Fédération Internationale
de Football Association*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIFA'S MOTION TO DISMISS
CASE NO.: 4:14-CV-03879-PJH