1   HOGAN LOVELLS US LLP
    Michael J. Shepard (CA Bar No. 91281)
2   3 Embarcadero Center
    Suite 1500
3   San Francisco, CA 94111
    Telephone: (415) 374-2300
4   Facsimile: (415) 374-2499
    michael.shepard@hoganlovells.com
5
    PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
6   Brad S. Karp (*pro hac vice*)
    Bruce Birenboim (*pro hac vice*)
7   H. Christopher Boehning (*pro hac vice*)
    Daniel H. Levi (*pro hac vice*)
8   1285 Avenue of the Americas
    New York, NY 10019
9   Telephone: (212) 373-3000
    Facsimile: (212) 757-3990
10  bkarp@paulweiss.com
    bbirenboim@paulweiss.com
11  cboehning@paulweiss.com
    dlevi@paulweiss.com
12
    *Attorneys for Defendant Fédération Internationale de*
13  *Football Association*

14
                    **UNITED STATES DISTRICT COURT**
15
                    **NORTHERN DISTRICT OF CALIFORNIA**
16
                    **OAKLAND DIVISION**
17

18  RACHEL MEHR, et al.,                      Case No. 4:14-CV-03879-PJH

19                      Plaintiffs,           **DEFENDANT FÉDÉRATION**
                                              **INTERNATIONALE DE FOOTBALL**
20                                            **ASSOCIATION'S NOTICE OF**
                    vs.                       **MOTION AND MOTION TO**
21                                            **COMPEL ARBITRATION AND**
                                              **MEMORANDUM OF LAW IN**
22  FÉDÉRATION INTERNATIONALE DE              **SUPPORT OF THE MOTION TO**
    FOOTBALL ASSOCIATION, et al.              **COMPEL ARBITRATION**
23
                      Defendants.             The Honorable Phyllis J. Hamilton
24
                                              Date:        May 6, 2015
25                                            Time:        9:00 a.m.
                                              Courtroom:   Courtroom 3, 3rd Floor
26

27

28

1

## <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3  NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION ....................................1

4  ISSUE PRESENTED..........................................................................................................................1

5  MEMORANDUM OF LAW ...........................................................................................................2

6  PRELIMINARY STATEMENT ....................................................................................................2

7  STATEMENT OF FACTS ...............................................................................................................4

8  ARGUMENT .........................................................................................................................................10

9  THE COURT SHOULD DISMISS THE CASE IN FAVOR OF ARBITRATION ....................10

10      A.   A Valid Agreement to Arbitrate Exists.................................................................10

11      B.   Plaintiffs Are Bound by FIFA's Mandatory Arbitration Provision
              by the Doctrine of Equitable Estoppel ...............................................................14

12
        C.   FIFA's Statutes Encompass Plaintiffs' Claims.................................................15
13
    CONCLUSION.......................................................................................................................................17

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Armstrong* v. *Tygart*,
886 F. Supp. 2d 572 (W.D. Tex. 2012)....................................................................14

*Bollengier* v. *Doctors Med. Ctr.*,
272 Cal. Rptr. 273 (Cal. Ct. App. 1990) .................................................................12

*Brotherhood of Teamsters & Auto Truck Drivers Local No. 70* v. *Interstate Distrib. Co.*,
832 F.2d 507 (9th Cir. 1987) ............................................................................15, 16

*Camping Constr. Co.* v. *Dist. Council of Iron Workers*,
915 F.2d 1333 (9th Cir. 1990) ................................................................................15

*Chiron Corp.* v. *Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ................................................................................10

*Formostar, LLC* v. *Florentius*,
No. 2:11-cv-01166-GMN-CWH, 2012 WL 2885119 (D. Nev. 2012) .............14, 15

*Gear* v. *Webster*,
65 Cal. Rptr. 255 (Cal. Ct. App. 1968) ...................................................................13

*Gupta* v. *Stanford Univ.*,
21 Cal. Rptr. 3d 192 (Cal. Ct. App. 2004) ..............................................................13

*Gutkin* v. *Univ. of Southern California*,
125 Cal. Rptr. 2d 115 (Cal. Ct. App. 2002) ............................................................13

*Holderby* v. *Intern. Union of Operating Engineers, Local Union No. 12*,
291 P.2d 463 (Cal. 1955) ........................................................................................12

*King* v. *Larsen Realty, Inc.*,
175 Cal. Rptr. 226 (Cal. Ct. App. 1981) .................................................................13

*Moses H. Cone Mem'l Hosp.* v. *Mercury Const. Corp.*,
460 U.S. 1 (1983).............................................................................................10, 15

*Palmer* v. *Regents of Univ. of Cal.*,
132 Cal. Rptr. 2d 567 (Cal. Ct. App. 2002) ............................................................12

*Quevedo* v. *Macy's, Inc.*,
798 F. Supp. 2d. 1122 (C.D. Cal. 2011) .................................................................10

*Scott* v. *Lopez*,
No. C12-01456 HRL, 2013 WL 1182957 (N.D. Cal. Mar. 21, 2013)....................15

*Simula, Inc.* v. *Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) ..................................................................................15

- ii -

*Sparling* v. *Hoffman Constr. Co.*,
    864 F.2d 635 (9th Cir. 1988) ............................................................................................10

*Varadarajan* v. *U.S. Cricket Ass'n, Inc.*,
    No. 12-CV-01306-LHK, 2012 WL 1252783 (N.D. Cal. Apr. 13, 2012) ................................12

