1    LATHAM & WATKINS LLP
       Russell F. Sauer, Jr. (SBN 94433)
2       Casandra L. Thomson (SBN 235778)
    355 South Grand Avenue
3    Los Angeles, California  90071
    Telephone:  (213) 485-1234
4    Facsimile:  (213) 891-8763
    Email:  russ.sauer@lw.com
5    Email:  casandra.thomson@lw.com

6    Attorneys for Defendant
    United States Soccer Federation, Inc.

7

8               UNITED STATES DISTRICT COURT

9           NORTHERN DISTRICT OF CALIFORNIA

10                  OAKLAND DIVISION

11

12    RACHEL MEHR, et al.,          Case No. 4:14-cv-03879-PJH

13          Plaintiffs        **DEFENDANT UNITED STATES**
                              **SOCCER FEDERATION, INC.'S NOTICE**
14       v.                  **OF MOTION AND MOTION TO DISMISS**
                              **PLAINTIFFS' COMPLAINT PURSUANT**
15                            **TO FEDERAL RULES OF CIVIL**
    FÉDÉRATION INTERNATIONAL DE    **PROCEDURE 12(b)(1) AND 12(b)(6)**
16    FOOTBALL ASSOCIATION, et al.,

17          Defendants.      *[Request for Judicial Notice and Proposed*
                              *Order filed concurrently herewith*]
18
                           **Hearing**
19                          Date:  May 6, 2015
                           Time:  9:00 a.m.
20                          Judge:  Phyllis J. Hamilton
                           Courtroom:  3, 3rd Floor
21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

US SOCCER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(b)(1) AND (6)
Case No. 4:14-cv-03879-PJH

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ............................................................................................. 1

II.     PLAINTIFFS LACK STANDING TO OBTAIN THE RELIEF SOUGHT
        IN COUNTS 1 (NEGLIGENCE) AND 2 (VOLUNTARY
        UNDERTAKING) ........................................................................................... 5

        A.      None Of The Plaintiffs Has Alleged An Injury That Would Give
                Rise To A Right To Medical Monitoring Relief From Defendants .................... 6

                1.      None of the Plaintiffs alleges an injury arising from
                        Defendants' allegedly tortious failure to implement "best
                        practices" for concussion management ...................................... 6

                2.      None of the Plaintiffs alleges an injury arising from Defendants'
                        allegedly tortious failure to "regulate" heading under age 17 .............. 8

        B.      Plaintiffs Lack Standing To Seek Prospective Injunctive Relief ..................... 11

                1.      There is no justiciable controversy regarding the FIFA
                        Substitution Rule ........................................................................ 13

                2.      Plaintiffs lack standing to compel adoption of the
                        Consensus Statement recommendations for concussion
                        management ................................................................................. 14

                3.      Plaintiffs lack standing to impose limits on heading for
                        players under 17 .......................................................................... 15

III.    PLAINTIFFS HAVE NOT ALLEGED AND CANNOT ALLEGE
        VIABLE CLAIMS FOR NEGLIGENCE IN COUNT 1 OR COUNT 2 ...................... 16

        A.      US Soccer Has No Legal Duty To Implement The Consensus
                Statement Recommendations For Concussion Management ............................. 17

                1.      US Soccer is under no obligation imposed by law to enforce
                        the recommendations contained in the Consensus Statement ................ 18

                2.      US Soccer does not have a "relationship" with Plaintiffs
                        that gives rise to a duty to enforce the recommendations in
                        the Consensus Statement ............................................................... 20

                3.      US Soccer did not assume a duty to enforce the
                        recommendations contained in the Consensus Statement ..................... 22

        B.      US Soccer Has No Legal Obligation To Change The Rules Of The
                Game Of Soccer To Prohibit Or Restrict "Heading" .................................... 24

IV.     PLAINTIFFS' INDEPENDENT CLAIM FOR MEDICAL MONITORING
        (COUNT 3) SHOULD BE DISMISSED WITH PREJUDICE .............................. 27

V.      CONCLUSION ............................................................................................. 28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

US SOCCER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(b)(1) AND (6)
Case No. 4:14-cv-03879-PJH

1

## TABLE OF AUTHORITIES
### CASES

2

3
*Artiglio v. Corning Inc.*,
    18 Cal. 4th 604 (1998) .................................................................... 22

4
*Avila v. Citrus Community College Dist.*,
    38 Cal. 4th 148 (2006) .................................................................... 24
5

6
*Ayala v. United States*,
    49 F.3d 607 (10th Cir. 1995) .......................................................... 22

7
*Bailey v. Edward Hines Lumber Co.*,
    308 Ill. App. 3d 58 (1999) ............................................................... 22
8

9
*Benson v. Superior Court*,
    185 Cal. App. 4th 1179 (2010) ....................................................... 16

10
*Berman v. Parker*,
    348 U.S. 26 (1954) .......................................................................... 20
11

12
*Bernhardt v. County of Los Angeles*,
    279 F.3d 862 (9th Cir. 2002) ............................................................ 5

13
*Blessing v. U.S.*,
    447 F.Supp. 1160 (E.D. Pa. 1978) .................................................. 23
14

15
*Buerkett v. Illinois Power Co.*,
    384 Ill. App. 3d 418 (2008) ............................................................. 16

16
*Bushnell v. Japanese-American Religious & Cultural Center*,
    43 Cal. App. 4th 525 (1996) ........................................................... 25
17

18
*Carey v. Kerr-McGee Chemical Corp.*,
    999 F. Supp. 1109 (N.D. Ill. 1998) ................................................. 27

19
*Clapper v. Amnesty Int'l USA*,
    133 S. Ct. 1138 (2013) ...................................................... 5, 8, 14, 15
20

21
*Coleman v. Ramada Hotel Operating Co.*,
    933 F.2d 470 (7th Cir. 1991) ........................................................... 26

22
*Collins v. Schweitzer, Inc.*,
    21 F.3d 1491 (9th Cir. 1994) ........................................................... 21
23

24
*Connelly v. Mammoth Mountain Ski Area*,
    39 Cal. App. 4th 8 (1995) ............................................................... 25

25
*Cook v. Rockwell Int'l Corp.*,
    755 F. Supp. 1468 (D. Colo. 1991) ................................................. 27
26

27
*Cook v. Rockwell Int'l Corp.*,
    618 F.3d 1127 (10th Cir. 2010) ....................................................... 27

28

iii

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

US SOCCER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(b)(1) AND (6)
Case No. 4:14-cv-03879-PJH

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) ................................................................................. 5

*Davidson v. Kimberly-Clark Corp.,*
    2014 U.S. Dist. LEXIS 176394 (N.D. Cal. Dec. 19, 2014) ..................... 12

*Fortier v. Los Rios Community College Dist.,*
    45 Cal. App. 4th 430 (1996) .................................................................. 25

*Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
    528 U.S. 167 (2000) ................................................................................. 5

*Fulfillment Servs. Inc. v. United Parcel Service, Inc.,*
    528 F.3d 614 (9th Cir. 2008) ................................................................... 5

*Gest v. Bradbury,*
    443 F.3d 1177 (9th Cir. 2006) ............................................................... 11

*Green Desert Oil Group v. BP West Coast Products,*
    2011 WL 5521005 (N.D. Cal. Nov. 14, 2011) ....................................... 16

*Hodgers-Durgin v. De La Vina,*
    199 F.3d 1037 (9th Cir. 1999) ............................................................... 13

*In re Baycol Products Litigation,*
    218 F.R.D. 197 (D. Minn. 2003) ............................................................ 28

*Jefferson County Sch. Dist. R-1 v. Justus,*
    725 P.2d 767 (Colo. 1986) ............................................................... 16, 23

*Jensen v. Bayer AG,*
    371 Ill. App. 3d 682 (2007) ................................................................... 27

*Kahn v. East Side Union High School Dist.,*
    31 Cal. 4th 990 (2003) ........................................................................... 24

*Karas v. Strevell,*
    227 Ill. 2d 440 (2008) ....................................................................... 24, 25

*Knight v. Jewett,*
    3 Cal. 4th 296 (1992) ............................................................................. 24

*Kormylo v. Forever Resorts, LLC,*
    2015 U.S. Dist. LEXIS 1630 (S.D. Cal. Jan. 6, 2015) ........................... 21

*Lester v. Marshall,*
    143 Colo. 189 (1960) ............................................................................. 23

*Levinson v. Owens,*
    176 Cal. App. 4th 1534 (2009) .............................................................. 24

*Lewis v. Casey,*
    518 U.S. 343 (1996) ............................................................................... 13

iv

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

US SOCCER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(b)(1) AND (6)
Case No. 4:14-cv-03879-PJH

*Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ................................................................. 11, 14, 15

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ....................................................................... passim

*Martin v. Keeley & Sons, Inc.*,
    979 N.E.2d 22 (Ill. 2012) ...................................................................... 22

*Mayfield v. United States*,
    599 F.3d 964 (9th Cir. 2010) ................................................................. 11

*Metro-North Commuter Railroad Co. v. Buckley*,
    521 U.S. 424 (1997) ............................................................................... 28

*Meyers v. Donnatacci*,
    220 N.J. Super. 73 (1987) ...................................................................... 22

*Murphy v. Steeplechase Amusement Co.*,
    250 N.Y. 479 (1929) .............................................................................. 26

*Nalwa v. Cedar Fair, L.P.*,
    55 Cal. 4th 1148 (2012) ......................................................................... 25

*Neinstein v. Los Angeles Dodgers*,
    185 Cal. App. 3d 176 (1986) ................................................................. 26

*Pickel v. Springfield Stallions*,
    398 Ill. App. 3d 1063 (2010) ................................................................ 25

*Potter v. Firestone Tire & Rubber Co.*,
    6 Cal. 4th 965 (1993) ...................................................................... 11, 27

*Seagrave v. City of Lake*,
    1995 U.S. Dist. LEXIS 2679 (N.D. Cal. Feb. 20, 1995) ...................... 13

*Software Design & Application v. Hoefer & Arnett*,
    49 Cal. App. 4th 472 (1996) ................................................................. 16

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ................................................................. 10

*University of Denver v. Whitlock*,
    744 P.2d 54 (Colo. 1987) ...................................................................... 24

*Vasquez v. Residential Invs., Inc.*,
    118 Cal. App. 4th 269 (2004) ............................................................... 16

*West v. Sundown Little League of Stockton*,
    96 Cal. App. 4th 351 (2002) ................................................................. 25

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ................................................................. 5

v

1

## STATUTES

2   105 Ill. Comp. Stat. Ann. 5/10-20.54, 25/1.15 ............................................................. 19

