1 | STUART M. GORDON  (SBN: 037477)
sgordon@gordonrees.com

2 | FLETCHER C. ALFORD  (SBN: 152314)
falford@gordonrees.com

3 | JAMES K. HOLDER (SBN:  267843)
jholder@gordonrees.com

4 | GORDON & REES LLP
275 Battery Street, Suite 2000

5 | San Francisco, CA 94111
Telephone:  (415) 986-5900

6 | Facsimile:  (415) 986-8054

7 | Attorneys for Defendants
NATIONAL ASSOCIATION OF

8 | COMPETITIVE SOCCER CLUBS, INC.
d/b/a US CLUB SOCCER and

9 | AMERICAN YOUTH SOCCER ORGANIZATION

10

11 | UNITED STATES DISTRICT COURT

12 | NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

13

14 | RACHEL MEHR; BEATA IVANAUSKIENE, as
parent of minor R.K.I. JR.; SARAH ARANDA, as

15 | parent of minors B.A., D.A., AND I.A.; KIRA
AKKA-SEIDEL; KAREN CHRISTINE

16 | O'DONOGHUE, as parent of minor L.L.M., on
behalf of themselves and all others similarly situated,

17 |

18 |                          Plaintiffs,

19 |              vs.

20 | FÉDÉRATION INTERNATIONALE DE
FOOTBALL ASSOCIATION a/k/a "FIFA;" THE

21 | UNITED STATES SOCER FEDERATION, INC.,
US YOUTH SOCCER ASSOCIATION, INC.;

22 | AMERICAN YOUTH SOCCER ORGANIZATION;
NATIONAL ASSOCIATION OF COMPETITIVE

23 | SOCCER CLUBS, INC. d/b/a/ US CLUB SOCCER,
and CALIFORNIA YOUTH SOCCER

24 | ASSOCIATION,

25 |                          Defendants.

CASE NO.  4:14-cv-03879-PJH

**DEFENDANT AMERICAN
YOUTH SOCCER
ORGANIZATION'S MOTION TO
DISMISS**

Date:  May 6, 2015
Time:  9:00 A.M.
Crtm:  3 – 3rd Floor

Complaint filed 08/27/14

26

27

28

-1-

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that, on May 6, 2015, at 9:00 A.M., or as soon thereafter as the matter may be heard, Defendant American Youth Soccer Organization ("AYSO") will move the Court, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for an Order dismissing Plaintiffs' Class Action Complaint (the "Complaint") with prejudice.  This motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities and Request for Judicial Notice ("RJN"), the Memorandum of Points and Authorities submitted by defendant United States Soccer Federation, Inc. ("US Soccer") in support of its motion to dismiss (which AYSO joins in and incorporates herein by reference), oral argument, and such other matters as the Court may consider.

**STATEMENT OF ISSUES**

AYSO moves to dismiss Plaintiffs' Complaint on the following grounds:

1. Counts 1 and 2 should be dismissed because Plaintiffs lack standing to pursue the relief sought (retrospective medical monitoring relief and prospective injunctive relief).

2. Counts 1 (negligence) and 2 (voluntary undertaking) should be dismissed because Plaintiffs have not alleged that AYSO breached a duty owed to Plaintiffs.

3. Count 3 should be dismissed because the law does not recognize an independent claim for medical monitoring.

4. Count 3 should be dismissed because Plaintiffs have not alleged that they were exposed to a known hazardous substance as a result of AYSO's negligence.

5. All Counts should be dismissed because Plaintiffs and all members of the Putative Class have expressly released AYSO from liability for the matters alleged in the Complaint, and because the Court should abstain from delving into the matters alleged in the Complaint.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Defendant AYSO joins in, and incorporates herein by reference, the Memorandum of Points and Authorities submitted by US Soccer in support of its motion to dismiss.  In addition,

-2-

DEFENDANT AMERICAN YOUTH SOCCER ORGANIZATION'S MOTION TO DISMISS
CASE NO.  4:14-cv-03879-PJH

AYSO submits the following further matters for the Court's consideration in connection with its motion.