*Westlake Cmty. Hosp.* v. *Superior Court*,
    551 P.2d 410 (Cal. 1976) ..................................................................................................12

## STATUTES

9 U.S.C. § 1 ..............................................................................................................................10

9 U.S.C. § 2 ..............................................................................................................................10

9 U.S.C. § 3 ..............................................................................................................................10

9 U.S.C. § 4 ..............................................................................................................................10

1

## <u>NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION</u>

2      PLEASE TAKE NOTICE that on May 6, 2015 at 9:00 a.m., or as soon thereafter as

3 counsel may be heard, at the U.S. District Court, Northern District of California, located at 1301

4 Clay Street, Oakland, California, before the Honorable Phyllis J. Hamilton, subject to its

5 objection that it is not subject to personal jurisdiction, Defendant Fédération Internationale de

6 Football Association ("FIFA") will move, and hereby moves, for an Order dismissing this action

7 and compelling arbitration, pursuant to 9 U.S.C. §§ 3, 4.  This motion is based on this Notice of

8 Motion and Motion; the accompanying Memorandum of Law; the Declarations of Jérôme

9 Valcke and H. Christopher Boehning and the exhibits thereto; and all other matters properly

10 before this Court.

11

## <u>ISSUE PRESENTED</u>

12    1.   Should the Court dismiss Plaintiffs' claims against FIFA in favor of binding arbitration?

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**MEMORANDUM OF LAW**

2      FIFA has filed a motion to dismiss the Complaint with prejudice pursuant to Rules

3   12(b)(1), (2), (6) and (7).  In the event the Court denies that motion, FIFA respectfully submits in

4   the alternative that the Court should dismiss Plaintiffs' claims against FIFA in favor of binding

5   arbitration.  FIFA's arguments are made without prejudice and under the reservation that FIFA

6   objects to personal jurisdiction.

7

**PRELIMINARY STATEMENT**

8      This case is brought by seven young soccer players from California, Illinois, and

9   Colorado.  They have filed this proposed class action asking this Court to rewrite the rules of

10  soccer at all levels, from local youth leagues to international professional competitions, in 209

11  countries.  Each of these seven players is (or was) a member of a local soccer club in their

12  community, which is itself a member of a regional or state club or association, which is a

13  member of a national youth organization, which is a member of US Soccer.  US Soccer is a

14  member of FIFA; it is one of 209 national soccer federations worldwide that is a member of

15  FIFA.  None of the Plaintiffs (or their local clubs) is a member of, or has any relationship with,

16  FIFA.

17     While Plaintiffs label their causes of actions as torts, at its core the Complaint is a

18  grievance over the rules promulgated by various soccer organizations.  Plaintiffs seek an

19  injunction against FIFA and several national, regional, and local U.S.-based soccer organizations

20  requiring these organizations to adopt certain unspecified concussion management protocols,

21  change the rules for heading a soccer ball, and change the rules governing substituting players in

22  games.  They also seek a monetary fund of unspecified size to pay for medical monitoring of "all

23  past, current, and future FIFA athletes" worldwide.

24     U.S. Federal Court is the wrong forum for this dispute.  As set forth below, the proper

25  vehicle for Plaintiffs to suggest their proposed rule changes is first to make a request for such

26  changes with their local soccer club.  Those clubs—not FIFA—set the rules that govern play in

27  the games played on soccer fields across the United States each weekend.  This lawsuit is akin to

28

- 2 -

1    a nine-year-old hockey player suing the International Ice Hockey Federation for rule changes in

2    his or her local hockey league.

3    Plaintiffs' local soccer clubs (and/or their parent clubs or associations) have adopted rules

4    or by-laws that do not permit recourse to courts without first exhausting all available remedies

5    within the club structure.  If Plaintiffs are dissatisfied after their approach to their local club, the

6    dispute resolution mechanisms provided for at the club level provide a remedy—appeal to the

7    next level (*e.g.*, the league or state association), and the next, until, if necessary, appealing to US

8    Soccer.  Plaintiffs do not allege that they have even begun to exhaust their remedies through their

9    clubs.

10   If Plaintiffs choose to pursue claims against FIFA after exhausting those remedies, that

11   claim must be heard by the Court of Arbitration for Sport ("CAS").  That is because FIFA's

12   statutes contain a mandatory arbitration provision.  Pursuant to Article 66 of the FIFA statutes,

13   all disputes between FIFA and players are to be resolved by the Court of Arbitration for Sport.

14   Furthermore, Article 68 prohibits recourse to ordinary courts of law and requires that disputes

15   affecting any of FIFA's members (*e.g.*, US Soccer) or its members, leagues, clubs or *players*, be

16   taken to the Court of Arbitration for Sport.  FIFA's statutes also require every FIFA member

17   (including US Soccer) to insert a clause into its bylaws that prohibits its members from resorting

18   to ordinary courts of law.  US Soccer has done that, which is why the clubs for which Plaintiffs

19   played prohibit the use of the courts without first exhausting remedies within the club structure.

20   Therefore, by virtue of their membership in local clubs that roll up into US Soccer,

21   Plaintiffs can only pursue their claim against FIFA (if at all) in arbitration.

22   Even if this were not the case, there is a second, independent reason why Plaintiffs are

23   bound to arbitrate their claims against FIFA.  Pursuant to the doctrine of equitable estoppel,

24   Plaintiffs cannot pick and choose those FIFA statutes that allegedly support their claims, while

25   ignoring the statutes that govern the dispute resolution process.