3   36 USC § 220522(a)(6) ................................................................................................. 18

4   36 USC § 220524(1) ..................................................................................................... 18

5   36 USC § 220524(9) ..................................................................................................... 18

6   Colo. Rev. Stat. Ann. § 13-21-111.7 ........................................................................... 25

7   Colo. Rev. Stat. Ann. § 25-43-103 ............................................................................... 19

8   Fed. R. Civ. Proc. § 12(b)(1) .................................................................................... 1, 5

9   Fed. R. Civ. Proc. § 12(b)(6) ........................................................................................ 1

10  West's Ann. Cal. Educ. Code § 49475 ......................................................................... 19

11

## OTHER AUTHORITIES

12  American Academy of Neurology,
        *Summary of Evidence-Based Guideline Update: Evaluation and Management*
13      *of Concussion in Sports*,
        80(24) NEUROLOGY 2250 (2013) ............................................................................... 10
14
    CDC,
15      *Nonfatal Traumatic Brain Injuries . . . Among Persons Aged ≤19 Years-US 2001-2009*,
        60(39) MMWR MORB. MORTAL WKLY. REP. 1337 (Oct. 7, 2011) ........................ 2
16
    Maher, *et al.*,
17      *Concussions and heading in soccer*,
        28(3) BRAIN INJURY 271 (2014) .................................................................................. 9
18
    R. Cantu, M.D., *et al.*,
19      CONCUSSIONS AND OUR KIDS (2012) ......................................................................... 10

20  Restatement (Second) of Torts Sections 323 ............................................................... 22

21  Restatement (Second) of Torts Sections 324(A) .......................................................... 22

22  Rutherford, *et al.*,
        *Do UK university football club players suffer neuropsychological impairment*
23      *as a consequence of their football (soccer) play?*,
        31(6) J. CLIN. EXP. NEUROPSYC., 664 (2009) ...................................................... 9, 10
24
    The Council on Sports Medicine and Fitness,
25      *Clinical Report: Injuries in Youth Soccer*,
        American Academy of Pediatrics,
26      125 PEDIATRICS 410 (2010, Reaffirmed May 2013) ............................................. 10, 26

27

28

vi

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

US SOCCER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(b)(1) AND (6)
Case No. 4:14-cv-03879-PJH

1

**NOTICE OF MOTION AND MOTION**

2

PLEASE TAKE NOTICE that, on May 6, 2015, at 9:00 a.m., or as soon thereafter as the

3

matter may be heard, Defendant United States Soccer Federation, Inc. ("US Soccer") will move

4

the Court, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for an Order

5

dismissing Plaintiffs' Class Action Complaint (the "Complaint") with prejudice.  This motion is

6

based upon this Notice of Motion, the Memorandum of Points and Authorities and Request for

7

Judicial Notice ("RJN"), oral argument, and such other matters as the Court may consider.

8

**STATEMENT OF ISSUES**

9

US Soccer moves to dismiss Plaintiffs' Complaint on each of the following grounds:

10

• Counts 1 (negligence) and 2 (voluntary undertaking) should be dismissed because

11

Plaintiffs lack standing to seek either medical monitoring relief or injunctive relief.

12

• Counts 1 and 2 should be dismissed for the additional reason that Plaintiffs have not

13

alleged that US Soccer breached a duty owed to Plaintiffs.

14

• Count 3 should be dismissed because California, Colorado, and Illinois (the states in

15

which the Plaintiffs reside) do not recognize an independent claim for medical monitoring.

16

• Count 3 also should be dismissed because Plaintiffs have not alleged that they were

17

exposed to a known hazardous substance as a result of US Soccer's negligence.

18

**MEMORANDUM OF POINTS AND AUTHORITIES**

19

**I.    INTRODUCTION**

20

"Heading" – the practice of a player using his or her head to redirect, pass or shoot the

21

ball – has been a fundamental aspect of the sport of soccer for over one hundred years.  With this

22

action, seven Plaintiffs – six of whom apparently no longer play the game – seek to force

23

Defendants to change the way that this international sport is played by eliminating or restricting

24

heading by players under age 17.  They also seek to hold five non-profit organizations who make

25

the sport available to more than 4 million youth participants in the United States liable not only

26

for failing to have done so already, but for failing to substitute their judgment for that of a child's

27

parent and doctor with respect to the assessment and treatment of concussions.  There is no basis

28

in fact or law for Plaintiffs' claims, and their Complaint should be dismissed with prejudice.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

US SOCCER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(b)(1) AND (6)
Case No. 4:14-cv-03879-PJH

1        US Soccer is the non-profit membership organization recognized by the US Olympic

2    Committee as the National Governing Body for Soccer in the United States under the Ted

3    Stevens Olympic & Amateur Sports Act, and by Defendant Fédération Internationale de Football

4    Association ("FIFA") – the world governing body for the sport of soccer – as its National

5    Association member for the United States.  For more than 100 years, US Soccer's mission has

6    been to make soccer, in all its forms, a preeminent sport in the United States and to continue the

7    growth and development of the sport at all recreational and competitive levels.

8        To that end, US Soccer sponsors 17 national teams, including the Men's and Women's

9    National Teams, the paralympic team, and a number of age-based boys and girls teams.  US Soccer

10   also has various member organizations, including Major League Soccer and the National Women's

11   Soccer League (the professional leagues), the adult amateur leagues, the U.S. Power Soccer

12   Association (for wheelchair-bound athletes), and the youth amateur organizations, including

13   Defendants United States Youth Soccer Association, American Youth Soccer Organization, and

14   National Association of Competitive Soccer Clubs (collectively, the "Youth Members").[1]

15       At present, more than 4 million players under the age of 18 are registered with one of US

16   Soccer's Youth Members (each of which is also a non-profit organization).  They play for local

17   teams across the United States coached by parents and other volunteers, and play in matches

18   organized by their local leagues using volunteer (often teenage) referees.  Indeed, the popularity

19   of soccer as a youth sport is due in part to the fact that it is widely accessible regardless of age or

20   socioeconomic status – all it takes is a flat field, a pair of cleats, and a ball.

21       Soccer is a contact sport and, like any contact sport, choosing to play the game carries with

22   it an inherent risk of injury.  As one would expect from a sport that involves running and striking a

23   ball with one's foot or head, injuries can range from bruises, scrapes, and sprains to torn ligaments

24   and concussions.  Although injuries are a risk, the incidence of injuries in soccer – and particularly

25   concussions – is far less than other popular contact sports in the United States such as football, and

26   is dramatically less than other childhood recreational activities like riding a bike.[2]

---

27   [1] Defendant California Youth Soccer Association is a member of Defendant USYSA.

28   [2] *See* RJN Ex. 15 (CDC, *Nonfatal Traumatic Brain Injuries . . . Among Persons Aged ≤19 Years-US 2001-2009*, 60(39) MMWR MORB. MORTAL WKLY. REP. 1337 (Oct. 7, 2011)).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

US SOCCER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(b)(1) AND (6)
Case No. 4:14-cv-03879-PJH

1    Notwithstanding the foregoing, Plaintiffs – one current and six *former* youth players who

2   played on teams affiliated with the Youth Members – seek to impose legal obligations on

3   Defendants relating to the assessment and treatment of each of the more than 4 million players

4   who suffers a significant blow to the head or exhibits symptoms of a concussion, based solely on

5   *recommendations* for concussion management developed "for *use by physicians and healthcare*

6   *professionals*" who are directly "involved in the care of injured athletes."  Plaintiffs also seek to

7   represent a class of all individuals who played for a team affiliated with one of the Defendants

8   since 2002 – a class that will likely exceed 15 million individuals in the United States[3] – and to

9   hold Defendants liable for the cost of future medical monitoring for each of these millions of

10   players on the ground that Defendants failed to implement certain current recommendations

11   more than 10 years ago.

12    In addition, Plaintiffs seek to change 100-year old rules governing the way soccer is played

13   by eliminating one aspect of the sport that Plaintiffs have unilaterally decided, notwithstanding

14   recent medical studies to the contrary, is too risky.  Specifically, Plaintiffs seek to eliminate or

15   restrict heading by players under age 17 based on speculation that future research *might* show that

16   repetitive heading leads to long-term injury, and also seek to hold Defendants liable for future

17   medical monitoring costs because they failed to change the game over a decade ago.  Plaintiffs'

18   claims alleging negligence based on an existing duty (Count 1), negligence based on an assumed

19   duty (Count 2), and medical monitoring (Count 3) should be dismissed for the following reasons.

20    *First*, none of the Plaintiffs has standing to seek retrospective relief in the form of

21   medical monitoring from Defendants because none of the Plaintiffs alleges that he or she

22   suffered an actual injury that is fairly traceable to Defendants' challenged conduct.  Only one

23   Plaintiff alleges that she suffered a concussion, but she fails to allege that her injury was

24   exacerbated by Defendants' alleged lack of sufficient concussion management protocols.  In

25   addition, none of the Plaintiffs alleges that he or she engaged in repetitive heading of the ball,

26   nor could any Plaintiff credibly allege that he or she may have suffered an injury from repetitive

27   heading given the lack of any current scientific or medical support for such a conclusion.

28   [3] Read literally, Plaintiffs' proposed class is grossly overbroad, as it includes *all* individuals who
played soccer at any level in each of FIFA's 209 member countries over the last 12 years.

LATHAM&WATKINS⊔⊔
ATTORNEYS AT LAW
SAN FRANCISCO

3

US SOCCER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(b)(1) AND (6)
Case No. 4:14-cv-03879-PJH

*Second*, none of the Plaintiffs has standing to pursue the prospective injunctive relief sought in the Complaint because six of the seven Plaintiffs do not allege that they are currently playing or intend to play soccer, and the remaining Plaintiff has not and cannot allege that he faces an imminent threat of irreparable harm that is not purely speculative or hypothetical.

*Third*, even if Plaintiffs establish standing, their negligence claims fail because they have not alleged and cannot allege that US Soccer breached a duty owed to them.  US Soccer is simply too far removed from Plaintiffs and the putative class to owe a duty to enforce Plaintiffs' proposed concussion management protocols, and Plaintiffs have not alleged facts that, if true, would establish that US Soccer assumed such a duty.  And, with respect to heading, it is well-established that organizations like Defendants have no duty to reduce risks inherent in the sport.

*Finally*, Count 3 fails as a matter of law because none of the states in which Plaintiffs reside (California, Colorado, and Illinois) recognizes an independent claim for medical monitoring.  Even if they did, for the reasons explained above, Plaintiffs have not and cannot allege that they suffered an injury that would give rise to a right to relief from Defendants.