## II.     PLAINTIFFS' CLAIM FOR INJUNCTIVE RELIEF AGAINST AYSO FAILS AS A MATTER OF LAW

As Plaintiffs admit (Complaint at para. 25), AYSO is a non-profit organization that provides recreational soccer opportunities to more than 500,000 youth nationwide. *See also* RJN at ¶2, Exh B.  The organization is governed by a National Board of Directors and the National President, all of whom are volunteers.  RJN at ¶3, Exh. C.  Moreover, all of AYSO's coaches, referees, managers, and other local officials and administrators are also volunteers.  RJN at ¶3, Exh. C.

Plaintiffs seek a mandatory injunction requiring AYSO to adopt Plaintiffs' preferred concussion management and return to play rules.  However, as Plaintiffs admit (Complaint at paras. 319-321), AYSO has already partnered with the United States Centers for Disease Control ("CDC") to adopt detailed concussion management and return to play rules that require, among other things: 1) concussion awareness training for coaches, referees, and other staff; 2) dissemination of the CDC Concussion Fact sheet to all parents; and 3) immediate removal of any player suspected of having a concussion, and prohibiting that player's return to play until he or she is evaluated and cleared by a health care professional.  *See also* RJN at ¶ 4, Exh. D. However, Plaintiffs contend these protocols are inadequate, and they ask the Court to issue a mandatory injunction compelling, among other things: 1) that AYSO change its rules of the game to outright prohibit heading of the ball by players under a certain age, and limit the practice for all other players; 2) that AYSO provide pre-injury ("baseline") neurological testing of each and every one of its more than 500,000 players; 3) that AYSO provide further, post-incident testing of any and all players suspected of sustaining a concussion; and 4) that AYSO provide, at every game and practice, on-site medical personnel with expertise in evaluating and treating concussions.  Complaint at paras. 323 and 432.  Conspicuously absent from the Complaint is any

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

-3-

**Gordon & Rees LLP**
**275 Battery Street, Suite 2000**
**San Francisco, CA 94111**

1   explanation of how AYSO – a non-profit, all-volunteer organization – is supposed to pay for any

2   of these measures.

3          As set forth in detail in US Soccer's moving papers, Plaintiffs lack standing to seek the

4   requested injunctive relief because they have not alleged, and cannot allege: 1) that they have a

5   *present* injury fairly traceable to the defendants' failure to adopt Plaintiffs' preferred concussion

6   management rules; 2) that any such injury will be redressed by an injunction compelling

7   defendants to adopt those rules; and 3) that they face immediate threat of *future* injury absent

8   adoption of those rules.

9          Moreover, Plaintiffs' claim for injunctive relief against AYSO fails as a matter of law for

10  additional reasons.  It is widely recognized, and beyond dispute, that soccer is a contact sport

11  with an inherent and inevitable risk that players' heads, arms, legs, feet, and other bodily parts

12  will, on occasion, come into forceful contact not only with the soccer ball but also with the

13  bodies of other players and the ground itself.  Complaint, para. 2; *See Iverson v. Muroc Unified*

14  *School Dist.*, 11 Cal. App. 4th 811 (Cal. Ct. App. 1995) (referring to soccer as hazardous

15  activity); *Pfister v. Shusta*, 657 N.E. 2d 1013, 1018 (Ill. 1995) ("Those who participate in soccer

16  . . . choose to play games in which physical contact among participants is inherent in the conduct

17  of the game.  Participants in such games assume a greater risk of injury . . . .")  Plaintiffs admit

18  that heading of the ball "is a legal and encouraged maneuver" in the game of soccer.  Complaint,

19  para. 12.