26   Plaintiffs do not (and cannot) allege that they are members of FIFA or have ever played

27   in any FIFA-organized match or competition.  Nevertheless, Plaintiffs claim to be bound by

28   FIFA's statutes through their participation in their local clubs, and liberally cite them in support

1   of their allegations.  Plaintiffs rely heavily on FIFA's laws and statutes to argue that FIFA

2   ultimately controls the sport of soccer at every level—from the FIFA World Cup$^{TM}$, which is

3   organized by FIFA, played every four years, and is the most watched televised sporting event in

4   the world, to local youth games that are played in parks and playgrounds every weekend in

5   communities across the country (and around the world), which FIFA does not organize or

6   oversee.  Yet Plaintiffs conveniently overlook the fact that the very same laws on which they rely

7   require that their claims be arbitrated.  By purposefully exploiting certain FIFA statutes in

8   support of their claims, the doctrine of equitable estoppel requires that Plaintiffs be bound by all

9   of them, including the mandatory arbitration provision, as set forth in Articles 66 and 68 of the

10  FIFA statutes.  Simply put, Plaintiffs cannot pick and choose the laws to which they are bound.

11  Either none of the laws applies, and Plaintiffs' claims against FIFA must fail, or they all apply,

12  and Plaintiffs must arbitrate their claims.

13          For these reasons and those discussed below, the Court should compel Plaintiffs to

14  arbitrate their claims.

15                              **STATEMENT OF FACTS**[1]

16          Plaintiffs—two adults and five minors—bring this putative class action against six

17  Defendants—FIFA, the United States Soccer Federation, Inc. ("US Soccer" or "USSF"), U.S.

18  Youth Soccer Association, Inc. ("USYSA"), American Youth Soccer Organization ("AYSO"),

19  U.S. Club Soccer ("US Club") and California Youth Soccer Association ("Cal North").

20  Plaintiffs allege that these Defendants have failed to adopt and enforce rules that would reduce

21  the risk of preventable injuries resulting from concussions and repetitive heading.  (Compl. ¶ 28.)

22  Plaintiffs further allege that FIFA has failed to modify the "Laws of the Game" (international

23  rules that govern soccer around the world) to provide proper protection from concussion injuries,

24  as a result of its "strict rules about the number of players that can be substituted."  (Compl. ¶ 30.)

25

26

27  [1]    In FIFA's motion to dismiss pursuant to Rule 12, FIFA sets forth the salient facts for
        consideration of that motion.  Rather than repeat those facts here, FIFA respectfully refers the
28      Court to the motion and presents below only those facts relevant to the instant motion.

While Plaintiffs characterize their claims as torts—negligence, breach of voluntary undertaking, and medical monitoring—the essence of their case is the relief sought: "injunctive relief requiring enactment of Laws of the Game that provide proper concussion management and return-to-play guidelines."  (Compl. ¶ 32.)  Plaintiffs "seek an injunction requiring each Defendant to (1) mandate the enactment and enforcement of proper concussion-management practices and return-to-play guidelines; (2) mandate substitution rules that allow for medical evaluation without penalty; and (3) mandate limits on heading by players under 17."  (*Id.*)  The remedy, and not the label attached to the claims by Plaintiffs, should control any decision about the appropriate forum for resolution of this dispute.

FIFA is an association governed by Swiss law, the members of which include US Soccer and 208 other national soccer organizations from around the world.  (Compl. ¶ 19; *see also* Valcke Decl. ¶ 2.)  As Plaintiffs acknowledge, Article 18 of the FIFA statutes provides:

> Leagues or any other groups affiliated to a Member of FIFA shall be subordinate to and recognised by that Member.  The Member's statutes shall define the scope of authority and the rights and duties of these groups.  The statutes and regulations of these groups shall be approved by the Member.

(Compl. ¶ 203.)

The Complaint does not allege that any of the Plaintiffs participated in any FIFA soccer competition, or that any of them are members of FIFA.  Instead, Plaintiffs allege that the various U.S.-based entities for which they played soccer abide by the "FIFA Laws of the Game." (Compl. ¶¶ 39, 42, 45, 48, 51.)  The Laws of the Game are the codified rules that help define association football.[2]  However, they are not set in stone, are particularly flexible in their application to youth and women's soccer, and are not authored, controlled, set, or modified by FIFA.  Rather, they are set by the International Football Association Board ("IFAB"), a separate association established in Switzerland and not controlled by FIFA.  The Laws of the Game expressly provide:

---

[2]    The reference to "association football" was meant to distinguish soccer from what came to be known as rugby when the Laws of the Game were created in the 1800s.  (*See* Valcke Decl. ¶ 7.)

Subject to the agreement of the member association concerned and provided the principles of these Laws are maintained, *the Laws may be modified in their application for matches for players under 16 years of age, for women footballers*, for veteran footballers (over 35 years of age) and for players with disabilities. *Any or all of the following modifications are permissible*: size of the field of play; *size, weight and material of the ball*; width between the goalposts and height of the crossbar from the ground; duration of the periods of play; *substitutions*. Further modifications are only allowed with the consent of the International Football Association Board.

(Valcke Decl. Ex. C at 3 (emphasis added).)  Plaintiffs' allegations confirm this freedom, noting that "the FIFA substitution rule is not followed at the youth level" and acknowledging that some clubs and associations already have concussion management protocols of the type they now want the Court to impose.  (Compl. ¶ 383; *see id.* ¶¶ 319-20, 350.)