As part of its mission to grow the sport, US Soccer has a vested interest in ensuring that youth players are not exposed to unnecessary risk while playing the game.  Indeed, US Soccer co-sponsored the Healthy Kids and Safe Sports Concussion Summit hosted by President Obama in May 2014 – months before Plaintiffs filed their Complaint.  And, as medical science continues to develop, US Soccer will continue to do what it always has done and take steps to reduce risks where feasible and consistent with the more than 100-year old Laws of the Game.

But, respectfully, it is not within the province of the Court to dictate to US Soccer – or to any of the Defendants – how the international game of soccer is to be played, any more than it is within the province of any of Defendant to dictate to a child's parent or doctor how a concussion should be managed.  Nor should the Court let a handful of individuals dictate to the millions of other youth soccer players in this country what risks they (in consultation with their parents) are permitted to assume when they choose to play soccer, and what risks they should not be allowed to assume – particularly when it means that they do not get to play soccer the way that the rest of the world plays it.  Plaintiffs' Complaint should be dismissed with prejudice.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

US SOCCER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(b)(1) AND (6)
Case No. 4:14-cv-03879-PJH

1

2

## II.   PLAINTIFFS LACK STANDING TO OBTAIN THE RELIEF SOUGHT IN COUNTS 1 (NEGLIGENCE) AND 2 (VOLUNTARY UNDERTAKING)[4]

3       Standing is a threshold inquiry that is essential to a determination of the Court's subject

4   matter jurisdiction.  *See, e.g., Fulfillment Servs. Inc. v. United Parcel Service, Inc.*, 528 F.3d 614,

5   618 (9th Cir. 2008).  "To satisfy Article III's standing requirements, a plaintiff must show (1) she

6   has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent,

7   not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the

8   defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed

9   by a favorable decision."  *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868-69 (9th Cir.

10  2002) (quoting *Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81

11  (2000)); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  As the party

12  seeking to invoke the federal court's jurisdiction, the plaintiff bears the burden of establishing

13  standing for each claim ***and*** for each form of relief sought.  *See DaimlerChrysler Corp. v. Cuno*,

14  547 U.S. 332, 352 (2006) (citing *Laidlaw*, 528 U.S. at 185).

15      In Counts 1 and 2, Plaintiffs allege that Defendants breached duties either owed to

16  Plaintiffs or assumed by Defendants to "enact and/or enforce best practices for concussion

17  management" and to "regulate" heading by players under age 17.  (Cmplt. ¶¶ 29, 432, 443.)

18  Plaintiffs assert that they are entitled to retrospective relief in the form of medical monitoring

19  and prospective injunctive relief for these alleged breaches of duty, yet none of the Plaintiffs has

20  met their burden of alleging facts sufficient to establish that they have in fact suffered an injury

21  (or that such injury is "certainly impending") that would entitle them to either form of relief

22  sought.[5]  *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013).  Counts 1 and 2

23  should be dismissed for lack of standing.  *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)

24  (standing is properly the subject of a Rule 12(b)(1) motion to dismiss).

25  */ / /*

26

27  [4] Because the legal issues presented herein are not fact-driven, US Soccer has not burdened the Court with a statement of facts.  A discussion of those facts relevant to US Soccer's legal arguments is included where appropriate throughout the brief.

28  [5] Plaintiffs do not seek compensatory damages for their alleged injuries.  (*See* Cmplt. at *passim*.)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

US SOCCER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(b)(1) AND (6)
Case No. 4:14-cv-03879-PJH

### A.     None Of The Plaintiffs Has Alleged An Injury That Would Give Rise To A Right To Medical Monitoring Relief From Defendants

Each Plaintiff asserts a slight variation of the same vague allegation of purported injury: Plaintiff is "at increased risk of latent brain injuries caused by repeated head impacts or the accumulation of concussive and/or subconcussive hits in her soccer career and therefore is in need of medical monitoring." (Cmplt. ¶ 49 (Akka-Seidel); *see also id.* at ¶¶ 40 (Mehr), 43 (R.K.I.), 46 (B.A., D.A., I.A.), 52 (L.L.M.).)  Nowhere in their 131-page Complaint do Plaintiffs attempt to explain how they sustained these "impacts" and "hits," let alone provide any detail about the number of, frequency of, or how such "impacts" or "hits" are "fairly traceable" to the challenged conduct of Defendants.  Merely alleging that they generally sustained "impacts" or "hits" while playing youth soccer without any supporting allegations of fact – particularly given that the risk of such impacts or hits is inherent in a contact sport – is simply not enough to confer standing on Plaintiffs.  Rather, each Plaintiff must allege facts that, if true, are not only sufficient to establish that he or she suffered an actual injury, but that the injury (1) arises out of Defendants' alleged failure to implement best practices for concussion management or to restrict heading by players under age 17, ***and*** (2) is one that can be redressed by medical monitoring – their chosen form of retrospective relief.  None of the Plaintiffs has met this burden.

### 1.     None of the Plaintiffs alleges an injury arising from Defendants' allegedly tortious failure to implement "best practices" for concussion management

In Counts 1 and 2, Plaintiffs claim that they are entitled to retrospective relief in the form of medical monitoring as a result of Defendants' failure to implement the recommendations contained in various consensus statements published by the "Concussion in Sport Group" (which Plaintiffs contend reflect "best practices" for concussion management).[6]  (Cmplt. ¶¶ 29, 432, 443.)  As an initial matter, it is axiomatic that in order to have suffered an injury arising from Defendants' alleged lack of sufficient concussion management protocols, each Plaintiff must have actually sustained a concussion while playing soccer for a team affiliated with Defendants

---

[6] The various international consensus statements and updates thereto referenced in the Complaint are attached as Exhibits 4 through 7 of the RJN.  For ease of reference, these statements and updates will be collectively referred to herein as the "Consensus Statement."

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

6

US SOCCER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(b)(1) AND (6)
Case No. 4:14-cv-03879-PJH

1    to which the proposed protocols would have applied.[7]  Of the seven named Plaintiffs, only one

2    can clear this preliminary hurdle, because only a single Plaintiff (L.L.M.) alleges that she

3    suffered such a concussion.  (Cmplt. ¶ 52.)  Thus, to the extent any of the remaining six Plaintiffs

4    seek relief on this basis, their claims must be dismissed for lack of standing.

5            Plaintiff L.L.M.'s allegation that she suffered a concussion while playing for an USYSA-

6    affiliated team and her implication that her injury was exacerbated when she returned to play in

7    the same game are also insufficient to confer standing to challenge Defendants' allegedly

8    inadequate concussion management protocols, because she does not allege facts that would

9    establish that any exacerbation of her injury *resulted from* a lack of sufficient protocols.  Indeed,

10   L.L.M. does not allege whether her coach (or anyone affiliated with any Defendant) witnessed

11   the impact that caused the concussion or was otherwise made aware that she was suffering from

12   symptoms of a concussion, much less that an affiliate of one or more Defendants forced or

13   otherwise permitted her to return to play notwithstanding their knowledge of her condition.  In

14   the absence of such allegations, L.L.M. has not met her burden of alleging facts that, if true,

15   establish that her alleged injury is "fairly traceable" to the challenged conduct of the Defendants.

16          Moreover, even if L.L.M. could allege additional facts linking her injury to Defendants'

17   conduct, she cannot establish the final element of standing – that her injury will be redressed by

18   the relief sought – because L.L.M. admits that the symptoms of her concussion resolved after six

19   months.  (Cmplt. ¶ 52.)  Nowhere in Plaintiffs' lengthy Complaint do they allege that suffering a

20   single concussion, the symptoms of which have fully resolved, gives rise to a need for medical

21   monitoring.  Because L.L.M. has not established an entitlement to medical monitoring, her

22   claims for retrospective relief arising from Defendants' allegedly inadequate concussion

23   management protocols should be dismissed for lack of standing.

24   / / /

25   / / /

26

27   [7] Plaintiffs' allegations about purported injuries from subconcussive hits are not relevant to this
     analysis, because subconcussive hits, by definition, do not constitute concussions and are not
28   addressed by the recommendations in the Consensus Statement.  (*See* Cmplt. ¶ 102 (defining
     subconcussive hits as "impacts that do not produce any clinical concussion symptoms").)

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

US SOCCER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(b)(1) AND (6)
Case No. 4:14-cv-03879-PJH

2.     None of the Plaintiffs alleges an injury arising from Defendants'
<u>allegedly tortious failure to "regulate" heading under age 17</u>

Plaintiffs also assert that they are entitled to retrospective relief in the form of medical monitoring as a result of Defendants' failure "to adopt rules that specially address the issues of brain injuries and/or the risk of brain injury caused by repetitive heading by players under the age of 17." (Cmplt. ¶ 375.)  As an initial matter, none of the Plaintiffs has standing to seek the requested relief, because only ***one*** of the seven Plaintiffs alleges that she headed a soccer ball (on a single occasion), and ***none*** of the Plaintiffs alleges that they engaged in repetitive heading, let alone at the thresholds that Plaintiffs speculate may eventually be determined to cause injury (between 885 and 1800 headers per year).[8]  (*Compare id.* ¶¶ 38-52 *with* ¶¶ 379-80.)  In an effort to compensate for the lack of any detail regarding their own experiences, Plaintiffs instead estimate that the average elite player heads a soccer ball in games and practice 20 times per week, 50 weeks per year.  (*Id.* at ¶ 380.)  Plaintiffs' unfounded speculation about the heading performed by a hypothetical *elite* player falls well short of their burden to allege facts that, if true, would establish that each Plaintiff has standing to pursue the relief sought, particularly given that none of the Plaintiffs alleges that he or she played on (or with the frequency of) elite or premier teams.

Even if Plaintiffs could allege that they engaged in repetitive heading while playing for teams affiliated with Defendants, they would nevertheless be unable to establish standing to seek medical monitoring because they cannot credibly allege that repetitive heading leads to short or long term injury that is "certainly impending."  *See Clapper*, 133 S. Ct. at 1147 ("[T]hreatened injury must be *certainly impending* to constitute injury in fact[;] allegations of *possible* future injury are not sufficient."); *Lujan*, 504 U.S. at 560 (plaintiffs must suffer an injury which is "actual or imminent, not conjectural or hypothetical").  Although Plaintiffs allege that a risk of brain injury from repetitive heading by players under age 17 has been established by "at least 11 studies that have examined the long-term impacts of heading" (Cmplt. ¶ 130), that allegation is belied by the medical literature they cite.