20         If this Court were to issue an injunction requiring AYSO and the other defendants to

21  enact new rules prohibiting or limiting contact between a player's head and the ball, the effect

22  would be to fundamentally alter the nature of the game as played by millions of people

23  throughout the country – at the behest of just the five plaintiffs in this case -- and would enmesh

24  the Court in the micro-management of a sport in a manner beyond the traditional bounds of

25  judicial expertise and discretion.  The Court should abstain from doing so.  *See California Dental*

26  *Assn.* v. *American Dental Assn.*, 23 Cal. 3d 346, 353 (1979) ("[t]he rights and duties of members

27  of a private voluntary association as between themselves and in their relation to [the] association,

28

-4-

are measured by the terms of [the association's] constitution and by-laws.") (internal citations omitted); *Berke* v. *TRI Realtors,* 208 Cal. App. 3d 463, 469 (1989) ("Courts must guard against unduly interfering with an organization's autonomy by substituting judicial judgment" for that of the organization); *Oakland Raiders* v. *National Football League*, 131 Cal. App. 4th 621, 646 (2005) (courts should abstain from becoming involved in "complex matters involving [sporting organizations] that are best left to the voluntary unincorporated association").

The prayer for an injunction compelling AYSO to provide neurological testing for all of its 500,000-plus players, and on-site physicians at every practice and game nationwide, also fails as a matter of law. Such complex, personal judgments about medical diagnoses and treatment are best left to players' individual physicians and their parents – not to the Courts, and especially not to a volunteer soccer organization. The requested injunction would essentially put AYSO in the position of being a medical care provider to all of its players – a specialized field well beyond its ken – exposing it to incalculable liability and expense as a result. Given AYSO's status as a non-profit, all-volunteer organization, inevitably it would have no choice but to pass along that expense to players and their families in the form of greatly increased registration fees – excluding from participation the lower income children who may stand to benefit most from youth soccer and harming the very class of people on whose behalf this case is purportedly brought. Accordingly, plaintiffs cannot demonstrate either the "balance of the hardships" or the "public interest" requirements for obtaining a mandatory permanent injunction. *See generally eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 391 (setting forth the four-factor test for a permanent injunction).

Plaintiffs also seek an injunction requiring AYSO to provide medical monitoring, of an unspecified nature and for an indefinite duration, to all of the more than 500,000 players currently enrolled with AYSO as well as the *millions* of additional players who participated in AYSO teams at any time during the 13-year period encompassed by the complaint. Even more so than the prospective injunctive relief discussed above, the requested medical monitoring would be crushingly expensive – either ending AYSO outright or, at the very least, forcing it to

-5-

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1    raise its registration fees astronomically and thus harming the very people on whose behalf this

2    case is purportedly brought.  This claim, too, would enmesh the Court far too deeply into

3    sensitive and personal medical decisions best left to the judgment of players' families and

4    personal physicians.

5           Moreover, as US Soccer points out in its brief, the medical monitoring claim fails for the

6    additional reasons that: 1) Plaintiffs lack standing to seek medical monitoring; 2) Plaintiffs do

7    not allege, and cannot allege, exposure to a toxic substance – the only recognized circumstance

8    in which medical monitoring has been authorized; and 3) medical monitoring is not recognized

9    as a cause of action in any of the jurisdictions in which the named plaintiffs reside.

10            **III.    ALL OF PLAINTIFFS' CLAIMS FAIL FOR LACK OF DUTY**

11          As US Soccer explains in its brief, a defendant owes no duty to a plaintiff who is

12   allegedly injured as a result of a risk inherent in the nature of a sporting activity; participants are

13   deemed to have assumed those risks.  *Knight v. Jewett* (1992) 3 Cal.4th 296, 308-309 (holding

14   that "the defendant is relieved of his or her duty to use due care to avoid the plaintiff suffering an

15   injury as a result of those inherently risky aspects of the sport.").  Stated different, the law will

16   not impose a duty of care "when to do so would tend to alter the nature of an active sport."

17   *Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1011.