Plaintiffs assert that "the power to protect all players starts with FIFA and the Laws of the Game."  (Compl. p. 62.)  In support of this broad (and erroneous) assertion, Plaintiffs note that FIFA's statutes are the "constitution" of world football and that FIFA's objectives, as set out in those statutes, are to, among other things, "improve the game of football constantly and promote it globally[.]"  (Compl. ¶ 195.)  Plaintiffs go on to cite, in support of their allegations, the following FIFA statutes:

- Article 6: "Each member of FIFA shall play Association Football in compliance with the Laws of the Game issued by IFAB.  *Only IFAB may lay down and alter the Laws of the Game*."  (Compl. ¶ 201 (emphasis added).)[3]

- Article 13: FIFA's members (including US Soccer) must "comply fully with the Statutes, regulations, directives and decisions of FIFA bodies at any time as well as the decisions of the Court of Arbitration for Sport (CAS) … [and] ensure that their own members comply with the Statutes, regulations, directives and decisions of FIFA bodies."  (Compl. ¶ 202.)

- Article 18: "Leagues or any other groups affiliated to a Member of FIFA shall be subordinate to and recognized by that Member."  (Compl. ¶ 203.)

- Article 52: "The Medical Committee shall deal with all medical aspects of football."  (Compl. ¶ 204.)

- Article 69: "The Confederations, Members and Leagues shall agree to comply fully with any decisions passed by the relevant FIFA bodies which, according to these Statutes, are final and not subject to appeal. … They shall take every precaution necessary to ensure that their own

---

[3]   As set forth in FIFA's motion to dismiss and as acknowledged in the Complaint, only IFAB has the power to amend the Laws of the Game.  IFAB is therefore a necessary party and dismissal is warranted because of Plaintiffs' failure (and inability) to join IFAB in this suit.

1    members, Players and Officials comply with these decisions."  (Compl.
     ¶ 205.)

2        Putting to one side that these Articles do not lend support to Plaintiffs' thesis that FIFA

3    controls the game of soccer at all levels of play and ages world-wide, it is notable that Plaintiffs

4    completely ignore Articles 66 and 68, which require Plaintiffs to arbitrate their claims.[4]

5        Article 66, Section 1 of the FIFA statutes provides that the Court of Arbitration for Sport

6    shall "resolve disputes between FIFA, Members, Confederations, Leagues, Clubs, Players,

7    Officials and licensed match agents and players' agents."  Furthermore, Article 66, Section 2

8    states that "[t]he provisions of the CAS Code of Sports-related Arbitration shall apply to the

9    proceedings," and that "CAS shall primarily apply the various regulations of FIFA and,

10   additionally, Swiss law."  (Valcke Decl. Ex. A at 47.)

11       Article 68 of the FIFA statutes provides that "[r]ecourse to ordinary courts of law is

12   prohibited."  (Valcke Decl. Ex. A at 49.)  Instead, disputes involving any of FIFA's associations

13   (such as US Soccer) or affecting its members, leagues, clubs and players "shall be taken to an

14   independent and duly constituted arbitration tribunal recognized under the rules of the

15   Association or Confederation or to [the Court of Arbitration for Sport]."  (*Id.*)  Article 68 further

16   requires that FIFA's member associations "shall insert a clause in their statutes or regulations,

17   stipulating that it is prohibited to take disputes in the Association or disputes affecting Leagues,

18   members of Leagues, Clubs, members of Clubs, Players, Officials and other Association

19   Officials to ordinary courts of law . . . ."  (*Id.*)

20       Consistent with this mandate, US Soccer has inserted such a clause into its bylaws.  US

21   Soccer Bylaws 707-08 provide (1) that members are prohibited from invoking the aid of the

22   courts without first exhausting all remedies, (2) that FIFA has jurisdiction on all international

23   disputes between any organization member, (3) that any appeal against a final and binding FIFA

24

25   _____

     [4]  This assumes Plaintiffs could even pursue claims against FIFA under FIFA's statutes.  Under
26   Swiss law, Plaintiffs cannot assert claims against FIFA based upon the FIFA statutes because
     Plaintiffs are not members of FIFA, an association governed by Swiss law, and because the
27   FIFA statutes do not create any third-party rights or provide any other legal basis for non-
     members to assert claims against FIFA.  FIFA reserves its right to assert that Swiss law
28   applies to any of Plaintiffs' claims that are permitted to go forward under FIFA's statutes.
     Nonetheless, for purposes of this motion, we assume such a claim could go forward.

decision shall be heard by the Court of Arbitration for Sport, and (4) that the US Soccer Federation and each of its organization members shall ensure that everyone complies with any final decision passed by FIFA or CAS.  (Boehning Decl. Ex. C at 35.)

This requirement is passed down to each of US Soccer's member organizations and, ultimately, to the individual clubs themselves by way of an established exhaustion procedure. Thus, Plaintiffs are required, pursuant to governing bylaws, to internally exhaust all remedies available to them.  They are also bound by the FIFA mandatory arbitration provision by virtue of FIFA's statutes' requiring US Soccer to pass its arbitration provision down through its membership structure.  This begins at the local club level, continues at the U.S. Youth Soccer level, and ultimately reaches to US Soccer.[5]

- *U.S. Youth Soccer* (which is a member of US Soccer): "No member of USYSA, official, league, club, team, player, coach, administrator or referee may invoke the aid of the courts of the United States or of a state without first exhausting all available remedies within the appropriate soccer organizations, and as provided within USYSA."  (Boehning Decl. Ex. D at 19.)