---

[8] And, the reason Plaintiffs fail to do so is not surprising.  Two of the Plaintiffs, Mehr and Akka-Seidel, were goalies which do not, as a practice, head the ball.  Four of the remaining five Plaintiffs only played soccer at a very early age where intentional heading rarely, if ever, occurs.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

1    For example, Plaintiffs allege that "Maher et al. found amateur soccer players to be

2  significantly impaired in attention and memory."  (Cmplt. ¶ 130.)  But, the Maher article – which

3  was not a study, but a review and critique of the prior literature and studies on heading (including

4  some of the studies cited by Plaintiffs) – does not support the conclusion alleged.  With respect

5  to the 11 studies investigating long-term impairment referenced in the Complaint, the authors

6  noted that these studies included "elite, collegiate and/or professional level soccer players, which

7  represent a population of athletes with longer and more intensive career – and subsequently

8  greater heading exposure – than younger athletes" – in other words, they were not applicable to

9  Plaintiffs or the proposed class.  (RJN Ex. 8 (Maher, *et al.*, *Concussions and heading in soccer*,

10  28(3) BRAIN INJURY 271, 279 (2014)).)  Further, the article found that most of the studies lacked

11  "methodological rigor" because there were no control groups and a lack of information on

12  whether participants had previous history of concussions, which "may have confounded the

13  results, skewing samples to seem more cognitively impaired, and one cannot discern the effect of

14  heading exposure only."  (*Id.* at 281.)  The authors concluded that "[w]hile results of the studies

15  investigating the effects of heading are intriguing, they may not provide an entirely accurate

16  assessment."  (*Id.*)  And, of the 7 studies reviewed that actually included youth participants, 6

17  found ***no*** correlation between heading and short-term neurocognitive impairments.  (*Id.* at 276.)

18    Plaintiffs' allegation that "Rutherford et al. found significant differences between soccer

19  players and controls in divided attention and that the number of head injuries sustained interacted

20  significantly with heading frequency to predict scores on alertness, working memory and

21  language" (Cmplt. ¶ 131) is equally confounding.  Although their preliminary analysis in 2005

22  suggested some relationship between repetitive heading and cognitive impairment, the final report

23  in 2009 concluded there was "no evidence" to support the hypothesis that cognitive function was

24  affected by "the total amount of football heading done by footballers (since age 14)."  (RJN Ex. 9

25  (Rutherford, *et al.*, *Do UK university football club players suffer neuropsychological impairment*

26  *as a consequence of their football (soccer) play?*, 31(6) J. CLIN. EXP. NEUROPSYC., 664, 678

27  (2009)).)  Again, the authors concluded there was a "lack of evidence for neurological damage

28  and a diminishing expectation of neuropsychological impairment [that] is consistent with negative

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

US SOCCER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(b)(1) AND (6)
Case No. 4:14-cv-03879-PJH

1  findings of recent studies investigating the neuropsychological consequences of (nonconcussive)

2  football play." (*Id.* at 665.)

3        Indeed, Plaintiffs' expert, Dr. Robert Cantu, conceded as recently as 2012 that "[w]e

4  can't say whether heading a soccer ball over and over for many years increases a person's risk of

5  one day developing CTE.  No studies that I am aware of have made this connection.  ***In fact,***

6  ***there aren't any studies that I would rely on linking cleanly heading the ball – the act of head***

7  ***meeting ball with no other trauma to the head – with a higher rate of severe brain injury***."

8  (RJN Ex. 10 (R. Cantu, M.D., *et al.*, CONCUSSIONS AND OUR KIDS (2012) at 152 (emphasis

9  added)).)  Dr. Cantu's position is consistent with that of the American Academy of Neurology,

10  which declared in 2013 that the "[e]vidence is insufficient to determine whether there is a

11  relationship between chronic cognitive impairment and heading in professional soccer. . . .

12  Likewise, data are insufficient to determine whether the number of heading incidents is

13  associated with neurobehavioral impairments in amateur soccer."  (RJN Ex. 11 (American

14  Academy of Neurology, *Summary of Evidence-Based Guideline Update: Evaluation and*

15  *Management of Concussion in Sports*, 80(24) NEUROLOGY 2250, 2253 (2013)).)  Similarly, in

16  2013, the Council on Sports Medicine and Fitness declared that "[t]he contribution of purposeful

17  'heading' of the soccer ball to both acute and potential long-term concussive effects, such as

18  cognitive dysfunction, seems less controversial today than previously.  ***A critical review of the***

19  ***literature does not support the contention that purposeful heading contacts are likely to lead to***

20  ***either acute or cumulative brain damage***[.]"  (RJN Ex. 19 (The Council on Sports Medicine and

21  Fitness, *Clinical Report:  Injuries in Youth Soccer,* American Academy of Pediatrics, 125

22  PEDIATRICS 410, 412 (2010, Reaffirmed May 2013) (emphasis added)).) [9]

23        In light of the foregoing, Plaintiffs have not alleged and cannot allege that they suffered

24  an actual injury resulting from repetitive heading, and their speculative allegations about what

25  future studies might show are wholly insufficient to establish standing to assert a claim.  *See,*

26  *e.g., Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("The court need not

27  [ ] accept as true allegations that contradict matters properly subject to judicial notice or by

28

---

[9] *See* Appendix A for a summary of additional current medical and neuropsychological studies.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

US SOCCER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(b)(1) AND (6)
Case No. 4:14-cv-03879-PJH

1    exhibit.  Nor is the court required to accept as true allegations that are merely conclusory,

2    unwarranted deductions of fact, or unreasonable inferences.").  And, the fact that Plaintiffs seek

3    relief in the form of medical monitoring instead of compensatory damages does not save their

4    claim.  Although in some states a plaintiff seeking medical monitoring is not necessarily required

5    to allege a present physical injury, a plaintiff is still required to plead and prove that medical

6    monitoring is necessary based on exposure to a known hazardous substance.  *See, e.g., Potter v.*

7    *Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1006-07 (1993).  Here, Plaintiffs cannot meet their

8    burden, because they cannot establish that repetitive heading alone is a known "hazard."

9           In the absence of allegations that the ***named*** Plaintiffs engaged in repetitive heading and

10   that such heading resulted in actual injury (or injury that is certainly impending), Plaintiffs have

11   not established a right to medical monitoring, and their claims for relief arising from Defendants'

12   failure to regulate heading by players under age 17 should be dismissed for lack of standing.

13          **B.      Plaintiffs Lack Standing To Seek Prospective Injunctive Relief**

14          In addition to retrospective relief in the form of medical monitoring, Plaintiffs also seek

15   the following three categories of prospective injunctive relief:  (1) modification to the limitation

16   on the number of player substitutions permitted under the "Laws of the Game" (the "<u>FIFA</u>

17   <u>Substitution Rule</u>"); (2) the implementation of system-wide concussion management and return-

18   to-play guidelines; and (3) restrictions on heading by players under age 17.  (Cmplt. ¶¶ 432,

19   443.)  A plaintiff seeking such injunctive relief must not only satisfy the Article III standing

20   requirements outlined above, he has the added burden of establishing an imminent threat of

21   irreparable harm.  *See Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *see also Gest v. Bradbury*,

22   443 F.3d 1177, 1181 (9th Cir. 2006) (plaintiffs must be "realistically threatened by a repetition of

23   the violation").  "Past exposure to harmful or illegal conduct does not necessarily confer standing

24   to seek injunctive relief if the plaintiff does not continue to suffer adverse effects[;] [o]nce a

25   plaintiff has been wronged, he is entitled to injunctive relief only if he can show that he faces a

26   'real or immediate threat . . . that he will again be wronged in a similar way.'"  *Mayfield v.*

27   *United States*, 599 F.3d 964, 970 (9th Cir. 2010) (quoting *Lyons*, 461 U.S. at 111) (emphasis

28   added) (citing *Lujan*, 504 U.S. at 564).  Plaintiffs have not met and cannot meet this burden.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

US SOCCER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(b)(1) AND (6)
Case No. 4:14-cv-03879-PJH

1    As an initial matter, six of the seven Plaintiffs have not alleged facts sufficient to establish

2    that they face an imminent threat of harm, because, according to the Complaint, they no longer

3    play soccer on teams affiliated with Defendants.  Specifically, each of Plaintiffs Mehr, B.A.,

4    D.A., I.A., Akka-Seidel, and L.L.M. allege that they previously ***played*** soccer; none alleges that

5    he or she is continuing to play soccer or has any intention to do so in the future.  (*See* Cmplt. ¶¶

6    38 (Mehr), 44 (B.A., D.A., I.A.), 47 (Akka-Seidel), 50 (L.L.M.).)  And, with respect to Plaintiffs

7    Mehr, Akka-Seidel, and L.L.M., each of whom is age 17 or older, this is a defect that cannot be

8    cured, because the requested relief relates to rule changes applicable only to youth soccer

9    participants under age 17.  (*See id.* at ¶¶ 31-32, 432, 443.)  Accordingly, the claims for injunctive

10   relief brought by Plaintiffs Mehr, B.A., D.A., I.A., Akka-Seidel, and L.L.M. should be dismissed

11   for lack of standing, and the dismissal as to Plaintiffs Mehr, Akka-Seidel, and L.L.M. should be

12   with prejudice.[10]  *Cf. Davidson v. Kimberly-Clark Corp.*, 2014 U.S. Dist. LEXIS 176394 (N.D.

13   Cal. Dec. 19, 2014) (Hamilton) (granting motion to dismiss for lack of standing to seek injunctive

14   relief where plaintiff failed to allege any intent to purchase product in the future).

15   Even assuming each of the under-17 Plaintiffs (B.A., D.A., I.A.) could establish an intent

16   to play youth soccer in the future, their claims for injunctive relief, as well as those of R.K.I.,

17   should be dismissed for the additional and independent reason that they have not pleaded

18   sufficient facts to establish that they face an imminent risk of injury that is fairly traceable to

19   conduct by Defendants and/or that can be redressed by the relief sought.  *See Lujan*, 504 U.S. at

20   560-61.  *First*, there is no justiciable controversy regarding the FIFA Substitution Rule, because

21   Plaintiffs concede in their Complaint that the rule is inapplicable to them.  (Cmplt. ¶ 383.)

22   *Second*, Plaintiffs' assertion that they ***might*** suffer a concussion in the future and such

23   hypothetical concussion ***might*** be exacerbated in the absence of their proposed concussion

24   management protocols is far too speculative to confer standing on any of the Plaintiffs.  *Third*, as

25   discussed above, the medical literature cited in the Complaint ***does not*** conclude that repetitive

26   heading leads to short or long term injury, and Plaintiffs' speculation about what future studies

---

27   [10] Plaintiff R.K.I. – the only Plaintiff who affirmatively alleges that he is currently playing soccer
     – does not allege that he is suing US Soccer.  (*See* Cmplt. ¶ 41.)  And, granting him leave to
28   amend to add US Soccer as a defendant to his claims would be futile, because he lacks standing
     to assert those claims against any Defendant for the reasons set forth herein.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

US SOCCER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(b)(1) AND (6)
Case No. 4:14-cv-03879-PJH

1  *might* show is not enough to establish an imminent risk of irreparable harm.  And, in any event,

2  *none* of the Plaintiffs alleges that he or she ever engaged in repetitive heading, much less engaged

3  in heading at the thresholds that Plaintiffs speculate may later be determined to cause injury.