18          Both the caselaw and facts subject to judicial notice establish beyond dispute that, in

19   contact sports such as soccer, there is an inherent and inevitable risk that players' heads, arms,

20   legs, feet, and other bodily parts will, on occasion, come into forceful contact not only with the

21   ball but also with the bodies of other players and the ground itself.  Complaint, para. 2; *See*

22   *Iverson v. Muroc Unified School Dist.*, 11 Cal. App. 4th 811 (Cal. Ct. App. 1995) (referring to

23   soccer as hazardous activity); *Pfister v. Shusta*, 657 N.E. 2d 1013, 1018 (Ill. 1995) ("Those who

24   participate in soccer . . . choose to play games in which physical contact among participants is

25   inherent in the conduct of the game.  Participants in such games assume a greater risk of injury . .

26   . ."); *Balthazor v. Little League Baseball, Inc.*, 62 Cal.App.4th 47, 48-53 (Cal. Ct. App. 1998)

27   (risk of being hit by ball is inherent in the game of baseball; accordingly, minor child who

28
-6-

**Gordon & Rees LLP**
**275 Battery Street, Suite 2000**
**San Francisco, CA 94111**

**Gordon & Rees LLP**
**275 Battery Street, Suite 2000**
**San Francisco, CA 94111**

1  participated in sport deemed to have assumed that risk).  Defendants thus have no duty to protect

2  Plaintiffs from those risks.

3       Plaintiffs admit that heading of the ball "is a legal and encouraged maneuver" in the

4  game of soccer.  Complaint, para. 12.  The imposition of a duty on defendants to prevent heading

5  or other sources of concussion risk, or to ameliorate the effects thereof, would fundamentally

6  alter the nature of the game as played by millions of people throughout the country, would render

7  it prohibitively expensive for many if not most families, and would enmesh the Court in the

8  micro-management of a sport in a manner beyond the traditional bounds of judicial expertise and

9  discretion – all at the behest of just the five plaintiffs in this case.  As US Soccer points out in its

10 brief, defendants have no duty to make the game safer or to ameliorate risks inherent in the sport;

11 their only duty is to not increase such risks.  *See, e.g., Avila v. Citrus Community College Dist.*,

12 38 Cal. 4th 148, 162 (2006) (defendant only owed a duty not to increase the inherent risks, not a

13 duty to decrease them); *West v. Sundown Little League of Stockton*, 96 Cal. App. 4th 351, 358

14 (2002) (league's decision not to provide additional safety equipment recommended by its safety

15 officer did not increase the risk); *Fortier v. Los Rios Community College Dist.*, 45 Cal. App. 4th

16 430, 439 (1996) (failure to provide certain safety equipment did not increase the inherent risks of

17 the game).

18       Plaintiffs do not, and cannot, allege that AYSO somehow *increased* a risk inherent in the

19 sport of soccer -- and in fact it does everything it can to prevent those risks.  Accordingly,

20 Plaintiffs' claims are barred by the implied assumption of risk doctrine and the resulting absence

21 of duty.

22 **IV.    ALL MEMBERS OF THE PUTATIVE CLASS WHO PARTICIPATED IN AYSO**
       **EVENTS HAVE EXPRESSLY RELEASED AYSO FROM LIABILITY FOR THE**
23       **CLAIMS ALLEGED HEREIN**

24       All those playing on AYSO teams (and, in the case of minor players, the player's parent

25 or other legal guardian) are required to complete and sign a player registration form.  *See*

26 Complaint at para. 82; RJN at ¶ 5, Exh. E.  Included on the player registration form, in clear and

27 conspicuous language, is the following release:

28

-7-

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

**Disclaimer, Assumption of Risk, and Waiver and Consent Agreements**

I warrant and acknowledge that I am the parent or legal guardian of the player named on the reverse side of this application, a minor ("Player"), and on behalf of myself, Player and our heirs, assigns and next of kin, I hereby enter into the following agreements **IN CONSIDERATION OF** Player's being able to participate in any way at practices, games or other activities ("EVENTS") sanctioned by the American Youth Soccer Organization ("AYSO").