- *US Club Soccer* (which is a member of US Soccer): "No US Club Soccer-sanctioned league, Organization Member, coach, administrator, team, referee, player, member or their representative may invoke the aid of the State or Federal courts without first exhausting the Organization's appeal rules, and any applicable U.S. Soccer Policies, including grievance and appeal actions.  Any person invoking such aid shall be subject to the penalties cited below . . . ."  (Boehning Decl. Ex. G at 37.)

- *California Youth Soccer Association*: "In the matter of protests and appeals, no person(s) associated with the operations of this Association at any level (team, league, district, or state) may invoke the aid of the courts of any state or of the United States without first exhausting all available remedies within CYSA/USYS/USSF, including a final appeal to the USSF Council at the Annual General Meeting."  (Boehning Decl. Ex. H at ¶ 3:06:01.)

- *Illinois Youth Soccer Association*: "No IYSA member including but not limited to league officials, leagues, clubs, teams, players, coaches, parents of players, administrators or referees may invoke the aid of the courts in the United States or of a State without first exhausting all available

---

[5]   While AYSO's dispute resolution procedure is not as explicit as those of other clubs subordinate to US Soccer, it nowhere states in its procedures that use of ordinary courts is permitted.  (*See* Boehning Decl. Ex. E at 22-23; Ex. F at 14-17.)  Given US Soccer's obligations to FIFA, and the directives handed down by US Soccer to its members, AYSO's procedures are fairly read also to prohibit recourse to the courts without first exhausting AYSO's and US Soccer's internal remedial procedures.

remedies including hearings and appeals within the appropriate member association, league, or the IYSA as provided within the Federation [US Soccer]."  (Boehning Decl. Ex. I at ¶ 009.)

- *Tiburon Peninsula Soccer Club*:  "In the matter of Protest and Appeals, no person associated with the operation of this Club shall invoke the aid of the courts of any state or of the United States without first exhausting all available remedies within the appropriate soccer organization, including final appeal to the Annual General Meeting of the USYSA or USSF." (Boehning Decl. Ex. J at 7.)

To give an example as to how this should work in practice, Plaintiff Akka-Seidel alleges that she played for Tiburon Peninsula Soccer Club, "which is an affiliated branch of and compl[ies] with the authority of Cal North, also referred to as the California Youth Soccer Association, Inc. (CYSA), CYSA sanctioned programs, the United States Youth Soccer Association (USYSA), and/or the United States Soccer Federation (USSF)."  (Compl. ¶ 47 (internal quotations and citations omitted).)  Thus, Plaintiff Akka-Seidel is forbidden from invoking the aid of the courts without first exhausting all internal remedies within the Tiburon Peninsula Soccer Club, the California Youth Soccer Association, the U.S. Youth Soccer Association, and ultimately US Soccer.  This means that Plaintiff should first raise these issues with the Tiburon Peninsula Soccer Club to seek to bring about rule changes in the games in which she plays.  If she is unsuccessful, she can appeal her grievance to Cal North.  If that is unsuccessful, she can continue up the chain to USYSA and US Soccer.  All of this should occur, pursuant to her local club structure, before she could even attempt to bring her rules-based dispute against FIFA to arbitration before CAS.

The issues raised in this case are exactly the types of issues that should be raised at the local level, subject to these procedures.  Plaintiffs should go to their club meetings and speak to the board members of their club to advocate for the rules changes they seek.  If they are unsatisfied, they can continue up the chain.  The changes they seek are best made at the local level.  And Plaintiffs' allegations make clear that this internal system actually works:  certain youth clubs have already implemented changes along the lines that Plaintiffs seek, including Defendants AYSO and Cal North.  (Compl. ¶¶ 319-20, 350.)

1

## ARGUMENT

2

## THE COURT SHOULD DISMISS THE CASE IN FAVOR OF ARBITRATION

3      By its terms, the Federal Arbitration Act ("FAA")[6] "leaves no place for the exercise of

4  discretion by a district court, but instead mandates that district courts *shall* direct parties to

5  proceed to arbitration on issues as to which an arbitration agreement has been signed." *Chiron*

6  *Corp.* v. *Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (emphasis in original).

7  Accordingly, the court's role is limited to determining: "(1) whether a valid agreement to

8  arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Id.*

9  If the party seeking to compel arbitration establishes these two elements, then the court must

10  compel arbitration. *Id.*; 9 U.S.C. § 4.[7]  Importantly, as the U.S. Supreme Court has explained,

11  "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring

12  arbitration." *Moses H. Cone Mem'l Hosp.* v. *Mercury Const. Corp.*, 460 U.S. 1, 24 (1983).

13  Accordingly, "[t]he Arbitration Act establishes that, as a matter of federal law, any doubts

14  concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Id.* at 24-

15  25.

16      ### A.      A Valid Agreement to Arbitrate Exists

17      There are 209 members of FIFA.  The only U.S. person or entity that is a member of

18  FIFA is US Soccer.  Pursuant to Article 68 of FIFA's statutes, FIFA's member associations—

19  including US Soccer—"shall insert a clause in their statutes or regulations, stipulating that it is

20  prohibited to take disputes in the Association or disputes affecting Leagues, members of

21  Leagues, Clubs, members of Clubs, Players, Officials, and or Association officials to ordinary

22      [6]    The Federal Arbitration Act, rather than the California arbitration statute, applies in this case

23      because the underlying transaction is one "involving commerce."  *See* 9 U.S.C. §§ 1, 2.  The
       "transaction" is between FIFA, a Swiss entity, and US Soccer (among other U.S. and

24      internationally-based entities), for the provision and governance of soccer worldwide, and
       therefore constitutes interstate and foreign commerce.  *See* 9 U.S.C. § 1.