4  Each of Plaintiffs' requests for injunctive relief should be dismissed for lack of standing.[11]

5                  1.      There is no justiciable controversy regarding the FIFA Substitution Rule

6          None of the Plaintiffs has standing to request a modification to the FIFA Substitution

7  Rule, because none alleges that he or she currently plays for, has ever played for, or otherwise

8  intends to play for a youth organization that enforces that Rule.  And Plaintiffs do not contend

9  otherwise; they concede in their Complaint that "the FIFA substitution rule is not followed at the

10  youth level."[12]  (Cmplt. ¶ 383.)  Because Plaintiffs are not now and never have been subject to the

11  FIFA Substitution Rule while playing soccer for a youth team affiliated with Defendants, there is

12  no justiciable case or controversy before the Court that would permit them to obtain injunctive

13  relief requiring a modification of the Rule, and their claims for such relief must be dismissed with

14  prejudice.[13]  *See, e.g., Lujan*, 504 U.S. at 559-60 (jurisdiction of federal courts is constitutionally

15  restricted to "Cases" and "Controversies"); *Seagrave v. City of Lake*, 1995 U.S. Dist. LEXIS

16  2679, at *18 (N.D. Cal. Feb. 20, 1995) ("[I]njunctive relief is inappropriate where there is no

17  present case or controversy.").

18  / / /

19

20  [11] The fact that Plaintiffs purport to bring their claims on behalf of a class does not change the analysis.  Plaintiffs cannot rely on the possible claims of unnamed class members to establish

21  standing to seek injunctive relief when they *personally* are not entitled to seek such relief.  *See Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) ("Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking

22  that relief."); *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (same).

23  [12] Nor could Plaintiffs contend otherwise, because the rules of the various youth organizations affiliated with US Soccer generally provide that the FIFA Substitution Rule does not apply or

24  permit an unlimited number of substitutions for injuries.  (*See, e.g.,* RJN Ex. 1 (AYSO Art. I.C.2. (substitution for injury)); RJN Ex. 2 (USYSA Rule 302 (unlimited substitutions)).  Indeed, the

25  only Plaintiff (R.K.I.) who alleges that he is currently playing soccer is a member of the Young Sportsmen's Soccer League, the rules of which provide for unlimited substitutions and expressly

26  requires substitution in the event of player injury.  (*See* RJN Ex. 3 at Rules X.C and XI.C.)

27  [13] Plaintiffs lack standing for the additional reason that their purported injury cannot be redressed by a favorable decision, because none of the Defendants has the authority to modify the "Laws

28  of the Game."  Such authority lies exclusively with the International Football Association Board ("IFAB") – a party that is not before the Court and over which the Court has no jurisdiction.  *See* FIFA's Motion to Dismiss the Complaint.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

US SOCCER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(b)(1) AND (6)
Case No. 4:14-cv-03879-PJH

2.       Plaintiffs lack standing to compel adoption of the Consensus
<u>Statement recommendations for concussion management</u>

With respect to concussion management, Plaintiffs seek injunctive relief in the form of "system-wide guidelines for the screening and detection of head injuries" and "system-wide 'return to play' guidelines for athletes who have sustained concussions" consistent with the recommendations contained in the Consensus Statement.  (Cmplt. ¶¶ 432, 443.)  To establish standing to seek such relief, it is *not* enough for Plaintiffs to allege that they suffered a concussion in the past, or that they are at risk of suffering a concussion in the future.  Nor is it enough for Plaintiffs to allege that they have been or may be permitted to return to play after suffering a concussion without first having been cleared by a medical professional.  Rather, to establish standing to seek their requested relief from US Soccer, Plaintiffs must allege an ***immediate threat*** of an injury-in-fact that is ***fairly traceable to conduct of US Soccer*** that would be redressed by the relief sought.  *See Lujan*, 504 U.S. at 560-61.  In other words, each Plaintiff must establish that he or she faces (1) an ***imminent*** risk of irreparable harm from suffering a concussion while playing soccer for a youth team affiliated with US Soccer, (2) the symptoms of which will be apparent or made known to an individual affiliated with Defendants, (3) the impact of which will be exacerbated because Plaintiff will be forced or allowed to return to play, (4) without Plaintiff first obtaining clearance from a doctor.  Plaintiffs have not met and cannot meet this burden.

As an initial matter, the fact that one of the seven Plaintiffs alleges that she suffered a single concussion in the *past* is *not* sufficient to establish that she or any other Plaintiff faces an imminent threat of *future* irreparable harm.  *Lyons*, 461 U.S. at 103 (It is well-established that "past wrongs do not in themselves amount to [a] real and immediate threat of injury[.]").  Nor can any Plaintiff establish that he or she faces such an imminent threat of future harm that is "not conjectural or hypothetical."  *See Lujan*, 504 U.S. at 560.  As the Supreme Court has "repeatedly reiterated," the "threatened injury must be *certainly impending* to constitute injury in fact[;] *allegations of possible future injury are not sufficient*."  *Clapper*, 133 S. Ct. at 1147 (emphasis added).  Here, Plaintiffs have not alleged and cannot credibly allege that they face an imminent risk of suffering a concussion, much less a real and immediate threat that Defendants' alleged

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

US SOCCER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(b)(1) AND (6)
Case No. 4:14-cv-03879-PJH

1   conduct (not implementing the recommendations in the Consensus Statement) will lead to

2   exacerbation of the hypothetical concussion because Defendants will knowingly force or permit

3   Plaintiffs to return to play without adequate medical evaluation or treatment.  Such speculation

4   about the possibility of hypothetical future injury are wholly insufficient to establish standing.

5   *See Lyons*, 461 U.S. at 111.  Because the Complaint does not allege facts establishing a realistic

6   and imminent threat that Plaintiffs personally will be irreparably harmed if Defendants are not

7   forced to implement the recommendations in the Consensus Statement, Plaintiffs' request for

8   such relief should be dismissed for lack of standing.

9              3.      <u>Plaintiffs lack standing to impose limits on heading for players under 17</u>

10           Plaintiffs also seek injunctive relief in the form of some unspecified "regulation" of

11   heading by players under age 17.  As an initial matter, Plaintiffs Mehr, Akka-Seidel, and L.L.M.

12   (each of whom is age 17 or older) do not have standing to seek changes to the sport that only

13   impact players under age 17.  *See Lyons*, 461 U.S. at 111 (injunctive relief requires "a sufficient

14   likelihood that [plaintiffs] will again be wronged in a similar way").  As for those Plaintiffs under

15   age 17 (I.A., B.A., D.A., and R.K.I.), they have not alleged and cannot allege imminent future

16   injury in the absence of the requested injunctive relief because, as discussed above, they cannot

17   establish that repetitive heading has any short or long term neurological impact.

18           And, even if the Court accepted as true Plaintiffs' allegations that repetitive heading causes

19   injury notwithstanding their cited medical literature to the contrary, Plaintiffs have not alleged

20   facts sufficient to establish standing because *none* of the Plaintiffs alleges that, absent the

21   requested injunction, they face an imminent risk of being forced to engage in heading at thresholds

22   equal to the hypothetical elite or premiere players discussed in the Complaint.  (*Compare* Cmplt. at

23   ¶¶ 41-46 *with* ¶¶ 379-80.)  In the absence of allegations that Plaintiffs are likely to suffer

24   imminent, concrete, irreparable harm from repetitive heading, as opposed to the mere possibility of

25   future injury, Plaintiffs do not have standing to mandate restrictions on heading for players under

26   age 17.  *See Clapper*, 133 S. Ct. at 1147; *Lyons*, 461 U.S. at 111.

27           Because Plaintiffs have not established an entitlement to any of the relief sought in Counts

28   1 and 2, each of those Counts should be dismissed for lack of standing.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

15

US SOCCER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(b)(1) AND (6)
Case No. 4:14-cv-03879-PJH

## III.   PLAINTIFFS HAVE NOT ALLEGED AND CANNOT ALLEGE VIABLE CLAIMS FOR NEGLIGENCE IN COUNT 1 OR COUNT 2

An essential prerequisite to any claim for negligence is the existence of a legal duty owed to the plaintiff by the defendant. *See, e.g., Software Design & Application v. Hoefer & Arnett*, 49 Cal. App. 4th 472, 478 (1996) ("The existence of a duty of care toward an interest of another worthy of legal protection is the essential prerequisite to a negligence cause of action."). "Plaintiffs can plead a duty only where there is (a) a duty imposed by law; (b) a duty assumed by the defendant, or (c) a duty arising out of a preexisting relationship." *Green Desert Oil Group v. BP West Coast Products*, 2011 WL 5521005, at *5 (N.D. Cal. Nov. 14, 2011) (citing *Benson v. Superior Court*, 185 Cal. App. 4th 1179, 1187 (2010)). "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." *Vasquez v. Residential Invs., Inc.*, 118 Cal. App. 4th 269, 278 (2004). Where the pleaded facts fail to show the existence of any such duty owed by the defendant, no claim of negligence is stated and dismissal is appropriate. *See Green Desert Oil Group*, 2011 WL 5521005, at *5.[14]

Here, even if Plaintiffs could establish standing to pursue the relief sought in Counts 1 and 2, those claims fail because Plaintiffs have not pled and, as a matter of law, cannot plead facts demonstrating that US Soccer owed them a legal duty with respect to the subject matter of the Complaint. Specifically, Plaintiffs claim that US Soccer either owed a duty (Count 1) or voluntarily assumed a duty (Count 2) "toward Plaintiffs and the Class to supervise, regulate, monitor, and provide reasonable and appropriate rules to minimize the risk of injury to the players" by "adopt[ing] and enforc[ing] Laws of the Game that would reduce the risk of preventable injuries resulting from concussions and repetitive heading." (Cmplt. ¶¶ 28, 424.) To that end, Plaintiffs contend that US Soccer was and is legally obligated: (1) to "enact and/or enforce best practices for concussion management"; and (2) to prohibit or otherwise limit heading by players under age 17. (*Id.* ¶¶ 29, 31.) Plaintiffs' conclusory assertions regarding these alleged

---

[14] Illinois and Colorado are in accord. *See, e.g., Jefferson County Sch. Dist. R-1 v. Justus*, 725 P.2d 767, 770 (Colo. 1986) (en banc) ("[I]n addition to those duties imposed by law solely on the basis of the relationship between parties, a separate and distinct body of law holds that a party may assume duties of care by voluntarily undertaking to render a service."); *Buerkett v. Illinois Power Co.*, 384 Ill. App. 3d 418 (2008) (same).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

US SOCCER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(b)(1) AND (6)
Case No. 4:14-cv-03879-PJH

"duties" are wholly insufficient to state a claim for breach of duty against US Soccer.  Because Plaintiffs fail to allege any legal or factual basis on which the Court could (or should) impose such duties on US Soccer, Counts 1 and 2 should be dismissed without leave to amend.