**DISCLAIMER, ASSUMPTION OF RISK AND WAIVER:**  I acknowledge that participation in soccer necessarily involves . . .  contact with considerable force, and risk of severe, permanent physical injury including bruises, scrapes, strained, sprained or torn muscles, tendons or ligaments, broken bones, dislocation of joints, concussion, brain damage, never and spinal cord injury, paralysis and death.  **I WILLINGLY AND VOLUNTARILY ASSUME ALL SUCH RISKS.** . . .

I HEREBY RELEASE, DISCHARGE AND AGREE TO HOLD HARMLESS, to the fullest extent permitted by law, AYSO . . . from any and all claims, demands, costs, expenses and compensation arising out of or in any way related to an injury or other damage that may result to said participant or to members of my family . . . while participating in or present at any EVENTS, WHETHER ARISING FROM THE NEGLIGENCE OF THE RELEASEES OR OTHERWISE.

Player Registration Form, Exh. E to RJN (bold font and capitalization in original).

Liability releases are generally enforceable unless they "affect the public interest." *Tunkl v. Regents of the University of California*  (1963) 60 Cal.2d 92, 98.  The courts have consistently held that releases given in the context of recreational sporting activities do not contravene the public interest; indeed, they further the public interest by ensuring the continued availability of such activities.  *See, e.g., Cohen v. Five Brooks Stable* (2008) 159 Cal.App.4th 1476, 1485; *Guido v. Koopman* (1991) 1 Cal.App.4th 837, 842; *City of Santa Barbara v. Sup. Ct.*, 41 Cal. 4th 747, 759-60 (Cal. 2007) (collecting cases).

The AYSO release fills an entire page of the two-page registration form.  It is accompanied by a heading clearly identifying it as a "**Disclaimer, Assumption of Risk and Waiver**."  Key portions of the document are set forth in all capital letters and bold font.  Player Registration Form, Exh. E to RJN.  Accordingly, there can be no credible argument that it is "buried in a lengthy document, hidden among other verbiage, or so encumbered with other provisions as to be difficult to find." *Leon v. Family Fitness Center #107, Inc.* (1998) 61 Cal.App.4th 1227, 1232.  Moreover, given the document's specific references to the risks of

-8-

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1    "concussion" and "brain damage" -- and the capitalized and bolded provisions providing that the

2    signatory (on behalf of himself and the minor player) "**WILLINGLY AND VOLUNTARILY**

3    **ASSUME[S] ALL SUCH RISKS**" and "RELEASE[s], DISCHARGE[s] AND AGREE[s] TO

4    HOLD [AYSO] HARMLESS" from liability for such risks -- there can be no credible argument

5    that the document is vague or ambiguous.

6         Because all members of the putative class who participated in AYSO events  have

7    expressly released AYSO from the liability alleged herein, AYSO must be dismissed from the

8    Complaint.

9                          **V.     CONCLUSION**

10        For each of these reasons set forth above, defendant AYSO respectfully requests that it be

11   dismissed from this action without leave to amend.

12

13   Dated:  January 30, 2015                    GORDON & REES LLP

14                                     By:    / s /   Fletcher C. Alford
                                              Stuart M. Gordon  (SBN: 037477)
15                                            Fletcher C. Alford (SBN: 152314)
                                              James K. Holder (SBN: 267843)
16                                            Attorneys for Defendants
                                              *NATIONAL ASSOCIATION OF*
17                                            *COMPETITIVE SOCCER CLUBS, INC.*
                                              *d/b/a US CLUB SOCCER and*
18                                            *AMERICAN YOUTH SOCCER*
                                              *ORGANIZATION*

19

20

21

22

23

24

25

26

27

28

1100531/22146281v.1

DEFENDANT AMERICAN YOUTH SOCCER ORGANIZATION'S MOTION TO DISMISS
CASE NO.  4:14-cv-03879-PJH