25      [7]    While 9 U.S.C. § 3 requires that a court "stay the trial of the action until such arbitration has

26      been had in accordance with the terms of the agreement," the Ninth Circuit has held that 9
       U.S.C. § 3 also gives courts the authority to dismiss claims that are subject to an arbitration

27      agreement.  *See Sparling* v. *Hoffman Constr. Co.*, 864 F.2d 635, 637–38 (9th Cir. 1988); *see*
       *also Quevedo* v. *Macy's, Inc.*, 798 F. Supp. 2d 1122, 1142-43 (C.D. Cal. 2011) (granting the

28      defendant's motion to compel and ordering plaintiffs to show cause why the case should not
       be dismissed rather than stayed).

courts of law[.]"  (Valcke Decl. Ex. A at 49.)  "Instead of recourse to ordinary courts of law, provision shall be made for arbitration.  Such disputes shall be taken to an independent and duly constituted arbitration tribunal recognized under the rules of the Association or Confederation or to [Court of Arbitration for Sport]."  (*Id*.)

As set forth above, US Soccer has followed that directive.  (*See supra* at 7-8.)  Accordingly, the member clubs of US Soccer that are relevant to this lawsuit each have prohibitions on recourse to ordinary courts prior to exhaustion of remedies within their respective clubs.  This means that Plaintiffs are required to bring disputes such as this to their local clubs, and if they are not satisfied with the recourse provided by their local club, they can appeal up the chain to the relevant league, state or other association, and ultimately to US Soccer.  Plaintiffs should exhaust this process before attempting to pursue claims against FIFA.  And both US Soccer and FIFA require that such claims be arbitrated rather than brought to court.  (*See supra* at 7-8.)

Thus, by virtue of their membership in their local clubs, Plaintiffs are required to arbitrate their claims against FIFA, once they exhaust their remedies with their local, regional, and national clubs.  This is true for each of the Plaintiffs:

- *Mehr*:  Played for teams that were members of USYSA and US Club (Compl. ¶ 38), which prohibit players from invoking aid of the courts without exhausting all available remedies within the appropriate soccer organizations.  (Boehning Decl. Ex. D at 19; Ex. G at 37.)  USYSA and US Club are members of US Soccer.

- *R.K.I.*:  Played for the Young Sportsmen's Soccer League in Arlington Heights, Illinois, which is a member of the Illinois Youth Soccer Association, which is a member of USYSA, which is a member of US Soccer.  (Compl. ¶¶ 41-42.)  Illinois Youth Soccer prohibits players from invoking aid of the courts without first exhausting all remedies, including hearing and appeals as provided within US Soccer.  (Boehning Decl. Ex. I at ¶ 009.)

- *B.A., D.A. and I.A*:  Played in DeKalb, Illinois for teams affiliated with AYSO, which is a member of US Soccer.  (Compl. ¶¶ 44-45.)  AYSO's rules nowhere permit recourse to the courts, and as a member of US Soccer, AYSO is required to follow US Soccer's by-laws which prohibit invoking aid of the courts without exhausting all available remedies.

- *Akka-Seidel*:  Played for Mill Valley Soccer Club, affiliated with USYSA and US Club, and played for Tiburon Peninsula Soccer Club.  (Compl. ¶ 47.)  Tiburon is a member of Cal North, which is a member of USYSA,

which is a member of US Soccer.  Tiburon, Cal North and US Club prohibit invoking the aid of the court without exhausting all remedies within the appropriate soccer organization, including final appeal to USYSA or US Soccer.  (Boehning Decl. Ex. G at 37; Ex. H at 3:06:01; Ex. J at 7-8.)

- *L.L.M.*:  Played for the Boulder Force Club, which is a member of the Colorado Soccer Association, which is a member of USYSA.  (Compl. ¶¶ 50-51.)  USYSA prohibits players from invoking aid of the courts without exhausting all available remedies within the appropriate soccer organizations.  (Boehning Decl. Ex. D at 19.)  USYSA is a member of US Soccer (Compl. ¶ 77), and thus any appeals must be brought to US Soccer.

None of the Plaintiffs alleges that they have taken any steps to exhaust their remedies beginning with their local clubs.  Courts routinely dismiss actions brought by plaintiffs against organizations with exhaustion of remedy requirements where plaintiffs have not satisfied those requirements.  "It is the general and well established jurisdictional rule that a plaintiff who seeks judicial relief against an organization of which he is a member must first invoke and exhaust the remedies provided by that organization applicable to his grievance."  *Westlake Cmty. Hosp.* v. *Superior Court*, 551 P.2d 410, 415 (Cal. 1976); *see also Palmer* v. *Regents of Univ. of Cal.*, 132 Cal. Rptr. 2d 567, 571 (Cal. Ct. App. 2002) ("When a private association or public entity establishes an internal grievance mechanism . . . failure to exhaust those internal remedies precludes any subsequent private civil action."); *accord Varadarajan* v. *U.S. Cricket Ass'n, Inc.*, No. 12-CV-01306-LHK, 2012 WL 1252783, at *11-12 (N.D. Cal. Apr. 13, 2012) (noting that failure to exhaust all remedies available under United States Cricket Association's constitution would bar all of plaintiffs' claims).  Under this doctrine, "a party must go through the entire proceeding to a final decision on the merits of the entire controversy before resorting to the courts for relief."  *Bollengier* v. *Doctors Med. Ctr.*, 272 Cal. Rptr. 273, 278 (Cal. Ct. App. 1990) (internal quotations omitted).  As the California Supreme Court explained sixty years ago, "[t]his rule is analogous to the rule requiring the exhaustion of administrative remedies as a condition precedent to resorting to the courts, and to the rule requiring the parties to a contract for arbitration of disputes to exhaust those remedies before seeking judicial relief."  *Holderby* v. *Intern. Union of Operating Engineers, Local Union No. 12*, 291 P.2d 463, 466 (Cal. 1955) (internal citation omitted).  The fact that Plaintiffs purport to bring their claims in tort does not change the analysis, and courts have held that a failure to exhaust administrative remedies