      **A.**    **US Soccer Has No Legal Duty To Implement The Consensus Statement Recommendations For Concussion Management**

After describing the Consensus Statement in great detail, Plaintiffs conclude that US Soccer breached a duty to implement and to enforce the recommendations for concussion management contained therein, including, among other things:

- A mandatory, 24 hour stepwise return to play guideline;
- Formal baseline testing regardless of age or level of performance of the player;[15]
- Requiring that a player with a concussion or suspected concussion be evaluated, managed, and cleared by medical personnel with specific expertise in concussion diagnosis, treatment, and management.

(Cmplt. ¶¶ 266-268.)  Yet, glaringly absent from Plaintiffs' Complaint is any allegation of fact or law from which the Court could conclude that US Soccer owed such an obligation to Plaintiffs.

As an initial matter, the Consensus Statement on which Plaintiffs seek to rely specifically states that it "***is not intended as a standard of care, and should not be interpreted as such***."  (RJN Ex. 7 at 95 (emphasis added).)  Rather, the recommendations contained therein were developed primarily "***for use by physicians and healthcare professionals***" who are "***involved in the care of injured athletes***."  (*Id.* at 89 (emphasis added).)  And the reason for targeting this particular audience is clear from the nature of the recommendations.  As a practical matter, the suggestions regarding the evaluation of a players' symptoms and the implementation of the multi-step return-to-play guidelines requires the participation of those who have direct contact with an injured player.  The document does not suggest, much less require, that an entity such as US Soccer – which has no direct involvement in (and, indeed, is many steps removed from) the events leading to the injury – be held responsible for the evaluation of symptoms or the resulting diagnosis and treatment.  Nor should it.  It would defy common sense to impose obligations upon US Soccer

---

[15] Although included in Plaintiffs' Complaint, this recommendation was removed from the most recent consensus statement – likely due to the questionable efficacy of such testing.  (*See* RJN Ex. 7 at *passim*.)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

US SOCCER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(b)(1) AND (6)
Case No. 4:14-cv-03879-PJH

1  more appropriately left to a player's parent and/or doctor, particularly given that US Soccer has no

2  practical ability to enforce these recommendations because the information needed for such

3  enforcement is protected by HIPAA, doctor/patient privilege and other privacy laws.

4      Moreover, Plaintiffs cannot allege that US Soccer has a legal duty or assumed such a duty

5  requiring it to enforce the recommendations in the Consensus Statement.  Counts 1 and 2 should

6  be dismissed to the extent that they depend on a finding of such a duty on the part of US Soccer.

7          1.    US Soccer is under no obligation imposed by law to enforce

8                  the recommendations contained in the Consensus Statement

9      The Ted Stevens Act sets forth US Soccer's specific obligations, as the National

10  Governing Body ("NGB") for the sport of soccer, to "develop interest and participation

11  throughout the United States and be responsible to the persons and amateur sports organizations

12  it represents."  36 USC § 220524(1).  With respect to safety, US Soccer's legal obligations are

13  expressly limited to "encourag[ing] and support[ing] research, development, and dissemination

14  of information in the areas of sports medicine and sports safety."  36 USC § 220524(9).  US

15  Soccer is ***not*** required to adopt rules to reduce a player's risk of aggravating an injury inherent in

16  the sport because that player fails to follow "best practices" for concussion management.

17      Similarly, as the National Association member of FIFA for the United States, US Soccer

18  is obligated "to respect the laws of the Game" and otherwise to "comply fully with the Statutes,

19  regulations, directives and decisions of FIFA bodies" – ***none*** of which require US Soccer to

20  ***decrease*** the risk of injury inherent in the sport by mandating strict adherence to the

21  recommendations contained in the Consensus Statement.[16]  (Cmplt. ¶ 202 quoting FIFA Art. 13.)

22      And Plaintiffs do not allege otherwise.  Indeed, they explain that "U.S. Soccer serves at

23  least two purposes . . . preparing players of numerous age levels for participation in elite

24  competitions . . . [and] encouraging millions of players including youth players of all skill

25  levels[,] to play soccer and make it part of a lifelong passion."  (Cmplt. ¶ 22.)  Conspicuously

26  absent from Plaintiffs' description of US Soccer's "purposes" – and from the Complaint as a

27  whole – is any allegation regarding the source of US Soccer's purported obligation to create and

28  [16] As the NGB for soccer, US Soccer is required to be a member in good standing of FIFA (the international federation for the sport of soccer).  *See* 36 USC § 220522(a)(6).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

US SOCCER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(b)(1) AND (6)
Case No. 4:14-cv-03879-PJH

1    enforce rules designed to reduce the risk that a player might aggravate an injury by failing to take

2    the necessary steps to manage a concussion in the days following the injury.

3           Plaintiffs' assertions regarding US Soccer's alleged duties also find no support under the

4    laws of the states where Plaintiffs reside.  To the contrary, the legislature in each of those states

5    has specifically addressed the issue of concussion management for youth sports, and none has

6    imposed such obligations on an organization like US Soccer.  Rather, like the Consensus

7    Statement, the focus of the various state concussion laws is on educating and assigning

8    responsibility to those individuals who have direct contact with the players to prevent a child

9    suspected of having suffered a concussion from returning to play without first obtaining clearance

10   from the child's medical provider.

11          For example, Colorado's Jake Snakenberg Youth Concussion Act requires:  (1) coaches to

12   complete annual concussion education; (2) any player whom a coach suspects has sustained a

13   concussion to be removed from play; and (3) written clearance from a health care provider before

14   such a player can return to play.  *See* Colo. Rev. Stat. Ann. § 25-43-103.  The Act applies broadly

15   to public and private schools, private clubs, public recreation facilities, and athletic leagues

16   sponsoring youth athletic activities – those organizations which have direct contact with and

17   injured player.  *See id.*  The Act does *not* place any obligation on NGBs or other organizations

18   such as US Soccer who have no such relationship.  Illinois and California have similar legislation

19   applicable to public and private schools.  *See* 105 Ill. Comp. Stat. Ann. 5/10-20.54, 25/1.15;

20   West's Ann. Cal. Educ. Code § 49475.  In passing such legislation, those states expressly chose

21   not to extend their requirements to non-scholastic organizations (such as private associations and

22   leagues), much less national governing bodies several steps removed from the events that give

23   rise to the injury.[17]

24          It is well-established that where, as here, a legislature has specifically addressed an issue

25   and declined to impose certain duties on an organization, "the public interest has been declared in

26   terms well-nigh conclusive.  In such cases the legislature, not the judiciary, is the main guardian

---

27   [17] Although the rationale not to extend such obligations to private athletic associations may not
     be immediately apparent, the decision makes sense when one considers that children and their
28   parents proactively choose to join such associations, as distinguished from the scholastic arena,
     where some degree of athletic participation may be strongly encouraged or even required.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

US SOCCER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(b)(1) AND (6)
Case No. 4:14-cv-03879-PJH

1    of the public needs to be served by social legislation . . . ."  *Berman v. Parker*, 348 U.S. 26, 32

2    (1954).  In such circumstances, the Court should not, and arguably cannot, substitute its judgment

3    and impose greater duties on US Soccer than those already imposed by the legislature.

4                    2.        US Soccer does not have a "relationship" with Plaintiffs that gives rise
                              to a duty to enforce the recommendations in the Consensus Statement
5

6            US Soccer is at the top of a very large pyramidal hierarchy in the United States

7    encompassing its member organizations, their members, the members of those members, and so

8    on.[18]  Although US Soccer provides a number of services to its member organizations (including

9    the youth organizations to which Plaintiffs' teams and clubs are affiliated) and, in some cases, to

10   their members, US Soccer has no direct relationship with the individual youth players, or even the

11   clubs, teams, or leagues for which they play.[19]  Indeed, US Soccer is at least three steps removed

12   and, in some cases, as many as six steps removed from the Plaintiffs and the members of the

13   putative class.  For example, players affiliated with Defendant USYSA are members of clubs,

14   which are members of leagues, which are members of state associations, which are members of

15   regions, which are members of USYSA, which is a national association member of US Soccer.

16           Because US Soccer lacks a direct relationship with Plaintiffs or the putative class, US

17   Soccer has no ability to "enforce" the recommendations in the Consensus Statement regarding

18   concussion management that Plaintiffs seek to have this Court require of US Soccer.  Among

19   other things, those recommendations include a 5 to 7 day return-to-play protocol that requires

20   daily monitoring of activity and symptoms.  As a practical matter, US Soccer cannot and should

21   not be placed in a position of having to enforce guidelines for which it has no method of

22   confirming compliance, nor can or should US Soccer be responsible for dictating the appropriate

23   course of medical treatment for an injury.  As acknowledged by the Consensus Statement, ***that is***

24   ***and should be a matter addressed by the child's parents and doctor.***  Indeed, none of the

---

25   [18] A diagram of the US Soccer's organizational structure is attached hereto at Appendix B-1, and
26   a diagram of the structure of US Soccer's Youth Members is attached hereto at Appendix B-2.

27   [19] US Soccer does have a direct relationship with a discrete group of elite players who comprise
     its National, Olympic, and Development Academy Teams.  Because none of the Plaintiffs are
     now or ever have been members of those teams, those elite players cannot be the subject of
28   Plaintiffs' claims.  And, in any event, for those players with whom it has a direct relationship, US
     Soccer already enforces "state of the art" concussion management protocols. (Cmplt. ¶ 262.)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

US SOCCER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(b)(1) AND (6)
Case No. 4:14-cv-03879-PJH

1    Defendants are in a position to enforce the recommendations in the Consensus Statement once a

2    player leaves the soccer field and goes home, particularly given that the information needed for

3    such enforcement is protected by HIPAA, doctor/patient privilege, and other privacy laws.