precludes the ability to bring tort claims. *See, e.g.*, *Gupta* v. *Stanford Univ.*, 21 Cal. Rptr. 3d 192, 195 (Cal. Ct. App. 2004) (affirming decision to sustain demurrer where, "[a]lthough [plaintiff] alleges claims in tort and contract, the basis for these claims arises from the disciplinary hearing at Stanford"); *Gutkin* v. *Univ. of Southern California*, 125 Cal. Rptr. 2d 115, 124 (Cal. Ct. App. 2002) (affirming trial court's decision sustaining demurrer to complaint without leave to amend, noting that "[d]espite the tort labels, the gravamen of Gutkin's tort claims before us is that the University employed a procedure to dismiss him that was not sanctioned by the 1987 faculty handbook pursuant to which he had been given tenure.").

Moreover, by virtue of their membership in their local club, which rolls up to US Soccer, Plaintiffs are bound by FIFA's arbitration requirement. (*See supra* at 2, 8-9.) Parties are generally presumed to have intended to make use of arbitration when they are both members of an association whose rules or bylaws require that members arbitrate their disputes. *See, e.g.*, *Gear* v. *Webster*, 65 Cal. Rptr. 255, 257 (Cal. Ct. App. 1968) (concluding that "by agreeing to abide by the bylaws, appellant was bound to arbitrate her dispute with another member"); *see also King* v. *Larsen Realty, Inc.*, 175 Cal. Rptr. 226, 229 (Cal. Ct. App. 1981) ("An arbitration agreement is self-executing where it permits and provides for arbitration under rules therein incorporated" (internal quotations omitted)). Thus, Plaintiffs' case against FIFA has been brought in the wrong forum.[8]

The process of requiring arbitration before the Court of Arbitration for Sport is not unique to FIFA. Numerous international sporting associations provide for recourse to the Court of Arbitration for Sport, including, for example, the International Olympic Committee, the International Ice Hockey Federation, the Union of European Football Associations, the International Sailing Federation, the World Anti-Doping Agency, the World Karate Federation, United World Wrestling, the World Squash Federation, the International Ski Federation, the

---

[8] There is no doubt that under the FIFA statutes, a claim against FIFA by a player who actually plays in FIFA-sponsored and organized intercontinental events would need to be brought before CAS. Plaintiffs here have no connection to FIFA, but they plead that they are governed by FIFA's rules (a notion FIFA disputes). Taking those allegations as true puts them in the same position as a player who does play in FIFA competitions.

International Tennis Federation, and the International Cricket Council.[9]  Moreover, federal courts have upheld agreements to arbitrate before the Court of Arbitration for Sport.  *See, e.g.*, *Armstrong* v. *Tygart*, 886 F. Supp. 2d 572, 587-88 (W.D. Tex. 2012) (finding, among other things, that cyclist Lance Armstrong failed to exhaust his administrative remedies and agreed to a contract that contained a clause relating to arbitration with the United States Anti-Doping Agency).

### B.    Plaintiffs Are Bound by FIFA's Mandatory Arbitration Provision by the Doctrine of Equitable Estoppel

Plaintiffs are also bound to arbitrate their claims pursuant to the equitable estoppel doctrine.  In the Complaint, Plaintiffs cite liberally from FIFA's statutes to assert (wrongly) that FIFA has the "power under its own rules and governing bodies" to "undertake[ ] changes to eliminate or minimize . . . head injuries suffered by young players."  In support of that broad assertion, Plaintiffs cite various (irrelevant) Articles of FIFA's statutes.  (*See, e.g.*, Compl. ¶¶ 195-206 (citing, *inter alia*, Articles 6, 13, 18, 52 and 69).)  Plaintiffs go on to allege that FIFA has "control over every aspect of soccer at every level" and that the "power to protect all players starts with FIFA and the Laws of the Game."  (Compl. ¶ 195.)   But Plaintiffs conveniently omit Article 66, which provides that disputes between FIFA, Members, Confederations, Leagues, Clubs, Players, Officials, and licensed match agents and players agents shall be resolved by the Court of Arbitration for Sport, and Article 68, which provides that "[r]ecourse to ordinary courts of law is prohibited . . . ."  (Valcke Decl. Ex. A at 49.)

Under the doctrine of equitable estoppel, Plaintiffs cannot avoid FIFA's arbitration requirement while at the same time exploiting FIFA's rules for purposes of ascribing liability to FIFA.  Either Plaintiffs are bound by the FIFA statutes and are thereby required to arbitrate this dispute, or they are not bound by the FIFA statutes, and FIFA therefore has no responsibility for the rule structure in place in the leagues in which Plaintiffs play soccer.  Equitable estoppel "precludes a party from claiming the benefits of a contract while simultaneously attempting to

---

[9]   *See* Recent Decisions, COURT OF ARBITRATION FOR SPORT, http://www.tas-cas.org/en/jurisprudence/recent-decisions.html (last visited Jan. 23, 2015).