4         Arguably, the only duty that reasonably could be imposed on any organizational

5    Defendant is the duty not to force a child who is exhibiting symptoms of a concussion to return

6    to play until they have had an opportunity to be cleared by a physician – *a duty with which each*

7    *of US Soccer's affiliated youth organizations already comply*.[20]   Any further duties Plaintiffs

8    seek to assign to US Soccer (or any of the other Defendants) are unrealistic, infeasible, and

9    would improperly place non-profit recreational associations in the position of having to second-

10   guess or otherwise substitute their judgment for that of a child's parent and/or doctor.

11        Those courts that have considered this issue, including courts in each of the three states in

12   which Plaintiffs reside, have reached the same conclusion regarding the lack of liability of a

13   governing organization in similar circumstances.  For example, applying California law, the

14   District Court for the Southern District of California dismissed a negligence claim against the Boy

15   Scouts of America arising out of a particpant's injury that was based on the Boy Scouts' alleged

16   failure to adequately train the adult leaders who lead the various Boy Scout troops on the ground

17   that the allegations were too attenuated and not plausible.  *Kormylo v. Forever Resorts, LLC*,

18   2015 U.S. Dist. LEXIS 1630 (S.D. Cal. Jan. 6, 2015); *see also Collins v. Schweitzer, Inc.*, 21 F.3d

19   1491, 1495 (9th Cir. 1994) (applying Idaho law, the Ninth Circuit concluded that a governing

20   organization owed no duty to an individual injured in a skiing accident, because it did not

21   "construct, supervise, direct or control [the] ski racing courses at any ski area.").  Similarly, an

22   Illinois Appellate Court determined that a governing trade association owed no duty to the

23   members of its members, and noted that the role of the trade association was to provide services

24

---

[20] Plaintiffs' Complaint implies that players exhibiting symptoms of a concussion that are either
25   witnessed by or communicated to a coach are nevertheless forced to return to play under US
     Soccer's "rules."  As discussed in Section II.B.1, the substitution rules that Plaintiffs challenge
26   *do not apply* at the youth level, and are, therefore, of no relevance to this analysis.  Indeed, none
     of the Plaintiffs allege that they were subject to such a "rule."  Moreover, as discussed in Section
27   II.A.1, only *one* Plaintiff alleges that she suffered a concussion and returned to play, and she
     *does not* allege that anyone was aware that she had any such symptoms.  Plaintiffs' speculation
28   about what *might* have happened to other players as a purported result of US Soccer's "rules" is
     insufficient to state a claim for negligence.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

US SOCCER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(b)(1) AND (6)
Case No. 4:14-cv-03879-PJH

1    and programs only to its direct members. *Bailey v. Edward Hines Lumber Co.*, 308 Ill. App. 3d

2    58, 62, 65 (1999) ("[The trade association] provides various services and programs to its *members*

3    so as to achieve an ever expanding public interest in swimming and aquatics in general.  Its

4    services are directed *to its membership* . . . .") (quoting *Meyers v. Donnatacci*, 220 N.J. Super. 73

5    (1987)).  Applying Colorado law, the Tenth Circuit ruled that a governmental organization

6    overseeing mine operators owes no duty to those operators, on the ground that "any foreseeability

7    of risk [to miners] . . . is substantially outweighed by the social utility" of the "technical

8    assistance" the organization rendered.  *Ayala v. United States*, 49 F.3d 607, 612 (10th Cir. 1995).

9            In each of the foregoing cases, the defendant was only a single level above the entity with

10   which the plaintiff was involved, and the court found such an indirect relationship to be too

11   attenuated to impose a duty on the defendant.  Here, US Soccer is *even further removed* from the

12   allegedly injured individuals and, therefore, cannot be found to owe a duty to Plaintiffs on the

13   basis of an alleged "relationship" between the parties.

14                       3.       US Soccer did not assume a duty to enforce the
                                  recommendations contained in the Consensus Statement
15

16           In apparent recognition of their inability to adequately plead the existence of a duty

17   imposed by law or arising out of some "relationship" with US Soccer in Count 1, Plaintiffs

18   alternatively allege in Count 2 that US Soccer assumed a duty to implement and enforce the

19   recommendations contained in the Consensus Statement.  In order to establish such a voluntary

20   undertaking, Plaintiffs must allege facts sufficient to demonstrate that US Soccer specifically

21   assumed an obligation to reduce the risk of injury that can result from improper concussion

22   management.[21]  *See, e.g., Artiglio v. Corning Inc.*, 18 Cal. 4th 604, 614-18 (1998) (the actor

23   "must specifically have undertaken to perform the task that he is charged with having performed

24   negligently, for without the actual assumption of the undertaking there can be no correlative duty

25   to perform that undertaking carefully."); *Martin v. Keeley & Sons, Inc.*, 979 N.E.2d 22, 30 (Ill.

26   2012) (duty based on a voluntary undertaking "requires some affirmative acknowledgment or

27

28   [21] In California, Colorado, and Illinois, the "voluntary undertaking" doctrine is based on
     Restatement (Second) of Torts Sections 323 and/or 324(A).  Because the analysis is largely the
     same under either Section, US Soccer will not separately address them here.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

22

US SOCCER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(b)(1) AND (6)
Case No. 4:14-cv-03879-PJH

1    recognition of the duty by the party who undertakes the duty" (quoting *Blessing v. U.S.*, 447

2    F.Supp. 1160, 1188-89 (E.D. Pa. 1978)); *Jefferson County Sch. Dist. R-1 v. Justus*, 725 P.2d 767,

3    770 (Colo. 1986) (en banc) (Voluntary undertaking exists "[w]here a person represents by word

4    or act that he has done or will do something upon the performance of which he should realize that

5    others will rely . . . ." (quoting *Lester v. Marshall*, 143 Colo. 189, 197-98 (1960))).  Plaintiffs

6    have not met and cannot meet this burden.

7         Specifically, Plaintiffs' allegations regarding US Soccer's role and its limited statements

8    referenced in the Complaint come nowhere close to the level of specificity required to establish

9    that US Soccer undertook a duty with respect to concussion management.  For example, Plaintiffs

10   allege that US Soccer's has a "much broader stated role" to "encourag[e] millions of players

11   including youth players of all skill levels to play soccer and make it part of a lifelong passion."

12   (Cmplt. ¶ 22.)  Plaintiffs also quote the statement on US Soccer's website that "there is also a

13   critical need for early identification and proper management of concussion," yet concede that "US

14   Soccer's website *makes no mention* of the special considerations in concussion management for

15   child and adolescent athletes . . . ."  (*Id.* ¶¶ 261, 269 (emphasis added).)  Neither of these

16   statements (nor any other allegations in the Complaint on which Plaintiffs may seek to rely) even

17   suggest US Soccer's assumption of a duty to reduce the risk of injury from improper concussion

18   management, much less the specific, affirmative acknowledgment of such a duty necessary to

19   establish a voluntary undertaking by US Soccer.

20        Because Plaintiffs have not alleged a legal or factual basis on which to impose a duty on

21   US Soccer to implement and to enforce the recommendations in the Consensus Statement (which,

22   by its own terms, is ***not*** a standard of care but a set of suggested guidelines for ***physicians*** to

23   follow in treating concussed players), Counts 1 and 2 should be dismissed without leave to amend

24   to the extent they allege breach of such a duty on the part of US Soccer.

25   / / /

26   / / /

27   / / /

28   / / /

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

US SOCCER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(b)(1) AND (6)
Case No. 4:14-cv-03879-PJH

### B. US Soccer Has No Legal Obligation To Change The Rules Of The Game Of Soccer To Prohibit Or Restrict "Heading"

As noted above, "heading" has been part of the sport of soccer for more than 100 years. Yet Plaintiffs seek to have this Court order Defendants to change the rules of this international game to prohibit or restrict heading by participants under age 17. (Cmplt. ¶¶ 382, 432.) And, Plaintiffs contend that Defendants were negligent in failing to have done so already based on various statements cherry-picked from medical literature evaluating the neurological impact, if any, from repetitive heading. (*Id.* at ¶ 375.) Plaintiffs' negligence claims on this basis fail for two separate and equally dispositive reasons. As discussed in Section II.A.2, above, the medical literature cited in the Complaint ***does not*** conclude that repetitive heading causes injury, and Plaintiffs' speculation about what further studies may show is insufficient to establish an injury for which any Defendant may be held liable.

But, even if Plaintiffs could establish that repetitive heading is associated with a risk of injury, Defendants cannot be held liable for injuries arising from such risk because Plaintiffs assumed the risk by choosing to play soccer. It is well-established that when a plaintiff voluntarily elects to participate in a sport, the defendant is relieved of his or her duty to use due care to avoid the plaintiff suffering an injury as a result of those inherently risky aspects of the sport. *Knight v. Jewett*, 3 Cal. 4th 296, 308-09 (1992).[22] The ***only*** duty ascribed to an organizational defendant such as US Soccer is not to take any act that would ***increase*** the risk of injury beyond that inherent in the sport. *See, e.g., Avila v. Citrus Community College Dist.*, 38 Cal. 4th 148, 162, 166 (2006) (defendant only owed a duty not to increase the inherent risks, not a duty to decrease them); *Knight*, 3 Cal. 4th at 315 (same). In other words, Defendants are ***not*** under any obligation to

---

[22] *See also Kahn v. East Side Union High School Dist.*, 31 Cal. 4th 990, 1011 (2003) (the object of the assumption of the risk doctrine is "to avoid recognizing a duty of care when to do so would tend to alter the nature of an active sport . . . ."); *Levinson v. Owens*, 176 Cal. App. 4th 1534, 1545 (2009) (horseback riding owner/operator "does not owe a duty to protect the rider from injury by discouraging the rider's vigorous participation in the sport or by requiring that an integral part of horseback riding be abandoned."). And, Illinois and Colorado are in accord. *See, e.g., Karas v. Strevell*, 227 Ill. 2d 440, 464 (2008) (finding no duty in areas that "directly affect[] the way in which the sport is played"); *University of Denver v. Whitlock*, 744 P.2d 54, 61 (Colo. 1987) (declining to hold university responsible for plaintiff's injury on trampoline located on university property despite university's awareness of prior injuries there, because the plaintiff "was aware of the risk of an accident and injury of the very nature that he experienced.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24

US SOCCER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(b)(1) AND (6)
Case No. 4:14-cv-03879-PJH

1    *reduce* those risks inherent in the sport, even if there are steps that could be taken to minimize such

2    risks.  *See, e.g., West v. Sundown Little League of Stockton*, 96 Cal. App. 4th 351, 358 (2002)

3    (league's decision not to provide additional safety equipment recommended by its safety officer

4    did not increase the risk); *Fortier v. Los Rios Community College Dist.*, 45 Cal. App. 4th 430, 439

5    (1996) (failure to provide certain safety equipment did not increase the inherent risks of the game);

6    *Bushnell v. Japanese-American Religious & Cultural Center*, 43 Cal. App. 4th 525, 531 (1996)

7    (assumption of the risk applies "even if the defendant was in some manner in control of the

8    situation and thus in a better position than the plaintiff to prevent the plaintiff's injury"); *Connelly*

9    *v. Mammoth Mountain Ski Area*, 39 Cal. App. 4th 8, 13 (1995) (a duty is not created because safer

10   materials are available to remedy the danger).[23]

11          Yet that is precisely the obligation that Plaintiffs seek to impose on Defendants in this

12   case.  Plaintiffs acknowledge that "[p]urposefully heading the ball is a legal and encouraged

13   maneuver," and then ask this Court to impose liability on "soccer's governing authorities" for

14   failing to "***reduce the risk*** of preventable injuries resulting from . . . repetitive heading" by

15   "failing to regulate heading by players under 17."  (Cmplt. ¶¶ 2, 12, 28, 375, 432 (emphasis

16   added).)  As a matter of law, none of the Defendants can be held liable for failing to "take steps to

17   reduce injuries" resulting from risks that are inherent in the sport.