1  avoid the burdens that the contract imposes. . . .  Nonsignatories have been held to arbitration

2  clauses where the nonsignatory 'knowingly exploits the agreement containing the arbitration

3  clause despite having never signed the agreement.'"  *Formostar, LLC* v. *Florentius*, No. 2:11-cv-

4  01166-GMN-CWH, 2012 WL 2885119, at *5-7 (D. Nev. 2012) (compelling arbitration on

5  ground of equitable estoppel) (quoting *Comer* v. *Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir.

6  2006)).  Because Plaintiffs seek the "benefits" of the FIFA statutes purportedly to support their

7  claims, they must therefore be bound by all of the statutes, including the arbitration provisions.

8  ### C.    FIFA's Statutes Encompass Plaintiffs' Claims

9  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of

10  arbitration."  *Moses H. Cone*, 460 U.S. at 24-25.   As such, courts in the Ninth Circuit have

11  distinguished between broad and narrow arbitration clauses, holding that arbitration clauses that

12  contain phrases such as "relating to," "concerning," and "with respect to" are to be interpreted

13  broadly.  *See, e.g., Scott* v. *Lopez*, No. C12-01456 HRL, 2013 WL 1182957, at *3 (N.D. Cal.

14  Mar. 21, 2013) (omission of the phrase "relating to" in an arbitration clause results in a narrower

15  scope of covered disputes).  Accordingly, allegations in a complaint need only "touch matters"

16  covered by the arbitration provision to require arbitration.  *Simula, Inc.* v. *Autoliv, Inc.*, 175 F.3d

17  716, 721 (9th Cir. 1999).

18  Article 66 of the FIFA statutes provides that "disputes" between FIFA and players shall

19  be resolved by the Court of Arbitration for Sport.  (Valcke Decl. Ex. A at 47.)  Furthermore,

20  Article 68 of the FIFA statutes provides that the Associations "shall insert a clause in their

21  statutes or regulations, stipulating that it is prohibited to take *disputes . . . affecting* Leagues,

22  members of Leagues, Clubs, members of Clubs, Players . . . and other Association Officials to

23  ordinary courts of law . . . ."  (Valcke Decl. Ex. A at 49 (emphasis added).)  The "disputes . . .

24  affecting" language in the arbitration clause requires a broad interpretation.  *See, e.g.*, *Camping*

25  *Constr. Co.* v. *Dist. Council of Iron Workers*, 915 F.2d 1333, 1338-39 (9th Cir. 1990) (clause

26  containing the word "affecting" is to be interpreted broadly).  Indeed, the Ninth Circuit has

27  explained that arbitration clauses using the word "affecting," like the one at issue here, are "even

28  broader than the ordinary 'broad arbitration clause,'" and should be interpreted accordingly.

1   *Brotherhood of Teamsters & Auto Truck Drivers Local No. 70* v. *Interstate Distrib. Co.*, 832

2   F.2d 507, 510 n.2 (9th Cir. 1987).

3         Given the breadth of the governing arbitration clause, and the strong presumption in favor

4   of arbitration, Plaintiffs cannot reasonably claim that the present dispute does not "affect[ ]

5   members of Leagues, Clubs, members of Clubs, *Players* . . . and other Association Officials."

6   (Valcke Decl. Ex. A, at 49 (emphasis added).)  Plaintiffs seek a multitude of rule changes,

7   governing both player safety and the rules of the game itself.  These rule changes obviously

8   "affect" leagues, clubs, and players, and easily fall within the scope of the FIFA arbitration

9   provision.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIFA'S MOTION TO COMPEL ARBITRATION
CASE NO.: 4:14-CV-03879-PJH

1

## <u>CONCLUSION</u>

2         For the aforementioned reasons, FIFA respectfully requests that the Court issue an Order

3    dismissing this action and compelling arbitration.

4    DATED:  January 30, 2015                    HOGAN LOVELLS US LLP

5

6                                                By ____/s/ Michael J. Shepard_____
                                                     Michael J. Shepard

7
                                                     3 Embarcadero Center
8                                                    Suite 1500
                                                     San Francisco, CA 94111
9                                                    Telephone: (415) 374-2300
                                                     Facsimile:  (415) 374-2499
10                                                   michael.shepard@hoganlovells.com

11                                                -and-

12                                                PAUL, WEISS, RIFKIND, WHARTON &
                                                  GARRISON LLP
13
                                                     Brad S. Karp (*pro hac vice*)
14                                                   Bruce Birenboim (*pro hac vice*)
                                                     H. Christopher Boehning (*pro hac vice*)
15                                                   Daniel H. Levi (*pro hac vice*)
                                                     1285 Avenue of the Americas
16                                                   New York, NY 10019
                                                     Telephone: (212) 373-3000
17                                                   Facsimile: (212) 757-3990
                                                     bkarp@paulweiss.com
18                                                   bbirenboim@paulweiss.com
                                                     cboehning@paulweiss.com
19                                                   dlevi@paulweiss.com

20                                                *Attorneys for Defendant Fédération Internationale*
                                                  *de Football Association*
21

22

23

24

25

26

27

28

FIFA'S MOTION TO COMPEL ARBITRATION
CASE NO.: 4:14-CV-03879-PJH