18          And the rationale for such a rule is clear:  "Allowing voluntary participants in an active

19   recreational pursuit to sue other participants or sponsors for failing to eliminate or mitigate the

20   activity's inherent risks would threaten the activity's very existence and nature."  *Nalwa v. Cedar*

21   *Fair, L.P.*, 55 Cal. 4th 1148, 1157 (2012).  Indeed, there are any number of known risks from

22   playing a contact sport like soccer other than those associated with heading.  For example, kicking

23   and running are associated with risk of injury to the knee or ankle, such as sprains, broken bones,

24

25   _____

26   [23] The applicable standard is similar in Illinois and Colorado.  Illinois does not impose a duty
     unless the plaintiff can show that the defendant either intended to cause the injury or engaged in
     conduct "totally outside the range of the ordinary activity" involved in the sport.  *Pickel v.*
27   *Springfield Stallions*, 398 Ill. App. 3d 1063, 1068 (2010) (quoting *Karas v. Strevell*, 227 Ill. 2d at
     459).  In Colorado, "a person assumes the risk of injury or damage if he voluntarily . . . exposes
28   himself to injury or damage with knowledge or appreciation of the danger and risk involved."
     Colo. Rev. Stat. Ann. § 13-21-111.7.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25

US SOCCER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(b)(1) AND (6)
Case No. 4:14-cv-03879-PJH

1    and torn ligaments.[24]  Yet one would likely think it absurd to hold US Soccer liable for failing to

2    restrict running and kicking to reduce those risks.  Plaintiffs' attempt to hold US Soccer liable for

3    failing to restrict heading is no different.[25]

4         It is for this reason that courts routinely decline to impose liability where finding a duty

5    would result in a court dictating how a sport such as soccer is to be played.  "In our opinion it is

6    not the role of the courts to effect a wholesale remodeling of a revered American institution

7    through application of tort law."  *Neinstein v. Los Angeles Dodgers*, 185 Cal. App. 3d 176, 181

8    (1986).  It was Plaintiffs' "voluntary choice to participate in an inherently risky activity," and

9    that choice "bars [Plaintiffs] from recovery . . . . [Each Plaintiff] was free to refrain altogether

10   from participation in this hazardous sport had [he or] she wished to avert any possible risk of

11   injury.  As Chief Judge Cardozo once observed, 'The timorous may stay at home.'"  *Coleman v.*

12   *Ramada Hotel Operating Co.*, 933 F.2d 470, 477 (7th Cir. 1991) (quoting *Murphy v.*

13   *Steeplechase Amusement Co.*, 250 N.Y. 479, 483 (1929)).

14        Because Plaintiffs have not alleged and cannot allege facts sufficient to establish a legal

15   duty on the part of US Soccer to "reduce the risk of preventable injuries resulting from

16   concussions and repetitive heading," by implementing "best practices for concussion

17   management" or "regulat[ing]" heading by players under the age of 17, Counts 1 and 2 should be

18   dismissed without leave to amend.  (Cmplt. ¶¶ 28, 29, 432.)

19   / / /

20   / / /

21   / / /

22   / / /

23

---

24   [24] In soccer, [i]njuries to the lower extremities are most common, with the majority of  injuries resulting from nonbody contact . . . .  The mechanisms of noncontact injury include running,

25   twisting/turning, shooting and landing."  (RJN Ex. 19 (The Council on Sports Medicine and Fitness, *Clinical Report:  Injuries in Youth Soccer,* American Academy of Pediatrics, 125

26   Pediatrics 410, 414 (2010, Reaffirmed May 2013)).  In fact, injuries to the ankle and knee account for between 25-55% of all injuries to youth soccer players.  *Id.*

27   [25] In fact, Plaintiffs allege that approximately "30% of concussions in soccer are caused by heading the ball or by attempting to head the ball and colliding with a player, object, or the

28   ground," which necessarily means that more than half result from some other aspect of the sport. (Cmplt. ¶ 6.)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

26

US SOCCER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(b)(1) AND (6)
Case No. 4:14-cv-03879-PJH

## IV.   PLAINTIFFS' INDEPENDENT CLAIM FOR MEDICAL MONITORING (COUNT 3) SHOULD BE DISMISSED WITH PREJUDICE

As discussed in Section II.A, none of the Plaintiffs alleges that they suffered an injury that would give rise to a right to medical monitoring from Defendants.  But, even if they could, their independent claim for medical monitoring should be dismissed because none of the states in which the Plaintiffs reside – California, Colorado, and Illinois – recognizes such a claim.

The California Supreme Court has expressly considered and rejected the viability of an independent claim for medical monitoring, holding that "[r]ecognition that a defendant's conduct has created the need for future medical monitoring does not create a new tort.  It is simply a compensable item of damage when liability is established under traditional tort theories of recovery."  *See Potter*, 6 Cal. 4th at 1007.  Accordingly, Count 3 must be dismissed with prejudice as to the California Plaintiffs Mehr and Akka-Seidel.

Neither the state Supreme Court in Illinois nor Colorado has recognized an independent claim, and this Court should decline to do so here.[26]  Only 16 other states recognize medical monitoring as a basis for recovery, and of those, only 6 permit medical monitoring as an independent claim.  And, even in those states in which an independent claim has been recognized, it is typically in the context of a defendant's release of a known toxic substance, the plaintiff's exposure to which may lead to future injury.  Although the courts in those states have found that a plaintiff may not be required to prove present physical injury, the plaintiff still must allege that he or she was *exposed to a **proven hazardous substance** as a result of defendant's negligence.  See,*

---

[26] An Illinois appellate court and a court in the Northern District of Illinois have speculated that the Illinois Supreme Court would recognize an independent claim for medical monitoring if presented with the issue, but in each case ultimately denied an independent claim for medical monitoring.  *See Jensen v. Bayer AG*, 371 Ill. App. 3d 682, 692 (2007) (denying right to independent claim for medical monitoring because the plaintiff "presented no evidence to the effect that 'medical monitoring is, to a reasonable degree of medical certainty, necessary in order to diagnose properly the warning signs of disease.'"); *Carey v. Kerr-McGee Chemical Corp.*, 999 F. Supp. 1109, 1119 (N.D. Ill. 1998) (after concluding that the Illinois Supreme Court would recognize an independent claim, court granted summary judgment in favor of defendant on statute of limitations).  Similarly, after concluding that the "Colorado Supreme Court would probably recognize, in an appropriate case, a tort claim for medical monitoring," a court in the District of Colorado found that "Plaintiffs' complaint is deficient in pleading a claim for individual medical monitoring because it fails to allege that plaintiffs have been exposed to a toxic substance."  *Cook v. Rockwell Int'l Corp.*, 755 F. Supp. 1468, 1477 (D. Colo. 1991) (rev'd on other grounds *Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127 (10th Cir. 2010)).

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

27

US SOCCER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(b)(1) AND (6)
Case No. 4:14-cv-03879-PJH

1   *e.g., In re Baycol Products Litigation*, 218 F.R.D. 197, 212 (D. Minn. 2003).  For the reasons

2   discussed in the preceding sections, Plaintiffs have not met and cannot meet that burden here.

3          Specifically, with respect to Plaintiffs' claims regarding Defendants' alleged lack of

4   sufficient concussion management protocols, as discussed in Section II.A.1, above, only one of

5   the Plaintiffs alleges that she suffered a concussion, and none of the Plaintiffs has alleged that

6   suffering a single concussion from which they recover gives rise to a need for medical

7   monitoring.  Likewise, Plaintiffs have not alleged that they ever engaged in repetitive heading,

8   much less established that repetitive heading constitutes exposure to a proven hazardous

9   substance or that their "exposure" to heading was the result of Defendants' negligence.

10          And, in any event, Plaintiffs already seek relief in the form of medical monitoring for their

11   negligence claims.  It would appear that their only purpose for including a standalone claim is to

12   circumvent the need to establish an underlying wrong that gives rise to a right of recovery against

13   Defendants for the unexplained "impacts" and "hits" they allegedly sustained while playing youth

14   soccer.  This is precisely the type of end-run around traditional tort law that should be avoided by

15   declining to permit plaintiffs to proceed with an independent claim for medical monitoring, and

16   the reason why Count 3 should be dismissed with prejudice.  *See, e.g., Metro-North Commuter*

17   *Railroad Co. v. Buckley*, 521 U.S. 424 (1997).

18   **V.     CONCLUSION**

19          For all of the foregoing reasons, US Soccer respectfully requests that the Court dismiss

20   each of Plaintiffs' claims for relief with prejudice.

21   DATED:  January 30, 2015              LATHAM & WATKINS LLP

22                                        By   /s/ Russell F. Sauer, Jr.
23                                            Russell F. Sauer, Jr.

24                                            355 South Grand Avenue
                                             Los Angeles, California  90071
25                                            Telephone:  (213) 485-1234
                                             Facsimile:  (213) 891-8763
26                                            Email:  russ.sauer@lw.com

27                                        *Attorneys for Defendant United States*
                                         *Soccer Federation, Inc.*
28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

28

US SOCCER'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FRCP 12(b)(1) AND (6)
Case No. 4:14-cv-03879-PJH